1  Aram Ordubegian (SBN 185142)
   M. Douglas Flahaut (SBN 245558)
2  Christopher K.S. Wong (SBN 308048)
   **ARENT FOX LLP**
3  555 West Fifth Street, 48th Floor
   Los Angeles, CA  90013-1065
4  Telephone:    213.629.7400
   Facsimile:    213.629.7401
5  Emails:    aram.ordubegian@arentfox.com
              douglas.flahaut@arentfox.com
6              christopher.wong@arentfox.com

7  *Proposed* General Bankruptcy and Restructuring
   Counsel for Debtor and Debtor-In-Possession
8
                **UNITED STATES BANKRUPTCY COURT**
9
                 **CENTRAL DISTRICT OF CALIFORNIA**
10
                    **LOS ANGELES DIVISION**
11

12 In re                                    Case No. 2:20-bk-10264-ER

13 **450 S. WESTERN, LLC, a California**     Chapter 11
   **limited liability company,**
14                                           **"FIRST DAY" DECLARATION OF**
                  Debtor and Debtor-in-     **RICHARD J. LASKI IN SUPPORT OF:**
15                Possession
                                            **(I) EMERGENCY MOTION FOR**
16                                          **INTERIM AND FINAL ORDERS**
                                            **AUTHORIZING USE OF CASH**
17                                          **COLLATERAL;**

18                                          **(II) EMERGENCY MOTION FOR**
                                            **ORDER DIRECTING TENANTS TO**
19                                          **PAY RENT FOR POST-PETITION USE**
                                            **AND OCCUPANCY TO THE DEBTOR;**
20                                          **AND**

21                                          **(III) MOTION FOR ORDER (1)**
                                            **APPROVING ENGAGEMENT**
22                                          **AGREEMENT OF WILSHIRE**
                                            **PARTNERS OF CA, LLC AND (2)**
23                                          **AUTHORIZING MONTHLY FEE**
                                            **STATEMENT PROCEDURES AND**
24                                          **PAYMENT**

25

26

27

28

AFDOCS/21507845.2

I, Richard J. Laski, declare as follows:

1.     I am over 18 years of age.  Except as otherwise indicated herein, all facts set forth in this declaration (the "Declaration") are based upon information learned from my review of relevant documents, information supplied to me by management, members, and advisors of 450 S. Western, LLC (the "Company" or the "Debtor"), or my opinion based on my experience concerning the Company's operations and financial condition. I am authorized to submit this Declaration on behalf of the Company, and, if called upon to testify, I could and would testify competently to the facts set forth herein.

## I.

## THE DECLARANT

2.     I am the managing director and owner of Wilshire Partners of CA, LLC ("Wilshire Partners").  Wilshire Partners regularly provides executive officer, accounting, and administrative support services for financially distressed companies across a broad range of industries.  A copy of the Wilshire Partners' qualifications as well as my CV is attached hereto as **Exhibit 1**.   I am a CPA and a financial and turnaround expert, and I am regularly appointed as an "off-panel" chapter 11 trustee in the Central District of California.

3.     Pre-petition, the Company entered into an agreement (the "Engagement Agreement") where I would serve as Chief Restructuring Officer ("CRO") to the Company.  A true and correct copy of that Engagement Agreement is attached hereto as **Exhibit 2**.  Also pre-petition, my engagement as CRO and the Engagement Agreement were approved by corporate resolution of the Debtor.  A true and correct copy of the corporate resolution is attached hereto as **Exhibit 3**.

4.     Since I was retained as the Company's CRO, I have extensively reviewed the books and records of the Company, including its financial statements and projections, business plans, business analyses and reports, debt obligations, contracts and other legal documents, correspondences, and the like.  I have also worked closely with the Debtor's Chief Financial Officer, Joshua Park, to understand the Company and its business.

5.     I submit this Declaration in support of the relief requested in the Company's (i)

1   *Emergency Motion for Interim and Final Orders Authorizing Use of Cash Collateral* (the "Cash

2   Collateral Motion"), (ii) *Emergency Motion for Order Directing Tenants to Pay Rent for Post-*

3   *Petition Use and Occupancy* to the Debtor (the "Rents Motion") and (iii) *Motion for Order (1)*

4   *Approving Engagement Agreement of Wilshire Partners of CA, LLC and (2) Authorizing Monthly*

5   *Fee Statement Procedures and Payment* (the "CRO Motion") (collectively, the "Motions"), which

6   were substantially concurrently filed with this Declaration in this case.  I have reviewed the

7   Motions, and based on information and belief, the relief sought therein represents the initial

8   necessary first steps to enable the Company to continue to operate effectively during its transition

9   to chapter 11, thereby avoiding or minimizing certain adverse operational and financial

10  consequences that might otherwise result from the commencement of this bankruptcy case.  I

11  therefore believe that granting of the relief requested in the three Motions are essential to ensuring

12  the uninterrupted operation of the Company's during this bankruptcy case.

13        6.      This Declaration is intended to provide a summary overview of the Debtor's

14  business and the commencement of this chapter 11 case.  Section II of this Declaration provides

15  an overview of the business and its operations, its debt structure, and the circumstances giving

16  rise to the commencement of this chapter 11 case. Section III summarizes and provides the

17  evidentiary basis for the Motions filed concurrently herewith.

18                                         **II.**

19                                    **THE COMPANY**

20  **A.    The Company's Business and Operations**

21        7.      450 S. Western is the owner and operator of the three-story, 80,316 sq. ft.

22  shopping center —commonly known as California Marketplace— located at the intersection of

23  South Western Avenue and 5th Street in the heart of Koreatown, CA.  450 S. Western has been a

24  staple in the Los Angeles Korean community and is home to twenty-eight (28) thriving and

25  popular stores, restaurants, and retail shops.  Since its creation in 2003, 450 S. Western's mission

26  has been to be more than a shopping center, but to serve as an entertainment and shopping hub for

27  the Korean community in Los Angeles.  The California Marketplace has been referred to as the

28  Korean community's "Grove" or "Americana" projects in mid-Los Angeles and Glendale,

AFDOCS/21507845.2

respectively.  Presently, the Debtor has approximately six (6) employees, and the Debtor has hired Richard J. Laski of Wilshire Partners of CA, LLC as its Chief Restructuring Officer, who will be running the affairs of the Debtor's reorganization and business.   Hyun Soon Rhee is the managing member of the Debtor, along with Steffany Rhee and Daniel Rhee.

8.     As of the petition date, the shopping center currently has a 98% occupancy rate based on square footage.   Due to its prime location and prime tenants, 450 S. Western has historically been profitable and continues to be profitable.   The first floor is occupied by its key tenant, "Gaju Market" (translated as "California Market"), a high-end Korean grocery which is also owned by the Rhee family.

**B.     Pre-Petition Capital Structure**

9.     From 2013 to 2015, 450 S. Western borrowed approximately $38.5 million on secured basis from various lending sources to develop the shopping mall.  On or about June 28, 2013, the Company obtained approximately $27 million of funding through investors in the federal EB-5 immigration program (the "EB-5 Loan") to construct Gaju Market.  The EB-5 Loan was memorialized by a secured promissory note between the Debtor and Gaju Forever, LLC ("Gaju Forever") dated June 28, 2013 and accompanied by a first deed of trust recorded on July 19, 2013.

