**LEWIS BRISBOIS BISGAARD & SMITH LLP**
AMY L. GOLDMAN, SBN. 134088
  E-Mail: Amy.Goldman@lewisbrisbois.com
LOVEE D. SARENAS, SBN. 204361
  E-mail: Lovee.Sarenas@lewisbrisbois.com
MARIA L. GARCIA, SBN. 276135
  E-mail: Maria.L.Garcia@lewisbrisbois.com
633 West 5th Street, Suite 4000
Los Angeles, CA 90071
Telephone: 213.250.1800
Facsimile: 213.250.7900

Attorneys for the OFFICIAL COMMITTEE OF UNSECURED CREDITORS

## UNITED STATES BANKRUPTCY COURT

## CENTRAL DISTRICT OF CALIFORNIA

## LOS ANGELES DIVISION

| | |
|---|---|
| In re<br><br>450 S. Western, LLC, a California limited liability company,<br><br>          Debtor. | CASE NO.: 2:20-bk-10264-ER<br><br>Chapter 11<br><br>**OPPOSITION TO DEBTOR'S MOTION TO APPROVE STIPULATION WITH FIRST, SECOND, AND THIRD LIENHOLDERS REGARDING THE AUTOMATIC STAY, FORBEARANCE, AND RELATED MATTERS [Docket #138]**<br><br>**Hearing:**<br>Date: July 8, 2020<br>Time: 10:00 a.m.<br>Ctrm.: 1568<br>255 E Temple Street<br>Los Angeles, CA 90012 |

TO THE HONORABLE ERNEST M. ROBLES, UNITED STATES BANKRUPTCY JUDGE, THE DEBTOR, AND OTHER PARTIES IN INTEREST:

    The Official Committee of Unsecured Creditors ("Committee") of the above-captioned chapter 11 case hereby files this limited opposition ("Opposition") to the "Motion to Approve Stipulation with First, Second, and Third Lienholders Regarding the Automatic Stay, Forbearance, and Related Matters" ("Motion") filed by the debtor and debtor-in-possession 450 S. Western, LLC ("Debtor") (Docket No. 138). The Motion specifically seeks an order, pursuant to Federal Rule of Bankruptcy Procedure ("FRBP") 9019, for the approval of a compromise by and among the Debtor, on the one hand, and secured creditors G450 ("G450"), Pontis Capital, LLC

4829-5740-6913.1

("Pontis"), and Five West Capital, LP ("Five West" and collectively with G450 and Pontis, the "Secured Creditors"), on the other hand, as memorialized in the proposed "Stipulation Between Debtor-In-Possession and the First, Second, and Third Lienholders Regarding the Automatic Stay, Forbearance, and Related Matters" ("Stipulation") attached as Exhibit "1" of the Declaration of Richard J. Laski filed in support of the Motion.

The Committee believes certain provisions of the Stipulation are not in the best interest of the estate and creditors. Specifically, this Opposition is based on the grounds that any payments to Secured Creditors arising under this Stipulation should be applied to pay down their respective debts in accordance with 11 U.S.C. § 362(d)(3), ("Bankruptcy Code"); there are issues with respect to the amount of G450's secured claim; and more realistic and achievable benchmark dates should be set to accomplish a viable sale of the Debtor's major asset, the three-story, 80,316 sq. ft. shopping center located at 450 S. Western Avenue, Los Angeles, California 90020 ("Shopping Center" or "Property"), taking into account that the Property has only been on the market since April 2020 and the COVID-19 pandemic's impact on the market.

In support of its Opposition, the Committee represents as follows:

## **OPPOSITION**

**A.  Background**

1.  On January 10, 2020 ("Petition Date"), the Debtor sought bankruptcy relief under Chapter 11 of the Bankruptcy Code.

2.  Debtor is the owner and operator of the Shopping Center located at the intersection of South Western Avenue and 5th Street in the heart of Los Angeles' Koreatown neighborhood (Motion at 3). The Debtor further notes that the Shopping Center is the home of twenty-eight (28) thriving and popular stores, restaurants, and retail shops; is in a "prime location"; and is referred to as the Korean community's "Grove" or "Americana" in mid-Los Angeles and Glendale, respectively (Motion at 3-4).