10.     When additional funding was necessary to finish building the shopping center, the Company entered into construction loan with Pontis Capital, LLC ("Pontis") in the principal sum of $4 million and Five West Capital, LP ("Five West") in the principal sum of $5 million.  The Pontis and Five West loans are evidenced by secured promissory notes dated August 21, 2014 and May 14, 2015 respectively (the "Five West and Pontis Loans").   The Company's obligations thereunder are secured by deeds of trust recorded on and September 4, 2014 and May 14, 2015, respectively.

AFDOCS/21507845.2

11.     In 2015, when construction was close to completion, additional funding was necessary to cover tenant improvements and interior build-out.  On September 10, 2015, the Debtor entered into an unsecured promissory note with Admire Capital Lending, LLC ("Admire") and Belmont Two Investment Holdings, LLC ("Belmont") for a loan in the principal amount of $9.75 million (as amended, the "Admire Belmont Note").

12.     In 2019, the Company was in need of cash to pay an extension fee to the Senior Loan.  It turned to Admire and Belmont, who funded a loan in the principal sum of $1.2 million on July 1, 2019 through its wholly owned entity, Evergreen Capital Assets LP (the "Evergreen Loan"), and the Company's obligations thereunder were secured by a deed of trust recorded on July 10, 2019.

13.     As of the Petition Date, the books and records of the Company reflect potentially as much as $43,656,914.15 of secured debt and potentially as much as $28,635,660.24 of unsecured debt, though many claims are disputed and the ultimate numbers may be different. Based on information supplied to me by the Company's management, the below chart summarizes the claims asserted by the known secured creditors.

|  | Approx. Amount Due as of 12/31/19[1] |
|---|---|
| G450 LLC | $ 29,932,758.97 |
| Pontis Capital, LLC | $ 4,654,666.66 |
| Five West Capital, LP | $ 5,818,333.44 |
| Evergreen Capital Asset | $ 1,260,164.91 |
| Los Angeles County Treasurer and Tax Collector | $ 1,653,568.21 |
| Los Angeles County Treasurer and Tax Collector | $ 246,421.96 |
| TOTAL EST. SECURED DEBT | $43,656,914.15 |

[1]Nothing herein shall constitute an admission of liability or amount and nothing herein shall be an admission that any creditor holds a properly perfected secured claim.

AFDOCS/21507845.2

14.     On or about May 10, 2019, the EB-5 Loan was assigned by Gaju Forever to G450 LLC.  Based on information and belief, the principal of G450 LLC is also the principal of and managed by the same individual, Allen Park.

**C.     Events Leading to the Company's Chapter 11 Filing**

15.     Several factors have contributed to the commencement of this chapter 11 case, including tight liquidity position and operational challenges resulting from its disputes with some of the above mentioned lenders and expenses resulting from a series of heavily contested lawsuits as more fully described herein.

16.     Since 2017, the Debtor's expenses have increased significantly as it has been forced to defend itself in an action brought by Admire and Belmont in the Superior Court of California, County of Los Angeles, styled as *Admire Capital Lending LLC, et al. v. 450 S. Western, LLC*, Case No. BC664871 (the "State Court Action").  The State Court Action concerns disputes over the Admire Belmont Note, which Admire and Belmont contend, among other things, gave them an option to convert the outstanding indebtedness into an equity interest in the Company (the "Conversion Option").  The Debtor disputes Admire and Belmont's conversion rights, and in turn, filed a cross-complaint for, *inter alia*, breach of contract, breach of fiduciary duty, fraudulent concealment, fraudulent misrepresentation, and declaratory relief deeming the Convertible Note as void.[2]  The State Court Action triggered a series of actions and cross-actions which further diminished the Debtor's financial ability to operate the shopping center.[3]

17.     The Debtor also successfully warded off attempts in October of 2017 by way of injunction orders from Admire and Belmont to take over its ownership and operations, including attempts to file public documents with the California Secretary of State naming the managing

---

[2] On or about November 4, 2019, Mrs. Rhee's son and daughter, David and Steffany Rhee, intervened in the State Court Action seeking declaratory relief as to the ownership of the Debtor (the "David and Steffany Rhee Action").

[3] On December 7, 2017, Admire and Belmont filed a complaint styled as *Admire Capital Lending, LLC v. Hyun Soon Oh, et al.*, Case Number BC686225 (the "Second Admire Action"), for *inter alia* breach of personal guaranties.  On or about May 25, 2018, Mrs. Rhee, Steffany, David, Gaju Market and Carminita Corporation filed a cross-complaint against Admire, Belmont, and others for fraud and breach of fiduciary duty.  On November 19, 2018, the Debtor filed a complaint styled as *450 S. Western, LLC v. Admire Capital Lending, LLC, et al.*, Case Number 18STCV05636 (the "450 Action"), for breach of contract, rescission, and fraudulent misrepresentation.  Various motions for summary judgment have been filed, granted, denied, and continued.  This case was filed just prior to another such hearing with the notices of default and receiver requests pending.

AFDOCS/21507845.2

member of Admire, Richard Kim, as manager of the Debtor and responding to attempts to remove Mrs. Rhee as its manager.

18.     The State Court Action has had a crippling effect on the Debtor; significant time and resources have been allocated to the lawsuit and its operations has suffered as a result.  If an adverse judgment were to be entered against the Debtor, I have been informed and believe that Admire and Belmont will seek to take control of the Debtor and its assets for its sole and singular benefit and to the detriment of the Debtor's other creditors.

19.     In an effort to finally resolve this matter and keep legal expenses to a minimum, the Debtor has made multiple good faith attempts to settle the State Court Action and its related litigations, including a formal mediation held on December 9 and 10, 2019, to no avail after post-mediation unreasonable material changes were demanded by Admire and Belmont.

20.     Due in part to the ongoing State Court Action, the Company has failed on multiple occasions to meet its obligations under the secured notes.  First and foremost, the Debtor is in default of the EB-5 Loan, and a notice of default was recorded by G450 LLC on November 19, 2019.  As of the Petition Date, the outstanding balance under the EB-5 Loan is approximately $29,932,758.97.

21.     Notices of default were also recorded by Pontis Capital and Five West on November 19, 2019.  As of the Petition Date, the outstanding balance under the loans held by the two lenders are $4,654,666.66 and $5,818,333.44, respectively.  Additionally, on December 24, 2019, Evergreen Capital commenced action to seek appointment of a receiver to take possession of the shopping center property, styled as *Evergreen Capital Assets LP v. 450 S. Western, LLC et al.*, Case No (the "Receivership Action").

22.     Owing to its financial constraints, the accruing legal expenses allocated to the State Court Action and related litigations, and faced with the threat of foreclosure by its secured lenders, the Debtor decided it would commence a chapter 11 case with the initial intention of quickly confirming a chapter 11 plan of reorganization or effectuate a sale of substantially all of its assets as a going concern in order to maximize value for creditors.  Thus, on January 10, 2020 (the "Petition Date"), the Debtor filed its voluntary petition for relief under chapter 11 of the Title

AFDOCS/21507845.2

11 of the U.S. Code (the "Bankruptcy Code").

### III.

### DISCUSSION RE MOTIONS FILED CONCURENTLY HEREWITH

23.    I believe the Company will suffer severe and irreparable harm if it does not promptly obtain the relief requested in its Motions.  The facts and circumstances relating to the relief requested in these Motions, and the urgency of that relief, are set forth in the following sections.