3.  The Secured Creditors filed proofs of claim with the court asserting the following secured claims against the Property:

LEWIS
BRISBOIS
BISGAARD
& SMITH LLP
ATTORNEYS AT LAW

4829-5740-6913.1                                   2

a. On April 8, 2020, G450 filed its proof of claim, Claim No. 9-1, asserting a secured claim against the Shopping Center in the sum of $30,063,331.49 at an annual fixed interest rate of five percent (5%) per annum (including four percent (4%) default rate plus one percent (1%) professional service fee). The "Secured Promissory Note" attached as Exhibit "1" to Claim No. 9-1 provides in Section 1 that the "Note Rate" "means a rate of (a) one percent (1%) per annum prior to the Initial Maturity Date, (b) if the Initial Maturity Date is extended to the First Extended Maturity Date as provided in this Note, two and a half percent (2.5%) per annum from and including the Initial Maturity Date, or (c) if the First Extended Maturity Date is extended to the Second Extended Maturity Date as provided in this Note, three percent (3%) per annum from and including the First Extended Maturity Date." Section 2(a) of said Secured Promissory Note further provides that "[i]nterest shall accrue on the outstanding principal balance of the Loan, which is not past due, at the Note Rate." Exhibit "2" of the Declaration of Richard J. Laski filed in support of the Motion attaches G450's Proof of Claim No. 9-1.

b. On April 16, 2020, Pontis filed its amended proof of claim, Claim No. 7-2, asserting a secured claim against the Shopping Center in the sum of $4,684,959.75 at an annual fixed interest rate of default of eighteen percent (18%) (to be reduced to ten percent (10%) effective April 1, 2020 pursuant to a stipulation among Debtor, on the one hand, and Pontis and Five West, on the other hand). Additionally, on the same date, Five West filed its amended proof of claim, Claim No. 8-2, asserting a secured claim against the Shopping Center in the sum of $5,855,998.95 at an annual fixed interest rate of default of eighteen percent (18%) (to be reduced to ten percent (10%) effective April 1, 2020 pursuant to the same stipulation among Debtor, on the one hand, and Pontis and Five West, on the other hand) (see Docket Nos. 117 and 125).[1]

4. Of note, on January 10, 2020, the Debtor filed its first motion for use of cash collateral including a request to make a monthly $50,000 adequate protection payment to G450

---

[1] The Committee respectfully requests that the court take judicial notice of Secured Creditors filed proofs of claim, filed as Claim Nos. 7-2, 8-2 and 9-1 on the court's Claims Register, and the court-approved stipulation executed by and among the Debtor, on the one hand, and Pontis and Five West, on the other hand, filed as Docket Nos. 117 and 125, pursuant to Federal Rules of Evidence, Rule 201(b), (c) and (d).

LEWIS
BRISBOIS
BISGAARD
& SMITH LLP
ATTORNEYS AT LAW

4829-5740-6913.1        3

(Docket No. 5). On January 14, 2020, Secured Creditors filed their "Conditional Non-Opposition to Emergency Motion for Interim and Final Orders Authorizing Use of Cash Collateral" "consent[ing] to the *interim period* of use of cash collateral as set forth in the proposed budget attached to the Motion," subject to certain payments to the Chief Restructuring Officer being paid from the Debtor's funds "to the extent available and not from the Secured Creditors' cash collateral" (Docket No. 23). On January 16, 2020, the Court entered an order authorizing the interim use of cash collateral through February 20, 2020 (Docket No. 31). At a hearing held on February 19, 2020, the court authorized further use of cash collateral through April 4, 2020 including the $50,000 monthly adequate protection payment to G450 (Docket No. 66).[2] On March 10, 2020, the Court entered the "Final Order Approving Use of Cash Collateral" through April 4, 2020 (Docket No. 83). On March 11, 2020, the Debtor filed its second motion for use of cash collateral through July 4, 2020 again including the monthly $50,000 adequate protection payment to G450 (Docket Nos. 86 and 95). On April 3, 2020, the Court entered its order authorizing the further interim use of cash collateral (Docket No. 107). On June 10, 2020, the Debtor filed its third motion for use of cash collateral through October 3, 2020 including the $50,000 adequate protection payment to G450 (Docket No. 134). A hearing on the third cash collateral motion is