**A.    Emergency Motion for Use of Cash Collateral**

24.    I have reviewed the Cash Collateral Motion, and it includes an accurate summary of the material provisions regarding the proposed continued use of cash collateral.

25.    A true and correct copy of my proposed cash collateral budget is attached hereto as **Exhibit 4** (the "Budget") and incorporated herein by this reference.  I personally worked with the Debtor's Chief Financial Officer, Joshua Park, to prepare the attached Budget through April 4, 2020, and I believe it sets forth the reasonable expenses necessary to maintain the Debtor's operations going forward.

26.    The Motion requests permission to use cash collateral pursuant to the Budget through and including April 4, 2020 in an amount not to exceed 115% of the aggregate amounts contained in the Budget, with all budget savings carried over and usable in subsequent months.

27.    I believe the Debtor's estate will suffer immediate and irreparable harm absent the relief requested by the Motion and the continued use of cash collateral pursuant to the Budget, and that the terms of the Cash Collateral Motion proposed herein are fair and reasonable and that they adequately protect the parties who assert a security interest in the cash collateral.

**B.    Emergency Motion for Order Directing Tenants to Pay Rent For Post-Petition Use and Occupancy to the Debtor**

28.    Additionally, I submit this Declaration in support of the Rents Motion.

29.    Payment of post-petition rent is critical to the Debtor's business as it relies exclusively on rental income from its tenants to fund its day-to-day operations.

AFDOCS/21507845.2

30.     The majority of the tenants are Korean storeowners who may not have dealt with a landlord in bankruptcy, and therefore I posit that granting of the Rents Motion is warranted under these circumstances to remove any confusion as to the tenants' obligations to keep making timely rental payments to the Debtor.

**C.     Motion for Order Approving Engagement of CRO and Authorizing Monthly Fee Statement Procedures**

31.     Lastly, I submit this declaration in support of the CRO Motion.

32.     As set forth in the CRO Motion, I have reviewed the proposed compensation procedures including the filings and serving of Monthly Fee Statements and have no objection thereto.

33.     Prior to executing the Engagement Agreement I took good faith efforts to ensure that Wilshire Partners is disinterested.  To my knowledge and after reasonable investigation, Wilshire Partners has no connections with the Debtor, the Debtor's members/principal, the Debtor's creditors, or any other party-in-interest.  As such, I am satisfied that Wilshire Partners is a "disinterested person" as defined in Bankruptcy Code section 101(14).

34.     Wilshire Partners is not a pre-petition creditor nor equity security holder of the Debtor.  Additionally, prior to my appointment as CRO, no employee or member of Wilshire Partners was a director, officer, nor employee of the Debtor.

35.     Wilshire Partners does not represent to my knowledge any interest materially adverse to the estate and no employee or member of Wilshire Partners is related to a bankruptcy judge in the Central District of California or any employee of the Office of the United States Trustee.

36.     My hourly rate for this engagement is $750.  To control the Debtor's costs in this bankruptcy case, I agreed to defer one-third of my earned fees as follows: (i) the Debtor will be invoiced at the rate of $500 per hour and payable after receipt of each invoice, and (ii) the remaining $250 per hour will accrue and be payable upon one of the following events: (a) confirmation of the Debtor's chapter 11 plan of reorganization, (b) closing of the sale of the Debtor's primary assets, or (c) receipt of refinance funding sufficient pay off the EB-5 Loan.

1      37.     Wilshire Partners received a pre-petition retainer of $25,000, and as of the Petition

2  Date, the pre-petition retainer held by Wilshire Partners has been reduced to $22,000.

3

4      I declare under penalty of perjury under the laws of the United States of America that the

5  foregoing is true and correct.

6

7      Executed Friday, January 10, 2020, at Pasadena, California.

8

9                                                  Richard J. Laski

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

- 10 -

EXHIBIT 1

# Richard J. Laski

470 Maylin Street, Pasadena, CA 91105
RLaski@WilshireLLC.com
(716) 868-8483

## Profile

***Trustee, Receiver, Restructuring Officer***
***20 years experience managing and restructuring distressed companies***
***Specializes in alternate dispute resolution avoiding costly courtroom litigation***

••• **Chapter 11 Trustee** – Specializes in resolving complex business disputes and managing financially distressed businesses through the reorganization process. Managed largest Chapter 11 case in Los Angeles, CA in 2015. Managed largest Chapter 11 case in Buffalo, NY in 2001.

••• **Chief Restructuring Officer** – Saved world's largest luxury automobile dealership from threatened bankruptcy. Negotiated forbearance agreement with lender, stabilized business, established immediate key relationships with lenders, customers, suppliers and employees. Completed business recapitalization with minority interest investor in less than seven months.

••• **Provisional Director** – Resolved heated litigation between partners of highly profitable hardwood flooring importer. Using conference room and one-on-one meetings, negotiated refinancing and buy-out of 50% owner avoiding costly courtroom litigation and returned business to stable operations.

## Career Summary

**Wilshire Partners of CA, LLC** ••• Founder and Managing Director            **2003 – Present**
*Provides Chief Restructuring Officer, Interim CEO and Trustee services to distressed companies.*

••• **Chief Restructuring Officer and Interim CEO experience in the following industries:**
Luxury automobile dealership, hotel & hospitality, real estate, health care, transportation, petroleum distribution, construction contractor, manufacturing, import & distributorship, churches & nonprofit.

••• **Chapter 11 Trustee appointments:**
> *Holy Hill Community Church* – Settled Korean church faction disputes & managed finances
> *Wrightwood Guest Ranch, LLC* – Wedding & zipline business –reorganized & sold land & assets
> *SYS Hospitality LLC* – Two hotels – managed & reorganized hotels, sold via consensual plan
> *Michael Kamen* – Resolved complex owner disputes & managed more than 50 real estate holdings
> *WMI, Inc.* – Construction contractor – managed and restructured business, settled all contracts
> *We Care Transportation, Inc.* – NY bussing company – reorganized & sold via consensual plan
> *Fadlallah Kairouz* – Petroleum distributor – reorganized & sold via consensual plan
> *ARC Fastener Supply, Inc*. – Parts distributor – sold assets via liquidating plan

••• **Special court appointments:**
> *LA Hardwood Flooring, Inc. -* *Court appointed Provisional Director* – import & distribution
> *Seaside Recovery Center, LLC* – *Court appointed Examiner* – health care industry

**CNB International, Inc. D.I.P.** ••• CEO of international machinery manufacturer            **1999 – 2003**
**Verson International Group, plc.** ••• U.S. CFO of UK publicly-traded company            **1993 – 1999**
**Leica, Inc.** ••• U.S. Corporate Controller for Swiss parent company            **1990 – 1993**
**KPMG and Deloitte & Touche** ••• Dallas, TX and Buffalo, NY tax specialist            **1982 – 1990**

## Certifications

Certified Public Accountant – Certified since 1984
Chapter 11 Trustee Security Clearance – US Department of Justice

## Education

**University of Notre Dame**      Bachelor of Business Administration – Accounting – 1982

# EXHIBIT 2



## ENGAGEMENT AGREEMENT

This Agreement sets forth the terms of the retention of Richard J. Laski ("Laski") to serve as Chief Restructuring Officer ("CRO") of 450 S. Western, LLC, a California corporation, (the "Company"). Laski is the Managing Director of Wilshire Partners of CA, LLC ('Wilshire Partners").