---

[2] On February 19, 2020, the court filed its tentative ruling issued for the February 19, 2020 hearing on the Debtor's use of cash collateral on the Docket noting that "[t]he tentative ruling will be the order" (Docket No. 66). When analyzing whether Secured Creditors' are adequately protected in said tentative ruling, the Court found and concluded:

> "…A secured creditor's interest is adequately protected if the value of its collateral is not declining; the secured creditor is not entitled to payment to compensate for its inability to foreclose upon the collateral during bankruptcy proceedings. *United Savings Association of Texas v. Timbers of Inwood Forest Associates, Ltd.*, 484 U.S. 365 (1988).
>
> Nothing in the record indicates that the California Marketplace, the Debtor's primary asset, is declining in value. The California Marketplace is 98% leased, and the bankruptcy was precipitated by litigation with Belmont and Admire, not operating losses. Based on the absence of evidence of declining value and the proposed adequate protection payments to G450, the Court finds that secured creditors with an interest in the Debtor's cash collateral are adequately protected. In addition, the use of cash collateral to maintain the California Marketplace's operations constitutes further adequate protection. *See In re Megan-Racine Associates, Inc.*, 202 B.R. 660, 663 (Bankr. S.D.N.Y. 1996) (concluding that "[a]s long as there was a continuous income stream being generated by the Debtor, the fact that the Debtor consumed a portion of those monies to operate and maintain the facility each month did not diminish the value of the [secured creditor's] interest in the [cash collateral]").

currently scheduled for July 1, 2020 (Docket No. 136) and, pursuant to said cash collateral motion, the Debtor is operating on a cash-positive basis.[3]

5. The Debtor opens its Motion by asserting, "[t]he Debtor believes it is close to securing a stalking horse for its sale of the Property. However, the first, second, and third lienholders [that is, G450, Pontis, and Five West, respectively] have now threatened to exercise their rights and attempt to seek relief from the automatic stay [under section 362(d)(3)] and thereby interfere with the Debtor's efforts to thoroughly market and sell the Property for a price that maximizes distribution for creditors of this estate" (Motion at 3). Then, in a somewhat contradictory fashion, the Debtor goes on to call the negotiations that gave rise to the pending Stipulation with Secured Creditors the "result of arms-length, good faith negotiations" and referring to the sale benchmark dates as "reasonable" and "ample" (Motion at 3).

6. However, it is questionable whether the negotiations were in "good-faith." Despite the Debtor making the agreed-upon $50,000 monthly adequate protection payments to Secured Creditor G450, the Stipulation arose from Secured Creditors *threat* to seek relief from the automatic stay under section 362(d)(3) when there is no evidence that Secured Creditors are no longer adequately protected by the Property. It seems that the coerced agreement to pay Secured Creditor G450 now $80,000 per month ($30,000 of which will not be used to pay down its secured claim under the Stipulation) is a veiled effort by G450 to recoup some of its interest payment that it initially agreed to waive while at the same time, not reducing the amount of its claim against the estate. This appears to be a dramatic change in strategy by Secured Creditors following cooperative negotiations with the Debtor regarding the adequate protection payments to G450. Indeed, the Committee was not informed of the on-going discussions regarding the threat to file relief from the stay and proposed settlement until three business days prior to the filing of the

---

[3] The Committee respectfully requests that the court take judicial notice of Docket Nos. 5, 23, 31, 66, 83, 86, 95, 107, 134 and 136 filed on the court's Docket in connection with the Debtor's cash collateral motions pursuant to Federal Rules of Evidence, Rule 201(b), (c) and (d).

Motion and the Committee was not given a copy of the Forbearance Stipulation until two days prior to the Motion being filed with the Court.