A.      Effective Date.

This Agreement will be effective as of December 27, 2019.

B.      Scope of Services.

The Company hires Laski to serve as its CRO and provide the Services described below.  Laski may from time to time use the services of personnel at Wilshire Partners, including Amy Thibodeaux, to assist him in the performance of the obligations of this Agreement.

Laski will serve as the CRO reporting directly to the Board of Directors. In the capacity of CRO, Mr. Laski will be an officer of the Company and will enjoy the same full and free access to the Board of Directors as other members of the senior management of the Company and, to the extent determined by the Board of Directors from time to time, will be granted the right to attend and participate (but not vote) in the meetings of the Company's Board of Directors.

Laski will provide the Company with restructuring management services and CRO services (the "Services") including, but not limited to the following:

1.      Lead efforts to facilitate the Company's financial restructuring, refinancing, and potential sale efforts;

2.      Lead management efforts to identify and implement both short-term and long-term liquidity generation and profit improvement in an effort to improve the ongoing viability of the Company;

3.      Participate in development of strategy to negotiate with key stakeholders in order to effectuate a refinancing, sale transaction, or restructuring;

4.      Assist with negotiations with the secured lenders and other parties, as appropriate, to facilitate restructuring efforts;

5.      Work with counsel to develop strategic solutions to address demands of divergent stakeholders;

6.      Assist the Company in identifying, reviewing and negotiating debtor in possession financing, if required;

7.      Review and approve 3-month cash forecasts, Monthly Operating Reports, and other financial reporting as needed for negotiations with stakeholders;

8.      Assist the Company and their other advisors with the formulation of a chapter 11 plan of reorganization / liquidation and the preparation of the corresponding disclosure statement;

9.      Identify nonessential assets to be sold and managing the sale process;

10.     Attend meetings and court hearings as may be required;

11.     Render expert testimony as requested from time to time;

12.     In his capacity as CRO, Mr. Laski will not be a member of the Board of Directors, but he may participate in Board meetings in order to report on the progress of the turnaround and restructuring initiatives; and,

13.     Perform other duties and other services as mutually agreed to by Laski and the Company.

In his capacity as CRO, Laski will:

- Report directly to the Board of Directors of the Company and make recommendations thereto and consult therewith regarding his activities and the Services as discussed above.
- Work on a collaborative basis with senior executives of the Company, coordinate the restructuring efforts of the Company, subject to the reporting structure above, including the identification, development, and implementation of strategies related to the Company's debt obligations, business plan, and other related matters.
- In consultation with the Company's senior executives, coordinate and manage the Services as discussed above.
- Laski may use the services of personnel at Wilshire Partners to assist him in the performance of the obligations of this Agreement.

The Company agrees that this Agreement shall not and is not intended to prevent Wilshire Partners from expanding its services to include financial advisory services, business management services, or other services as needed.

C.      Company's Duties.

The Company agrees to be truthful with Laski, to cooperate, to keep Laski informed of any information or developments which may come to the Company's attention, to abide by this Agreement and to pay Laski's bills on time.

The Company agrees to provide complete and reasonably prompt access to its books, records, personnel and other information reasonably requested by Laski. In addition, Laski shall be granted reasonable access to the Company's offices, computers, printers, fax machines and other business machines, office supplies and staff personnel only in the performance of his obligations under this Agreement. The Company shall provide such access and use to Laski free of charge. If Laski reasonably believes that outside service providers for certain office functions (such as photocopying, printing and delivery services) are required, then Laski may request that the Company's pay such costs directly to such service providers. Such request shall be granted at the sole discretion of the Company; provided, however, that such request may not be unreasonably withheld.

D.    Fees and Billing Practices.

    1.    Rates, Covered Services and Billing Increments.

The Company agrees to pay by the hour at the rate of $750.00 for all time spent on Company matters by Laski (payable at the rate of $500.00 currently plus $250.00 deferred as detailed in Section E below).

When appropriate, Laski may use the services of Amy Thibodeaux at Wilshire Partners at the hourly rate of $175.00 for CRO support, cash forecasts, Monthly Operating Reports, and other accounting services.

Time is charged in minimum units of one-tenth (.1) of an hour. The time charged will include the time Laski spends on telephone calls relating to the Company's matters.  Laski will charge for time in court and elsewhere and for travel time, both local and out of town.

The Company agrees that Laski and Amy Thibodeaux are not employees of the Company, and they shall not receive a W-2 from the Company for any fees earned under this Engagement, and such fees are not subject to any form of withholding by the Company.  The Company shall provide Laski a standard form 1099 on request for fees earned under this Engagement.

    2.    Costs and Other Charges.

Laski will incur various costs and expenses in performing services under this Agreement.  The Company agrees to pay for all costs, disbursements and expenses in addition to the hourly fees. The Company agrees to pay the cost of transportation, meals, lodging and all other costs of any necessary out-of-town travel by Laski and Amy Thibodeaux.

E.    Retainer, Billing Statements and Timing of Payments.

The Company will remit a retainer to Wilshire Partners in the amount of $25,000.00 upon the signing of this Engagement Agreement.  This retainer will be held in a segregated trust account at Wilshire Partners and will be credited against any amounts due at the termination of this Engagement. Any unused portion will be returned to the Company upon the satisfaction of all obligations hereunder.

Laski will send the Company weekly statements for fees and costs incurred. Each statement will be payable upon receipt and no later than seven (7) days after receipt.  If a statement is not provided within seven (7) days after the end of a week, the Company may request such statement and Laski will provide it within seven (7) days.  The statements shall include the amount, rate, basis of calculation or other method of determination of the fees and costs, which costs will be clearly identified by item and amount.

The Company understands and accepts that Laski's normal hourly rate for comparable CRO services is $750 per hour. In an effort to control the Company's costs, Laski and the Company agree to defer a portion of his earned fees as follows:

    CURRENT PORTION: Invoiced at the rate of $500.00 per hour and payable within seven (7) days after receipt of each weekly invoice, and

    DEFERRED PORTION: Invoiced at the rate of $250.00 per hour and payable only upon the confirmation of a Chapter 11 plan of reorganization, or upon the receipt of refinance funding sufficient to pay the Company's primary secured creditor, or upon the closing of the sale of the Company's primary assets.

Laski contemplates, understands, and accepts that the Company is expected to be a debtor in proceedings under chapter 11 and the obligation of the Company to pay the fees and expenses of Laski accruing during the chapter 11 period may become subject to court approval.

Additionally, if and when debtor in possession financing is obtained by the Company, Laski may seek an appropriate carve-out in respect of the payment of fees and expenses he incurred.

F.    Discharge and Withdrawal

The employment of Laski as CRO for the Company may only be terminated by the Company for cause pursuant to court order following a noticed motion filed in the Case that establishes cause for termination.

Laski's services under this Agreement may be terminated by Laski, at will, effective no less than thirty (30) days following filing of written notice in the Case. Such notice by Laski shall be served on the Company, the Company's bankruptcy counsel, the United States Trustee and counsel for the official committee of unsecured creditors, if any, at their respective addresses on file in the Case.

In addition, this Agreement shall be terminated upon entry of an order in the Case (i) converting the Bankruptcy Case to case under Chapter 7 or (ii) appointing a trustee.  In the event of the termination of this Agreement, Laski shall be entitled to all compensation and expenses accruing through the effective date of the termination.