7. Furthermore, without a firm offer to purchase the Property that benefits all parties, including general unsecured creditors, the sale benchmark dates as proposed in the Motion are rushed in light of the Property being on the market only since April 2020 and the COVID-19 pandemic. Should the Debtor miss the benchmark date of July 31, 2020 (less than a month and half away), for example, the harsh result would be the lifting the automatic stay without further order of the court and the foreclosure of the Property at the expense of general unsecured creditors.

8. Lastly, there appears to be issues with the amount of claim asserted by G450 against the estate, which, if reduced, will provide additional benefit to the unsecured pool based on the ultimate sale price on the Property.

**B.    Discussion**

In examining a proposed settlement, the court must determine whether the settlement is fair, reasonable, and adequate. *Martin v. Kane (In re A&C Properties)*, 784 F.2d 1377, 1381 (9th Cir. 1986). "The trustee [or debtor-in-possession under 11 U.S.C. § 1107], as the party proposing the compromise, has the burden of persuading the bankruptcy court that the compromise is fair and equitable and should be approved." *Id.*

Here, the Committee asserts that the proposed Stipulation is unfair, unreasonable, and inadequate, and not in the best interest of the estate and creditors, to the extent that while the proposed forbearance payments to Secured Creditors are premised on the Secured Creditors' entitlement to relief from the automatic stay under section 362(d)(3), the payments are not being applied to reduce the debt of the Secured Creditors in accordance with section 362(d)(3); the benchmark sale dates do not allow for a viable sale of the Property, especially since the Property has been on the market since April 2020 and the COVID-19 pandemic is ongoing; and there appears to be issues with the validity as to the amount of G450's secured claim.

///

1. <u>The Proposed Payments to Secured Creditors Under the Stipulation Should Pay Down their Respective Debt</u>.

Under the first prong analyzing "Probability of Success in Litigation," the Debtor appears to argue that should the Secured Creditors seek relief from the stay under section 362(d)(3), there is a high probability of success that such relief would be granted by the court. Accordingly, the Debtor comes to the conclusion that the "forbearance protections" under the Stipulation are necessary (Motion at 8-9).

Section 362(d)(3) expressly provides in relevant part the following:

> ""On request of a party in interest and after notice and a hearing, the court shall grant relief from the stay provided under subsection (a) of this section, such as by terminating, annulling, modifying, or conditioning such stay— …
>   (3) with respect to a stay of an act against single asset real estate under subsection (a), by a creditor whose claim is secured by an interest in such real estate, unless, not later than the date that is 90 days after the entry of the order for relief (or such later date as the court may determine for cause by order entered within that 90-day period) or 30 days after the court determines that the debtor is subject to this paragraph, whichever is later—
>     (A) the debtor has filed a plan of reorganization that has a reasonable possibility of being confirmed within a reasonable time; or
>     (B) the debtor has commenced monthly payments that—
>       (i) may, in the debtor's sole discretion, notwithstanding section 363(c)(2), be made from rents or other income generated before, on, or after the date of the commencement of the case by or from the property to each creditor whose claim is secured by such real estate (other than a claim secured by a judgment lien or by an unmatured statutory lien); and
>       (ii) are in an amount equal to interest at the then applicable nondefault contract rate of interest on the value of the creditor's interest in the real estate."

The Committee does not dispute that the pending case involves a "single asset real estate" as defined under section 101(51B), nor does it dispute that the Debtor failed to file a plan of reorganization not later than the date that is 90 days after the entry of the order for relief. Additionally, the Committee notes the Debtor believes a reorganization plan is not viable and its goal is to effectuate a quick sale (Motion at 9). However, the stakeholders in this case, including the Secured Creditors, at the onset understood that unless a third party proposes a plan that would restructure the debts of the LLC, a liquidating plan is the most viable option in the case. It should also be noted, however, that no evidence has been presented that Secured Creditors' oversecured

claims do not continue to be adequately protected by the Property's value, the monthly $50,000 adequate protection payments to Secured Creditor G450, and the continued operation of the Shopping Center.  Likewise, the Secured Creditors did not object to the use of cash collateral aside from requesting that the Chief Restructuring Officer be paid from the Debtor's funds to the extent available.  To now invoke the provisions of § 362(d)(3) for the Debtor's failure to propose a reorganization plan and inadequate payment to obtain additional funds from the Debtor under the threat of lifting the stay, the Motion fell short of meeting its burden of demonstrating the agreement was reached in good faith.