G.    Disclosure of Representations.

Based on the information Laski has received to date, he is not aware of any current or past relationship with another party interested in the subject matter of this engagement that would constitute a conflict of interest, nor does Laski itself have an interest in the subject matter of the engagement.

H.    Indemnification and Insurance

Subject to any limitation required by the Bankruptcy Court, the Company agrees to indemnify and hold harmless Laski and individuals he delegates to perform Services of the CRO (each, an "Indemnified Party") from and against any losses, claims, damages or expenses, or if same was or is or becomes a party to or witness or other participant in, or is threatened to be made a party to or witness or other participant in, any threatened, pending or completed action, suit, proceeding or alternative dispute resolution mechanism, or any hearing, inquiry or investigation, by reason of (or arising in part out of) any event or occurrence related to this Agreement or any predecessor agreement for services or the fact that any Indemnified Party is or was an agent, officer director, employee or fiduciary of the Company, or by reason of any action or inaction on the part of any Indemnified Party while serving in such capacity (an "Indemnifiable Event") against expenses (including reasonable attorneys' fees and disbursements), judgments, fines, settlements and other amounts actually and reasonably incurred in connection with any Indemnifiable Event.  The Indemnified Party shall promptly forward to the Company all written notifications and other matter communications regarding any claim that could trigger a Company's indemnification obligations under this Section H. If the Company so elects or is requested by an Indemnified Party, the Company will assume the defense of such action or proceeding, including the employment of counsel reasonably satisfactory to the Indemnified Party and the payment of the reasonable fees and disbursements of such counsel. In the event, however, such Indemnified Party is advised by counsel that having common counsel would present such counsel with a conflict of interest or if the defendants in, or targets of, any such action or proceeding include both an Indemnified Party and the Company, and such Indemnified Party is advised by counsel that there may be legal defenses available to it or other Indemnified Parties that are different from or in addition to those available to the Company, or if the Company fails to assume the defense of the action or proceeding or to employ counsel reasonably satisfactory to such Indemnified Party, in either case in a timely manner, then such Indemnified Party may employ separate counsel to represent or defend it in any such action or proceeding and the Company will pay the reasonable fees and disbursements of such counsel; provided, however, that the Company will not be required to pay the fees and disbursements of more than one separate counsel (in addition to local counsel) for an Indemnified Party in any jurisdiction in any single action or proceeding. In any action or proceeding the defense of which the Company assumes, the Indemnified Party will have the right to participate in such litigation and to retain its own counsel at such Indemnified Party's own expense. The Company further agrees that it will not, without the prior written consent of the Indemnified Party (which consent shall not be unreasonably withheld or delayed), settle or compromise or consent to the entry of any judgment in any pending or threatened claim, action,

suit or proceeding in respect of which indemnification or contribution may be sought hereunder (whether or not the Indemnified Party or any other Indemnified Party is an actual or potential party to such claim, action, suit or proceeding) unless (i) to the extent that such settlement, compromise or consent purports directly or indirectly to cover the Indemnified Party or any other Indemnified Party, such settlement, compromise or consent includes an unconditional release of the Indemnified Party and each other Indemnified Party from all liability arising out of such claim, action, suit or proceeding, or (ii) to the extent that such settlement, compromise or consent does not purport directly or indirectly to cover the Indemnified Party or any other Indemnified Party, the Company has given the Indemnified Party reasonable prior written notice thereof and used all reasonable efforts, after consultation with the Indemnified Party, to obtain an unconditional release of the other Indemnified Parties hereunder from all liability arising from all liability arising out of such claim, action, suit or proceeding. The Indemnified Party shall not enter into any closing agreement or final settlement that could trigger the Company's indemnification obligations under this Section H without the written consent of the Company, which shall not unreasonably be withheld or delayed or conditioned. The Company will not be liable for any settlement of any action, claim, suit or proceeding affected without the Company's prior written consent, which consent shall not be unreasonably withheld or delayed or conditioned, but if settled with the consent of the Company or if there be a formal judgment for the plaintiff, the Company agrees to indemnify and hold harmless the Indemnified Party from and against any loss or liability by reason of such settlement or judgment, as the case may be.

This indemnity shall not apply to any portion of any such losses, claims, damages, liabilities and expenses to the extent it is found in a final judgment by a court of competent jurisdiction to have resulted primarily from the bad faith, gross negligence, willful misconduct or violation of law of any such Indemnified Party. The Company agrees to use commercially reasonable best efforts to (i) include Mr. Laski, and individuals he delegates to assume officer or director positions with the Company or who perform Services hereunder, as insureds under the Company's directors and officers insurance; and (ii) unless it is unable to do so at a commercially reasonable cost, purchase a three-year directors and officers insurance "tail" or runoff policy (or such a policy for such shorter period as Company has the right to or is otherwise able to purchase) covering the period of Laski's service. In connection with this engagement Company represents to Laski that Company hereby represents that (i) it has timely remitted and will continue to timely remit to the appropriate beneficiaries all employee source deductions, payroll and other taxes, benefits deductions, and contribution to employee benefit programs, and has timely collected and remitted sales and use and other similar taxes to appropriate collecting authorities and will continue timely to do so; (ii) there is no litigation or other proceeding pending, or to knowledge of Company, threatened (nor is Company aware of facts that could give rise to such), that seeks or could give rise to personal liability of officers and directors of the Company; and (iii) the Company has been in continuing compliance with all applicable laws and regulations concerning the discharge, treatment, storage, transportation or use of hazardous materials and is aware of no facts or circumstances that could give rise to Company responsibility or liability under such laws and regulations.

I.    Limitation of liability

The Company and Laski agree that no Indemnified Person shall have any liability as a result of the Company's retention of Laski, the execution and delivery of this Agreement, the provision of Services or other matters relating to or arising from this Agreement, other than liabilities that shall have been determined by final non-appealable order of a court of competent jurisdiction to have resulted from the gross negligence or willful misconduct of an Indemnified Person or Persons. Without limiting the generality of the foregoing, in no event shall any Indemnified Person be liable for consequential, indirect or punitive damages, damages for lost profits or opportunities or other like damages or claims of any kind.

J.    Disclaimer of Guarantee and Estimates.

Nothing in this Agreement and nothing in Laski's statements to the Company will be construed as a promise or guarantee about the outcome of the matter.  Laski makes no such promises or guarantees. Laski's comments about the outcome of the matter are expressions of opinion only.

K.    Entire Agreement; No Third-Party Beneficiaries.

This Agreement contains the entire agreement of the parties.  No other agreement, statement, or promise made on or before the effective date of this Agreement will be binding on the parties and this Agreement is not intended to confer upon any person other than Laski and the Company any rights or remedies.

L.    Binding Nature of Agreement.

This Agreement shall be binding upon and inure to the benefit of Laski and the Company.

M.    Severability in Event of Partial Invalidity.

If any provision of this Agreement is held in whole or in part to be unenforceable for any reason, the remainder of that provision and of the entire Agreement will be severable and remain in effect.

N.    Modification by Subsequent Agreement.

This Agreement may be modified by subsequent agreement of the parties only by an instrument in writing signed by each party, or an oral agreement only to the extent that the parties carry it out.

O.    Miscellaneous Matters.

Laski is being engaged by the Company that appears in the signature block below.