If what the Debtor seeks to achieve by the proposed payments under the Stipulation is that the Secured Creditors will not seek relief from the stay under section 362(d)(3), then said payments should be applied as they would under section 362(d)(3).  That is, to pay down the respective secured debts of Secured Creditors.  *See In re South Side House, L.L.C.*, 474 B.R. 391,421 (Bankr. E.D.N.Y. 2012) ("[P]ayments made under Section 362(d)(3)(B)(ii) should be applied in the same way as adequate protection payments.  When a creditor receives payments under Section 362(d)(3), they must be applied to the creditor's claim in some way, and that application will depend on whether the creditor is over or undersecured. . . . When a creditor is oversecured, payments should be applied to the post-petition interest, fees, costs, and charges allowed under Section 506(b), and then to principal.); *see also In re Erie Playce LLC*, 441 B.R. 905, 909 (Bankr. N.D. Ill. 2010) (describing when section 362(d)(3)(B)(ii) payments are applied to principal and when they are applied to interest).  The Motion provides no grounds, either in the loan documents or pursuant to § 362(d)(3)(B)(ii), that warrant straight postpetition § 363(d)(3) forbearance payments to Secured Creditors that are not meant to be applied to the outstanding debt.  Allowing coerced forbearance payments of this sort will unfairly prejudice unsecured creditors as the secured debt will not be paid down at a cost to general unsecured creditors.

The Committee understands that interest on the loans continues to accrue.  However, interest will nevertheless accrue with or without the agreement until the liens are paid from sale proceeds.  The proposed alternative of paying a fee to stave off lifting the stay without reducing the secured claim provides a worse result.  Accordingly, the court should disallow the

forbearance payments as proposed. Alternatively, the court should order that said payments be applied to reduce Secured Creditors' respective debts.

  2. <u>The Court Should Establish Reasonable and Achievable Benchmark Sale Dates for the Property</u>.

  Under the fourth prong analyzing "Paramount Interest of the Creditors and the Proper Deference to Their Reasonable Views," the Debtor contends that "a reasonable timeline will ensure this case continues to move forward" (Motion at 9). The Debtor further asserts that "[i]ndeed, the certainty afforded by this compromise will allow the Debtor's CRO and its broker to focus on securing a stalking horse buyer and attracting prospective bidders for what the Debtor hopes will be a robust and lively auction that will ultimately pay the secured creditors and provide a return for unsecured creditors as well" (Motion at 9).

  Section 362(d)(3) does not completely eliminate the court's discretion to tailor an appropriate relief. See *Condor One v. Archway Apartments, Ltd*., 206 B.R. 463,465 (Bankr. M.D. Tenn. 1997). Under section 362(d)(3), termination of the stay is not mandatory and the court is just as likely, in its discretion, to modify the stay under section 362(d)(3) to permit the Debtor to adequately market and sell the Property at the highest and best purchase price in order to pay secured creditors and provide a distribution to general unsecured creditors. While the Stipulation proposes to modify the stay, the conditions to terminate the automatic stay are unrealistic and does not afford the Debtor sufficient time to market and sell the Property at the highest and best price.