The validity of this Agreement, its construction, interpretation, and enforcement, and the rights of the parties hereto shall be determined under, governed by, and construed in accordance with the internal laws of the State of California, without regard to principles of conflicts of law.

This Agreement may be executed by the signatories through use of multiple copies of the signature pages.

The Company acknowledges having received a signed duplicate copy hereof for Company to keep for its own records.

P.    Effective Date.

This Agreement will govern all services performed by Laski on behalf of the Company commencing with the date Laski first performed services.  The date at the beginning of this Agreement is for reference only.  Even if this Agreement does not take effect, the Company will be obligated to pay Laski the reasonable value of any services Laski may have performed for the Company.

THE PARTIES HAVE READ AND UNDERSTOOD THE FOREGOING TERMS AND AGREE TO THEM AS OF THE DATE LASKI FIRST PROVIDED SERVICES.  THE COMPANY AGREES TO BE LIABLE FOR ALL OBLIGATIONS UNDER THIS AGREEMENT.

[Signature Page to Follow]

Dated: January _8_, 2020

RICHARD J. LASKI

By: _____

Richard J. Laski
Managing Director
Wilshire Partners of CA, LLC

450 S WESTERN, LLC

By: _____ (Print Name)

_____ (Title)

18

# EXHIBIT 3

## UNANIMOUS WRITTEN CONSENT OF MEMBERS AND MANAGER OF
## 450 S. WESTERN, LLC

### Dated: January 7, 2020

The undersigned, constituting all of the members and the manager ("Members") of 450 S. Western, LLC., a California limited liability company ("Company"), do hereby take the following actions on behalf of the Company by unanimous written consent:

**WHEREAS**, the Members have reviewed the liabilities and liquidity of the Company and fully considered the strategic alternatives available to the Company and the impact of the decisions authorized herein on the Company's business;

**WHEREAS**, the Members wish to appoint and confirm Richard J. Laski of Wilshire Partners of CA, LLC as Chief Restructuring Officer ("CRO") and ratify all acts and actions of such officer so taken on behalf of the Company;

**WHEREAS**, the Members wish to authorize the CRO to file a voluntary petition on behalf of the Company seeking relief under the provisions of chapter 11 of title 11 of the United States Code (the "Bankruptcy Code") in the United States Bankruptcy Court for the Central District of California (the "Bankruptcy Court"); and

**NOW, THEREFORE**, be it resolved that the Members hereby take the following actions:

### Election of Chief Restructuring Officer

**RESOLVED**, that the following person is elected to the offices of the Company indicated opposite their name below, effective immediately.  Such person shall serve until he resigns or is terminated:

Richard J. Laski                              Chief Restructuring Officer.

**FURTHER RESOLVED**, that any officer of the Company is authorized, empowered and directed on behalf of the Company and in its name to execute and deliver any and all further instruments or documents required to be executed and delivered by or on behalf of the Company and to perform, or cause to be performed, any and all acts required of the Company or to do, or cause to be done, such other acts and things as such officers may in their discretion deem necessary or appropriate to carry out the purpose and intent of the foregoing resolutions.

### Ratification of Engagement Letter

**FURTHER RESOLVED**, that the certain engagement letter dated December 27, 2019, between the Company and Wilshire Partners of CA, LLC whereby Wilshire Partners of CA, LLC was engaged to provide certain CRO and financial advisory services was entered into in good faith and is judged to be in the best interest of the Company and therefore is hereby ratified, approved, and confirmed in all respects as an authorized act of the Company.

## Authorization of CRO to Commence A Bankruptcy Case

**FURTHER RESOLVED**, that the CRO is hereby authorized to determine, based upon the Company's condition, subsequent events, and advice of counsel, whether it is desirable and in the best interests of this Company, its creditors, its members, and other parties in interest, to file a petition for relief under the Bankruptcy Code on behalf of the Company.

**FURTHER RESOLVED**, that the CRO is hereby authorized to also determine, based upon the Company's condition, subsequent events, and advice of counsel, whether a filing petition under chapter 11 of the Bankruptcy Code best serves the interests of this Company, its creditors, its members, and other parties in interest.

**FURTHER RESOLVED**, that, if the CRO makes such determinations, a petition under chapter 11 of the Bankruptcy Code is to be filed as submitted by the CRO. Such a petition is hereby approved and adopted in all respects, and the CRO is hereby authorized and directed, on behalf of and in the name of this Company, to execute and verify such a petition and to cause the petition to be filed with the Bankruptcy Court.

**FURTHER RESOLVED**, that—in connection with commencing, sustaining, or successfully terminating a proceeding under chapter 11 of the Bankruptcy Code—the CRO is hereby authorized to negotiate, execute, deliver, perform and file any and all additional documents, schedules, statements, lists, papers, agreements, certificates and/or instruments (or any amendments or modifications thereto) and to take any and all other actions that the CRO deems necessary and proper, including retaining and employing legal counsel.

*[Signature Page to Follow]*

20

**IN WITNESS WHEREOF**, the undersigned have executed the foregoing unanimous written consent as of the date first written above.