  In other words, we are a little over a month away from the first benchmark date of July 31, 2020 requiring the Debtor to choose a stalking horse buyer and enter a purchase and sale agreement with said stalking horse buyer by that date. At this time, the Debtor does not have a firm or viable offer acceptable to the Debtor as well as to the Committee. Furthermore, there are no protections in place that would require the Debtor to use its best efforts to market and sell the Property and obtain the highest and best price given the pressure of producing a buyer in a short period of time. The August 31, 2020 deadline to hold a sale hearing and auction with respect to the Property is also unrealistic as the Debtor would have to determine if a hearing was even available on the court's calendar and give at least 21-days' notice prior to the hearing date under

Local Bankruptcy Rule 9013-1 or that sufficient time is given to evaluate overbid procedures, and breakup fees, and conduct hearings on such overbid procedures, that would ensure bidding is not curtailed.  The deadlines put undue pressure on the Debtor to rush to choose any available buyer by July 31, 2020, forcing the Debtor to rely on the overbid process to hopefully attract a bidding war, and do not appear to take into consideration the COVID-19 pandemic and that the Property has only been on the market since April 2020.  Other than the provisions of section 362(d)(3), there are no limitation or condition in the Code for single asset real estate cases that are different from a regular chapter 11 business case and yet, the Secured Creditors aim to speed up the process unjustifiably in this case.  The Debtor must be able to evaluate offers it receives without the undue pressure by Secured Creditors of foreclosure in choosing the best stalking horse buyer that will maximize the purchase price for all creditors.  The Committee requests a reasonable timeline.  If the Debtor does not meet the deadlines as proposed, the Secured Creditors which are purportedly oversecured could foreclose on the Property without further order of the Court and all junior claims are left with nothing.

If the Court is not inclined to deny the Motion, the Committee requests that the court extend all of the deadlines for at least 60 days to help realize the best possible sale for all creditors.

3. <u>Validity of the Amount of Secured Claim</u>

The proof of claim filed by G450 does not include the original loan agreement dated June 28, 2013 between the Debtor and the original secured lender Gaju Forever LLC. Furthermore, the proof of claim does not explain the nature of, and support for, the annual professional service fee of 1% added to the loan.  The Motion likewise does not explain the efforts the Debtor has taken to investigate the claim of G450 that would substantiate its agreement to accept the validity, extent and amount of the claim.

Overall, this Stipulation unnecessarily binds the Debtor and does nothing to benefit the estate and its creditors and is meant only to protect the Secured Creditors at the expense of other parties in interest in the case.  The Property is being marketed and the Court should permit

the process to move forward without undue financial burden and restrictions to the Debtor's ability to sell the Property.

## C.    CONCLUSION

Based on the foregoing, the Committee respectfully requests that the Court deny the Motion. Alternatively, the Committee requests the Court to require any payments made to Secured Creditors under the Stipulation to be applied to pay down their respective debts secured against the Property, establish more realistic and achievable sale benchmark dates (including extending all of the proposed deadlines for 60 days) to ensure the best possible sale of the Property without the imminent threat of foreclosure by Secured Creditors, and to provide parties the opportunity to investigate the validity of the amount of G450's claim.

DATED: June 24, 2020     LEWIS BRISBOIS BISGAARD & SMITH LLP

By: /s/Maria L. Garcia
Amy L. Goldman
Lovee D. Sarenas
Maria L. Garcia
Attorneys for OFFICIAL COMMITTEE OF UNSECURED CREDITORS

4829-5740-6913.1     11

# PROOF OF SERVICE OF DOCUMENT

I am over the age of 18 and not a party to this bankruptcy case or adversary proceeding. My business address is:
633 West Fifth Street, Suite 4000, Los Angeles, CA 90071

A true and correct copy of the foregoing document entitled (*specify*): will be served or was served **(a)** on the judge in chambers in the form and manner required by LBR 5005-2(d); and **(b)** in the manner stated below: **OPPOSITION TO DEBTOR'S MOTION TO APPROVE STIPULATION WITH FIRST, SECOND, AND THIRD LIENHOLDERS REGARDING THE AUTOMATIC STAY, FORBEARANCE, AND RELATED MATTERS [Docket #138]**

**1. TO BE SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING (NEF)**: Pursuant to controlling General Orders and LBR, the foregoing document will be served by the court via NEF and hyperlink to the document. On (*date*) June 24, 2020, I checked the CM/ECF docket for this bankruptcy case or adversary proceeding and determined that the following persons are on the Electronic Mail Notice List to receive NEF transmission at the email addresses stated below:

- Jesse S Finlayson - jfinlayson@ftrlfirm.com, bmendoza@ftrlfirm.com
- M Douglas Flahaut - flahaut.douglas@arentfox.com
- Jeffrey T Gwynn - jgwynn@vervelaw.com
- Mark S Horoupian - mhoroupian@sulmeyerlaw.com, mhoroupian@ecf.inforuptcy.com;ccaldwell@sulmeyerlaw.com
- Christian T Kim - ckim@dumas-law.com, ckim@ecf.inforuptcy.com
- Richard J Laski (TR) - rlaski@wilshirellc.com
- John P Lee - jlee@kspllaw.com, admin@kspllaw.com
- Won Lee - dlee@metallawgroup.com
- Kenderton S Lynch - kenlynchlaw@aol.com
- David W. Meadows - david@davidwmeadowslaw.com
- Juliet Y Oh - jyo@lnbrb.com, jyo@lnbrb.com
- Aram Ordubegian - ordubegian.aram@arentfox.com
- Sagar Parikh - SP@BeverlyHillsLawCorp.com
- Dean G Rallis - drallis@hahnlawyers.com, marias@hahnlawyers.com;mpham@hahnlawyers.com;drallis@ecf.courtdrive.com;drallis@ecf.inforuptcy.com
- Victor A Sahn - vsahn@sulmeyerlaw.com, pdillamar@sulmeyerlaw.com;pdillamar@ecf.inforuptcy.com;vsahn@ecf.inforuptcy.com;cblair@sulmeyerlaw.com;cblair@ecf.inforuptcy.com;dlee@metallawgroup.com;dlee@ecf.inforuptcy.com
- Lovee D Sarenas - lovee.sarenas@lewisbrisbois.com
- United States Trustee (LA) - ustpregion16.la.ecf@usdoj.gov
- Christopher K.S. Wong - christopher.wong@arentfox.com, yvonne.li@arentfox.com
- Hatty K Yip - hatty.yip@usdoj.gov, hatty.k.yip@usdoj.gov
- Timothy J Yoo - tjy@lnbyb.com

☐ Service information continued on attached page

**2. SERVED BY UNITED STATES MAIL**:
On (*date*) June 24, 2020, I served the following persons and/or entities at the last known addresses in this bankruptcy case or adversary proceeding by placing a true and correct copy thereof in a sealed envelope in the United States mail, first class, postage prepaid, and addressed as follows. Listing the judge here constitutes a declaration that mailing to the judge will be completed no later than 24 hours after the document is filed.

☒ Service information continued on attached page

**3. SERVED BY PERSONAL DELIVERY, OVERNIGHT MAIL, FACSIMILE TRANSMISSION OR EMAIL** (state method for each person or entity served): Pursuant to F.R.Civ.P. 5 and/or controlling LBR, on (*date*) _____, I served the following persons and/or entities by personal delivery, overnight mail service, or (for those who consented in writing to such service method), by facsimile transmission and/or email as follows. Listing the judge here constitutes a declaration that personal delivery on, or overnight mail to, the judge will be completed no later than 24 hours after the document is filed.

☐ Service information continued on attached page

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct.

| June 24, 2020 | Maria Segovia | /s/ Maria Segovia |
|---|---|---|
| Date | Printed Name | Signature |

---

This form is mandatory. It has been approved for use by the United States Bankruptcy Court for the Central District of California.

June 2012      **F 9013-3.1.PROOF.SERVICE**

**SERVICE LIST**
**re 450 S. Western, LLC**
**Case No.: 2:20-bk-10264-ER**

**CHAMBER OF THE HONORABLE ERNEST M. ROBLES**
UNITED STATES BANKRUPTCY COURT
Central District of California
255 East Temple Street, Suite 1560 / Courtroom 1568
Los Angeles, CA  90012

This form is mandatory.  It has been approved for use by the United States Bankruptcy Court for the Central District of California.

*June 2012*                                13                        **F 9013-3.1.PROOF.SERVICE**