Hyun Soon Rhee
Member & Manager

Steffany Rhee
Member

David Rhee
Member

3

EXHIBIT 4

| | January 2020 | | | | | February 2020 | | | | | March 2020 | | | | | | Grand Total |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| **Week Beginning ------->** | 1/10/20 | 1/12/20 | 1/19/20 | 1/26/20 | Total | 2/2/20 | 2/9/20 | 2/16/20 | 2/23/20 | Total | 3/1/20 | 3/8/20 | 3/15/20 | 3/22/20 | 3/29/20 | Total | Grand Total |
| **Week Ended ------------>** | 1/11/20 | 1/18/20 | 1/25/20 | 2/1/20 | 3 week | 2/8/20 | 2/15/20 | 2/22/20 | 2/29/20 | 4 week | 3/7/20 | 3/14/20 | 3/21/20 | 3/28/20 | 4/4/20 | 5 week | 13 week |
| | Actual | Actual | Forecast | Forecast | Forecast | Forecast | Forecast | Forecast | Forecast | Forecast | Forecast | Forecast | Forecast | Forecast | Forecast | Forecast | Forecast |
| **OPENING OPERATING CASH BALANCE** | 11,346 | 11,346 | 218,220 | 153,920 | 11,346 | 65,970 | 21,870 | 240,844 | 201,044 | 65,970 | 95,194 | 51,594 | 271,068 | 237,368 | 206,368 | 95,194 | 11,346 |
| **RECEIPTS** | | | | | | | | | | | | | | | | | |
| Gaju Market Corp | | 169,152 | | | 169,152 | | 169,152 | | | 169,152 | | 169,152 | | | | 169,152 | 507,456 |
| Kreation Enterprise Corp | | 35,136 | | | 35,136 | | 35,136 | | | 35,136 | | 35,136 | | | | 35,136 | 105,408 |
| Other tenants | | 56,636 | | | 56,636 | | 67,136 | | | 67,136 | | 67,136 | | | | 67,136 | 190,908 |
| Parking | | | | | | | | | | | | | | | | | |
| Other | | | | | | | | | | | | | | | | | |
| **Gross Cash Receipts** | - | 260,924 | - | - | 260,924 | - | 271,424 | - | - | 271,424 | - | 271,424 | - | - | - | 271,424 | 803,772 |
| **EXPENSES** | | | | | | | | | | | | | | | | | |
| Payroll and Payroll Taxes - Office | | | 3,200 | | 3,200 | 3,200 | | 3,200 | | 6,400 | 3,200 | | 3,200 | | 3,200 | 9,600 | 19,200 |
| Payroll and Payroll Taxes - Food Court | | | 3,700 | | 3,700 | 3,700 | | 3,700 | | 7,400 | 3,700 | | 3,700 | | 3,700 | 11,100 | 22,200 |
| CFO/COO - Joshua Park | | | 23,500 | | 23,500 | 23,500 | | | | 23,500 | 23,500 | | | | | 23,500 | 70,500 |
| CRO Fees | | 8,500 | 8,500 | 8,500 | 25,500 | 7,500 | 7,500 | 7,500 | 7,000 | 29,500 | 7,000 | 7,000 | 7,000 | 7,000 | 6,500 | 34,500 | 89,500 |
| Advertising & Marketing | | | 1,000 | | 1,000 | | | 1,000 | | 1,000 | | | 1,000 | | | 1,000 | 3,000 |
| Bank Service Charges | | | | 250 | 250 | | | | 250 | 250 | | | | | 250 | 250 | 750 |
| Delivery - FedEx & Messenger | | 150 | | | 150 | | 150 | | | 150 | | 150 | | | | 150 | 450 |
| Dues & Subscriptions | | 100 | | | 100 | | 100 | | | 100 | | 100 | | | | 100 | 300 |
| Food Court Expense | | 2,200 | 2,200 | 2,200 | 6,600 | 2,200 | 1,600 | 2,200 | 1,600 | 7,600 | 2,200 | 1,600 | 2,200 | 1,600 | 2,200 | 9,800 | 24,000 |
| Insurance Expense | | 6,400 | | | 6,400 | | | 6,400 | | 6,400 | | | | 6,400 | | 6,400 | 19,200 |
| Office Supplies | | 100 | | | 100 | | 100 | | | 100 | | 100 | | | | 100 | 300 |
| Maintenance: | | | | | | | | | | | | | | | | | |
| Cleaning | | | | 9,000 | 9,000 | | | | 9,000 | 9,000 | | | | | 9,000 | 9,000 | 27,000 |
| Elevator & Escalator | | | 5,500 | | 5,500 | | | 5,500 | | 5,500 | | | 5,500 | | | 5,500 | 16,500 |
| Gardening Service | | | 2,500 | | 2,500 | | | 2,500 | | 2,500 | | | 2,500 | | | 2,500 | 7,500 |
| Pest Control | | | 300 | | 300 | | | 300 | | 300 | | | 300 | | | 300 | 900 |
| Repair | | 1,000 | | | 1,000 | | 1,000 | | | 1,000 | | 1,000 | | | | 1,000 | 3,000 |
| Trash Service | | | 3,500 | | 3,500 | | | 3,500 | | 3,500 | | | 3,500 | | | 3,500 | 10,500 |
| Security Service | | | | 12,000 | 12,000 | | | | 12,000 | 12,000 | | | | 12,000 | | 12,000 | 36,000 |
| Taxes & Licenses: | | | | | | | | | | | | | | | | | |
| Property Tax | | | | | - | | | | | - | | | | | | - | - |
| LLC Franchise Tax | | | | | - | | | | | - | | | 800 | | | 800 | 800 |
| LA City Business Tax | | | | | - | | | | 20,000 | 20,000 | | | | | | - | 20,000 |
| Utilities Building - DWP | | 36,000 | | | 36,000 | | 36,000 | | | 36,000 | | 36,000 | | | | 36,000 | 108,000 |
| Utilities Food Court - DWP | | 2,000 | | | 2,000 | | 2,000 | | | 2,000 | | 2,000 | | | | 2,000 | 6,000 |
| Utilities - Waste Management | | | | 2,000 | 2,000 | | | | 2,000 | 2,000 | | | | | 2,000 | 2,000 | 6,000 |
| Miscellaneous | | 4,000 | 4,000 | 4,000 | 12,000 | 4,000 | 4,000 | 4,000 | 4,000 | 16,000 | 4,000 | 4,000 | 4,000 | 4,000 | 4,000 | 20,000 | 48,000 |
| **Total Cash Expenses** | - | 54,050 | 64,300 | 37,950 | 156,300 | 44,100 | 52,450 | 39,800 | 55,850 | 192,200 | 43,600 | 51,950 | 33,700 | 31,000 | 30,850 | 191,100 | 539,600 |
| **Net Operating Cash Flow** | - | 206,874 | (64,300) | (37,950) | 104,624 | (44,100) | 218,974 | (39,800) | (55,850) | 79,224 | (43,600) | 219,474 | (33,700) | (31,000) | (30,850) | 80,324 | 264,172 |
| **Debt & Nonoperating Expenses** | | | | | | | | | | | | | | | | | |
| Adequate Protection Payments: | | | | | | | | | | | | | | | | | |
| G450 LLC (Proposed) | | | | 50,000 | 50,000 | | | | 50,000 | 50,000 | | | | | 50,000 | 50,000 | 150,000 |
| Pontis Capital, LLC | | | | | - | | | | | - | | | | | | - | - |
| Five West Capital, LP | | | | | - | | | | | - | | | | | | - | - |
| Evergreen Capital Asset | | | | | - | | | | | - | | | | | | - | - |
| LA County Treasurer - Property Tax | | | | | - | | | | | - | | | | | | - | - |
| Professional Fees - Attorneys | No Cash Payments during first 13 weeks | | | | | | | | | | | | | | | | - |
| Professional Fees - CPA | No Cash Payments during first 13 weeks | | | | | | | | | | | | | | | | - |
| US Trustee Fees | No Cash Payments during first 13 weeks | | | | | | | | | | | | | | | | - |
| **Total Other Expenses** | - | - | - | 50,000 | 50,000 | - | - | - | 50,000 | 50,000 | - | - | - | - | 50,000 | 50,000 | 150,000 |
| **Ending Operating Cash Balance** | 11,346 | 218,220 | 153,920 | 65,970 | 65,970 | 21,870 | 240,844 | 201,044 | 95,194 | 95,194 | 51,594 | 271,068 | 237,368 | 206,368 | 125,518 | 125,518 | 125,518 |
| **Cash Accounts - Ending Balance** | | | | | | | | | | | | | | | | | |
| Operating Account (Pacific City -0917) | 11,346 | 218,220 | 153,920 | 65,970 | | 21,870 | 240,844 | 201,044 | 95,194 | | 51,594 | 271,068 | 237,368 | 206,368 | 125,518 | | 125,518 |
| Settlement Trust Account (DMS Law) | 747,742 | 747,742 | 747,742 | 747,742 | | 747,742 | 747,742 | 747,742 | 747,742 | | 747,742 | 747,742 | 747,742 | 747,742 | 747,742 | | 747,742 |
| Checking Account (Pacific City -0081) | 254 | 254 | 254 | 254 | | 254 | 254 | 254 | 254 | | 254 | 254 | 254 | 254 | 254 | | 254 |
| **Ending Cash Balances** | 759,342 | 966,216 | 901,916 | 813,966 | | 769,866 | 988,840 | 949,040 | 843,190 | | 799,590 | 1,019,064 | 985,364 | 954,364 | 873,514 | | 873,514 |

1/10/2020 450 S Western LLC - Cash Forecast v4 01-10-20

# PROOF OF SERVICE OF DOCUMENT

I am over the age of 18 and not a party to this bankruptcy case or adversary proceeding.  My business address is:

Arent Fox LLP, Gas Company Tower, 555 West Fifth Street, 48th Floor, Los Angeles, CA 90013.

A true and correct copy of the foregoing document entitled (*specify*): **"FIRST DAY" DECLARATION OF RICHARD J. LASKI IN SUPPORT OF: (I) EMERGENCY MOTION FOR INTERIM AND FINAL ORDERS AUTHORIZING USE OF CASH COLLATERAL; (II) EMERGENCY MOTION FOR ORDER DIRECTING TENANTS TO PAY RENT FOR POST-PETITION USE AND OCCUPANCY TO THE DEBTOR; AND (III) MOTION FOR ORDER (1) APPROVING ENGAGEMENT AGREEMENT OF WILSHIRE PARTNERS OF CA, LLC AND (2) AUTHORIZING MONTHLY FEE STATEMENT PROCEDURES AND PAYMENT** will be served or was served **(a)** on the judge in chambers in the form and manner required by LBR 5005-2(d); and **(b)** in the manner stated below:

**1.  TO BE SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING (NEF)**:  Pursuant to controlling General Orders and LBR, the foregoing document will be served by the court via NEF and hyperlink to the document. On (date) **1/10/2020** I checked the CM/ECF docket for this bankruptcy case or adversary proceeding and determined that the following persons are on the Electronic Mail Notice List to receive NEF transmission at the email addresses stated below:

☒ Service information continued on attached page

**2.  SERVED BY UNITED STATES MAIL**:
On (*date*) **1/10/2020**, I served the following persons and/or entities at the last known addresses in this bankruptcy case or adversary proceeding by placing a true and correct copy thereof in a sealed envelope in the United States mail, first class, postage prepaid, and addressed as follows. Listing the judge here constitutes a declaration that mailing to the judge <u>will be completed</u> no later than 24 hours after the document is filed.

**JUDGE**

Honorable Ernest M. Robles
United States Bankruptcy Court
255 E. Temple Street, Suite 1560
Los Angeles, CA 90012

☒ Service information continued on attached page

**3.  SERVED BY PERSONAL DELIVERY, OVERNIGHT MAIL, FACSIMILE TRANSMISSION OR EMAIL** (state method for each person or entity served):  Pursuant to F.R.Civ.P. 5 and/or controlling LBR, on (*date*) **_____**, I served the following persons and/or entities by personal delivery, overnight mail service, or (for those who consented in writing to such service method), by facsimile transmission and/or email as follows.  Listing the judge here constitutes a declaration that personal delivery on, or overnight mail to, the judge <u>will be completed</u> no later than 24 hours after the document is filed.

☐ Service information continued on attached page

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct.

| 1/10/2020 | AYLIN SOOKASSIANS | /s/ Aylin Sookassians |
|---|---|---|
| Date | Printed Name | Signature |

This form is mandatory.  It has been approved for use by the United States Bankruptcy Court for the Central District of California.

June 2012                                                       **F 9013-3.1.PROOF.SERVICE**

**1. TO BE SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING (NEF)**:

M Douglas Flahaut on behalf of Debtor 450 S. Western, LLC, a California limited liability company
flahaut.douglas@arentfox.com

David W. Meadows on behalf of Interested Party Courtesy NEF
david@davidwmeadowslaw.com

Aram Ordubegian on behalf of Debtor 450 S. Western, LLC, a California limited liability company
ordubegian.aram@arentfox.com

United States Trustee (LA)
ustpregion16.la.ecf@usdoj.gov

Christopher K.S. Wong on behalf of Debtor 450 S. Western, LLC, a California limited liability company
christopher.wong@arentfox.com, yvonne.li@arentfox.com

**2. SERVED BY UNITED STATES MAIL**:

**SECURED CREDITORS**

Evergreen Capital Assets LP
c/o Kevin Hughes
Foundation Law
2049 Century Park East, #2460
Los Angeles, CA 90067

Five West Capital, LP
440 S. Vermont #301
Los Angeles, CA 90020

G450 LLC
c/o Jason S. Kim, Esq
Blank Rome LLP
2029 Century Park East, 6th Floor
Los Angeles, CA 90067

Los Angeles County Tax Collector
P.O. Box 54018
Los Angeles, CA 90054

Pontis Capital, LLC
c/o Jason S. Kim, Esq.
Blank Rome LLP
2029 Century Park East, 6th Floor
Los Angeles, CA 90067

**20 LARGEST UNSECURED CREDITORS**

BMB Medical
450 S Western Ave. #205
Los Angeles, CA 90020

Belmont Two Investments Holdings
LLC and Admire Capital Lending, LLC
c/o S. Young Lim, Esq
3530 Wilshire Blvd., Suite 1300
Los Angeles, CA 90010

Bornga
450 S Western Ave. #308-312
Los Angeles, CA 90020

Buet
450 S Western Ave. #305 FC3
Los Angeles, CA 90020

David S. Kim & Associates
3731 Wilshire Blvd. #910
Los Angeles, CA 90010

Eunice Y. Tak
c/o Dan Lee
METAL Law Group, LLP
725 S. Figueroa St., Suite 3065
Los Angeles, CA 90017

This form is mandatory.  It has been approved for use by the United States Bankruptcy Court for the Central District of California.

June 2012

**F 9013-3.1.PROOF.SERVICE**

AFDOCS/21534481.1

Gaju Nail
450 S. Western Ave. #201
Los Angeles, CA 90020

Hyung Hoon
450 S Western Ave. #305 FC1
Los Angeles, CA 90020

JD Plumbing Development, Inc.
6705 Waring Ave. #1
Los Angeles, CA 90038

King Donkatsu
450 S Western Ave. #305 FC4
Los Angeles, CA 90020

Kirsch Kohn & Bridge LLP
21550 W Oxnard St #200
Woodland Hills, CA 91367

Kreation Enterprise Corp.
450 S Western Ave. #201
Los Angeles, CA 90020

Mealtop
450 S Western Ave. #307
Los Angeles, CA 90020

New Creation Engineering and
Builders, Inc.
17809 Clark Ave.
Bellflower, CA 90706

One Stop Financial Consulting, Inc.
c/o Kim, Shapiro, Park & Lee APLC
3435 Wilshire Blvd. #2050
Los Angeles, CA 90010

Philmont Management Inc.
3450 Wilshire Blvd #850
Los Angeles, CA 90010

Sino-US Investment and Management
Consultant Limited
c/o Felix Woo, Dentons US LLP
601 South Figueroa Street, Ste 2500
Los Angeles, CA 90017

SoCal Lien Solution, LLC
c/o Sagar Parikh Beverly Hills Law
Corp.
433 N. Camden Drive, 6th Floor
Beverly Hills, CA 90210

Square Mixx LA, Inc.
c/o Dan Lee
METAL Law group, LLP
725 S. Figueroa St., Suite 3065
Los Angeles, CA 90017

Ye Teahouse
450 S Western Ave. #315
Los Angeles, CA 90020

---

This form is mandatory.  It has been approved for use by the United States Bankruptcy Court for the Central District of California.

June 2012                                                      **F 9013-3.1.PROOF.SERVICE**

AFDOCS/21534481.1