1 Aram Ordubegian (SBN 185142)
M. Douglas Flahaut (SBN 245558)
2 Christopher K.S. Wong (SBN 308048)
**ARENT FOX LLP**
3 555 West Fifth Street, 48th Floor
Los Angeles, CA  90013-1065
4 Telephone:    213.629.7400
Facsimile:    213.629.7401
5 Emails:    aram.ordubegian@arentfox.com
douglas.flahaut@arentfox.com
6 christopher.wong@arentfox.com

7 General Bankruptcy and Restructuring Counsel for
Debtor and Debtor-In-Possession

8

9 **UNITED STATES BANKRUPTCY COURT**

**CENTRAL DISTRICT OF CALIFORNIA**
10
**LOS ANGELES DIVISION**
11

| | |
|---|---|
| In re | Case No. 2:20-bk-10264-ER |
| **450 S. WESTERN, LLC, a California limited liability company** | Chapter 11 |
| Debtor and Debtor-in-Possession | **NOTICE OF MOTION AND MOTION FOR AN ORDER:** |
| | **(1) AUTHORIZING BIDDING PROCEDURES FOR THE SALE OF ESTATE PROPERTY;** |
| | **(2) APPROVING THE SALE OF PROPERTY UNDER 11 U.S.C. § 363 FREE AND CLEAR OF LIENS, CLAIMS, AND ENCUMBRANCES, SUBJECT TO HIGHER AND BETTER OFFERS; AND** |
| | **(3) APPROVING THE FORM AND MANNER OF NOTICE;** |
| | **MEMORANDUM OF POINTS AND AUTHORITIES; DECLARATION OF RICHARD J. LASKI IN SUPPORT THEREOF** |
| | Hearing and Auction Date |
| | Date:  October 14, 2020 |
| | Time: 10:00 a.m. (Pacific standard time) |
| | Place: Courtroom 1568 |
| | 255 E. Temple St. |
| | Los Angeles, CA 90012 |

ARENT FOX LLP
ATTORNEYS AT LAW
LOS ANGELES

**TO THE HONORABLE ERNEST M. ROBLES, UNITED STATES BANKRUPTCY JUDGE; AND ALL INTERESTED PARTIES:**

450 S. Western, LLC, as debtor and debtor-in-possession in the above-captioned chapter 11 case ("450 S. Western" or "Debtor") has filed a motion (the "Motion") pursuant to Sections 105 and 363 of the United States Bankruptcy Code (the "Bankruptcy Code") and Rules 2002, 6004, and 9014 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules") for an order: (a) approving the sale bidding procedures (the "Bidding Procedures") attached to the declaration of Richard J. Laski ("Laski Declaration") as **Exhibit 1**; (b) authorizing the Debtor to sell that certain real property, located at 450 S. Western, Los Angeles, California, Assessor's Parcel Number 5503-014-020 (the "Property") free and clear of liens, claims, interests and encumbrances; and (c) approving the form and manner of notice, as described in more details in the Motion.[1]

Subject to this Court's approval and subject to overbidding, Evergreen Capital Assets LP (the "Proposed Buyer") has agreed to purchase the Property pursuant to the terms and conditions of the *Purchase and Sale Agreement* (the "PSA").  The total purchase price for the Property is $45,591,000 cash plus a credit bid as explained more fully in the PSA.

**PLEASE TAKE FURTHER NOTICE** that the hearing to approve the Bidding Procedures will be held on <u>Wednesday, October 14, 2020 at 10:00 a.m., Pacific standard time</u> (the "Procedures Hearing"), at the United States Bankruptcy Court for the Central District of California, Los Angeles Division, Courtroom 1568, located at 255 East Temple Street, Los Angeles, California 90012 (the "Bankruptcy Court").

**PLEASE TAKE FURTHER NOTICE** that, immediately following the Procedure Hearing, the opportunity for overbidding will occur at the Auction to be held before the Bankruptcy Court.  In order to participate in the Auction, bids must be actually received on or before <u>October 13, 2020 at 12:00 p.m. Pacific standard time</u> by counsel for the Debtor (M. Douglas Flahaut, Arent Fox LLP, 555 West Fifth St., 48th Floor, Los Angeles, California 90013, Email: douglas.flahaut@arentfox.com, Telephone: (213) 629-7400).  The Bidding Procedures are attached

---

[1] All capitalized terms used herein shall have the meaning ascribed to them in the Bidding Procedures unless otherwise defined.

to the Laski Declaration as **Exhibit 1**. After the Auction, the Debtor will ask the Court to approve the sale of the Property either to the Proposed Buyer or to the bidder(s) who submit the highest and best bid(s) (the "Successful Bidder") at the hearing to approve the sale (the "Sale").

**PLEASE TAKE FURTHER NOTICE** that any opposition to this Motion must make such objection in the form required by LBR 9013-1(f), filed with the Clerk of the Court and served upon counsel to the Debtor, Arent Fox LLP, Attention: M. Douglas Flahaut, at the above address, no later than fourteen (14) days before the hearing on the Motion. Papers not timely filed and served may be deemed by the Court to be consent to the granting of the Motion.

**PLEASE TAKE FURTHER NOTICE** that the Motion is based on 11 U.S.C. §§ 105 and 363, and Rule 6004 of the Federal Rules of Bankruptcy Procedure, and Rules 6004-1 and 9013-1 of the Local Bankruptcy Rules; this Notice of Motion; the annexed Memorandum of Points and Authorities; the Laski Declaration in support thereof; the statements, arguments and representations of counsel who appear at the hearing on the Motion; the record in this case; any other evidence properly presented before the Court prior to or at the hearing on the Motion; and all matters of which this Court may properly take judicial notice.

**WHEREFORE,** the Debtor respectfully requests that the Court enter an order:

1. Granting the Motion;

2. Approving the Bidding Procedures attached to the Laski Declaration as **Exhibit 1**;

3. Authorizing the Sale of the Property to the Proposed Buyer or Successful Bidder(s) free and clear of <u>all</u> liens, claims, interests and encumbrances;

4. Authorizing the Debtor to sell the Property outside the ordinary course of business and to pay, pursuant to demands submitted to escrow, all valid liens and encumbrances to the extent provided in the Motion;

5. Authorizing the Debtor to sign all documents necessary to consummate the Sale and close escrow, including, but not limited to, the sale agreement, grant deed, and escrow instructions;

6. Authorizing the Debtor and/or escrow to pay all customary costs of sale;

1    7.    Authorizing the Debtor and/or escrow to pay in full all installments of property

2    taxes on the Property for all years up to and including 2018-2019;

3    8.    Approving the breakup fee provision of the PSA;

4    9.    Finding that the Proposed Buyer or Successful Bidder(s) is a "good faith"

5    purchaser entitled to all of the protections and benefits of 11 U.S.C. § 363(m);

6    10.    Waiving the 14-day stay provided in Bankruptcy Rule 6004(h);

7    11.    Approving the scope and form of notice provided for the sale of the Property; and

8    12.    Granting such other and further relief the Court deems just and proper.

9

10

11    Dated: September 23, 2020                    **ARENT FOX LLP**

12

13                                        By: */s/ M. Douglas Flahaut*
                                            Aram Ordubegian
14                                          M. Douglas Flahaut
                                            Christopher K.S. Wong
15                                          General Bankruptcy and Restructuring Counsel
                                            for Debtor and Debtor-in-Possession
16

17

18

19

20

21

22

23

24

25

26

27

28

# TABLE OF CONTENTS

**Page**

I.      PRELIMINARY STATEMENT ........................................................................... 13

II.     JURISDICTION AND VENUE ....................................................................... 13

III.    STATEMENT OF RELEVANT FACTS ........................................................... 14

        A.      Case Background ............................................................................... 14

        B.      The Stipulation Entered into with the Senior Secured Creditors and the
                Official Committee of Unsecured Creditors ......................................... 15

        C.      Sale and Marketing of the Property ...................................................... 16

        D.      The Proposed Sale ............................................................................ 17

        E.      The Proposed Bidding Procedures ....................................................... 17

IV.     THE PROPOSED BIDDING PROCEDURES AND THE BREAK-UP FEE ARE
        APPROPRIATE AND SHOULD BE APPROVED ......................................... 20

        A.      There Is Sound Business Justification for the Bidding Procedures .......... 20

        B.      The Bidding Procedures Are an Appropriate Means of Maximizing Value ... 20

        C.      The Break-Up Fee Represents an Appropriate Means of Maximizing Value ... 22

V.      NOTICE TO BE PROVIDED IN CONNECTION WITH THE PROPOSED
        SALE ............................................................................................................. 23

VI.     APPROVAL OF THE PROPOSED SALE ....................................................... 24

        A.      The Proposed Sale Is Supported by Sound Business Judgment and Should
                be Approved .................................................................................... 24

                1.      A Sound Business Justification Exists ....................................... 24

                2.      The Debtor Has Given Accurate and Reasonable Notice of the Sale ....... 25

                3.      The Purchase Price for the Property Is Adequate ....................... 25

                4.      The Sale of the Property to the Proposed Buyer Is in Good Faith ........... 26

        B.      The Sale Should Be Approved Free and Clear of All Liens and
                Encumbrances ................................................................................. 27

                1.      Holders of Disputed Liens Consented to the Free and Clear Aspect
                        of this Sale ........................................................................... 28

                2.      The G450, New Creation, and Philmont Liens Are Subject to Bona
                        Fide Dispute ........................................................................ 29

                        a.      Factual and Legal Disputes Exist With Respect to the
                                Philmont Lien .......................................................... 30

                        b.      The New Creation Lien ............................................. 33

                        a.      The G450 Lien ........................................................ 33

                3.      The Purchase Price Is Greater than the Total Liens ................... 33

                4.      The Party Asserting the Interest Could Be Compelled to Accept a
                        Money Satisfaction ............................................................... 34

        C.      Proposed Buyer Is Entitled to Protection as a Good Faith Purchaser Under
                11 U.S.C. § 363(m) .......................................................................... 35

**TABLE OF CONTENTS**
**(continued)**

Page

VII.    THE COURT SHOULD PERMIT IMMEDIATE RELIEF ............................................ 36

VIII.    CONCLUSION ............................................................................................................. 37

ARENT FOX LLP
ATTORNEYS AT LAW
LOS ANGELES

# <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*In re 995 Fifth Ave. Assocs. L.P.*,
   96 B.R. 24 (Bankr. S.D. N.Y. 1989) ...............................................................................20, 21

*In re Abbotts Dairies*,
   788 F.2d 143 (3rd Cir. 1986) ..................................................................................................35

*In re Alpha Indus., Inc.*,
   84 B.R. 703 (Bankr. Mont. 1988) ....................................................................................26, 36

*In re Baldwin Builders*,
   232 B.R. 406 (B.A.P. 9th Cir. 1999) .....................................................................................31

*In re Bella Vista Assoc., LLC*,
   2007 WL 4555891 (Bankr. D. N.J. Dec. 18, 2007) ...............................................................30

*In re Birdview Satellite Communications, Inc.*,
   90 B.R. 465 ............................................................................................................................32

*Calpine Corp. v. O'Brien Envtl. Energy, Inc.*,
   181 F.3d 527 (3rd Cir. 1999) .................................................................................................22

*In re Canyon P'ship*,
   55 B.R. 520 (Bankr. S.D. Cal. 1985) ....................................................................................24

*In re Canyon Partnership*,
   55 BR 520 (Bankr S. D. Cal 1985) .......................................................................................22

*Cello Bag Co. v. Champion Int'l Corn (In re Atlanta Packaging Prods., Inc.)*,
   99 B.R. 124 (Bankr. N.D. Ga. 1988) .....................................................................................21

*In re Chateaugay Corp.*,
   973 F.2d 141 (2nd Cir. 1992)..................................................................................................20

*In re Chung King, Inc.*,
   753 F.2d 547 (7th Cir. 1985)..................................................................................................26

*Citicorp Homeowners Servs., Inc. v. Elliot (In re Elliot)*,
   94 B.R. 343 (E.D. Pa. 1988) ...........................................................................................27, 29

*In re Clark*,
   266 B.R. 163 (B.A.P. 9th Cir. 2001).....................................................................................29

*In re Collins*,
   180 B.R. 447 (Bankr. E.D. Va. 1995) ...................................................................................30

ARENT FOX LLP
ATTORNEYS AT LAW
LOS ANGELES

*In re Copy Crafters Quick Printing, Inc.*,
  92 B.R. 973 (Bankr. N.D. N.Y. 1988) ...................................................................24

*In re Crowthers McCall Pattern, Inc.*,
  114 B.R. 877 (Bankr. S.D.N.Y. 1990) ..................................................................21

*Dishi & Sons v. Bay Condos LLC*,
  510 B.R. 696 (S.D.N.Y. 2014) ..............................................................................34

*Doehring v. Crown Corp. (In re Crown Corp.)*,
  679 F.2d 774 (9th Cir. 1982) ...........................................................................21, 22

*Douglas v. Westfall*,
  113 Cal.App.2d 107 (1952) ...................................................................................32

*In re Equity Funding Corp.*,
  492 F.2d 793 (9th Cir. 1974) .................................................................................24

*In re Ernst Home Center, Inc.*,
  209 B.R. 974 (Bankr. W.D. Wash. 1997) .............................................................20

*Four B. Corp. v. Food Barn Stores, Inc. (In re Food Barn Stores, Inc.)*,
  107 F.3d 558 (8th Cir. 1997) .................................................................................21

*FutureSource LLC v. Reuters Ltd.*,
  312 F.3d 281 (7th Cir. 2002), *cert. denied*, 538 U.S. 962 (2003) .......................28

*In re Gaylord Grain LLC*,
  306 B.R. 624 (B.A.P. 8th Cir. 2004) ...............................................................29, 30

*GBL Holding Co., Inc. v. Blackburn/Travis/Cole, Ltd.*,
  331 B.R. 251 (N.D. Tex. 2005) .............................................................................24

*In re Gulf States Steel, Inc.*,
  285 B.R. 497 (Bankr. N.D. Ala. 2002) .................................................................29

*In re Hassan Imports P'Ship*,
  502 B.R. 851 (C.D. Cal. 2013) ..............................................................................35

*Howard S. Wright Construction Co. v. BBIC Investors, LLC*
  (App. 1 Dist. 2006) 38 Cal.Rptr.3d 769 ...............................................................31

*In re Huntington Ltd.*,
  654 F.2d 578 (9th Cir. 1991) .................................................................................24

*In re Integrated Resources, Inc.*,
  147 B.R. 650, 656-57 (Bankr. S.D. N.Y. 1992) ...............................................20, 21

*In re Karpe*,
  84 B.R. 926 (Bankr. M.D. Pa. 1988) .....................................................................25

*In re Kellstrom Indus., Inc.*,
282 B.R. 787 (Bankr. D. Del. 2002) .........................................................................27

*In re Lionel Corp.*,
722 F.2d 1063 (2d Cir. 1983)....................................................................................22

*In re Octagon Roofing*,
123 B.R. 583 (Bankr. N.D. Ill. 1991).......................................................................30

*Pinnacle Rest. at Big Sky, LLC v. CH SP Acquisitions (In re Spanish Peaks Holdings II, LLC)*,
872 F.3d 892 (9th Cir. 2017).....................................................................................34

*In re Rincon Island Ltd. Partnership*,
253 B.R. 880 (Bankr. C.D. Cal. 2000)......................................................................32

*Ruby Valley Nat'l Bank v. Wells Fargo Delaware Trust Co.*,
2014 MT 16, 373 Mont. 374, 317 P.3d 174 (Mont. 2014) ........................................34

*In re Showplace Square Loft Co., LLC*,
289 B.R. 403 (Bankr. N.D. Cal. 2003)......................................................................31

*In re Slates*,
2012 WL 5359489 (B.A.P. 9th Cir. 2012).................................................................24

*Southwest Products, Inc. v. Durkin (In re Southwest Products, Inc.)*,
144 B.R. 100 (B.A.P. 9th Cir. 1992)..........................................................................36

*Stanislaus Lumber Co. v. Pike*
(App. 3 Dist. 1942) 51 Cal.App.2d 54 .......................................................................31

*State v. Day*,
76 Cal.App.2d 536 (1946)..........................................................................................32

*Sumitomo Bank v. Davis*,
4 Cal. App. 4th 1306 (1992) ......................................................................................35

*Symantec v. Claims Prosecutor LLC (In re Lahijani)*,
325 B.R. 282 (B.A.P. 9th Cir. 2005).................................................................20, 24

*In re Taylor*,
198 B.R. 142 (Bankr. D. S.C. 1996) .........................................................................29

*In re Twenver, Inc.*,
149 B.R. 954 (Bankr. D. Colo. 1992) ........................................................................22

*Veltman v. Whetzal*,
93 F.3d 517 (8th Cir. 1996)........................................................................................29

ARENT FOX LLP
ATTORNEYS AT LAW
LOS ANGELES

*In re Wilde Horse Enters. Inc.*,
136 B.R. 830, 841 (Bankr. C.D. Cal. 1991) .......................................................................22, 24

*Williard v. Campbell*,
91 Mont. 493, 11 P.2d 782 (Mont. 1932) ...........................................................................34

*Wilsey v. Central Washington Bank (In re Adams Apple, Inc.)*,
829 F.2d 1484 (9th Cir. 1987).............................................................................................36

*In re Wonderbowl, Inc.*,
460 F.2d 1220 (9th Cir. 1972)..............................................................................................21

**Statutes**

11 U.S.C. § 101(31) ......................................................................................................................26

11 U.S.C. § 102 ......................................................................................................................23, 25

11 U.S.C. § 105(a) ................................................................................................................13, 27

11 U.S.C. § 108(c) .........................................................................................................................32

11 U.S.C. § 362(d)(3) ....................................................................................................................15

11 U.S.C. § 362(f)(2) .....................................................................................................................28

11 U.S.C. § 363 ..........................................................................................................13, 20, 22, 35

11 U.S.C. § 363(b)(1) .........................................................................................................20, 24, 35

11 U.S.C. § 363(d)(4) ....................................................................................................................30

11 U.S.C. § 363(f) .................................................................................................................27, 28

11 U.S.C. § 363(f)(1) .....................................................................................................................34

11 U.S.C. § 363(f)(2) ...............................................................................................................29, 35

11 U.S.C. § 363(f)(3) ...............................................................................................................33, 35

11 U.S.C. § 363(f)(4) ...................................................................................................29, 30, 33, 35

11 U.S.C. § 363(f)(5) .....................................................................................................................34

11 U.S.C. § 363(m) .........................................................................................................35, 36, 37

11 U.S.C. § 365(h)(1)(A)(ii) .........................................................................................................34

11 U.S.C. § 503(b)(1)(A) ...............................................................................................................22

11 U.S.C. § 544 ..............................................................................................................................30

Arent Fox LLP
Attorneys At Law
Los Angeles

11 U.S.C. § 546(b) ...................................................................................................32

11 U.S.C. § 546(b)(2) ..........................................................................................31, 32

28 U.S.C. § 157 .......................................................................................................13

28 U.S.C. § 157(b)(2)(A) .........................................................................................13

28 U.S.C. § 157(b)(2)(O) .........................................................................................13

28 U.S.C. § 1334 .....................................................................................................13

28 U.S.C. § 1408 .....................................................................................................13

28 U.S.C. § 1409 .....................................................................................................13

Cal. Civ. Code § 8412 .......................................................................................30, 32

Cal. Civ. Code § 8460(a) .........................................................................................31

Kan. Stat. Ann. § 60–1105(a) .................................................................................32

**Rules**

Bankr. C.D. Cal. R. 2002(a)(2) ...............................................................................25

Bankr. C.D. Cal. R. 6004(a) ....................................................................................25

Bankr. C.D. Cal. R. 6004(c) ....................................................................................25

Bankr. C.D. Cal. R. 6004-1 .....................................................................................13

Bankr. C.D. Cal. R. 6004-1(b) .................................................................................23

Bankr. C.D. Cal. R. 9007 .........................................................................................25

Bankr. C.D. Cal. R. 9013-1(a) .................................................................................23

Bankr. C.D. Cal. R. 9014 .........................................................................................25

Fed. R. Bankr. P. 2002 .................................................................................13, 19, 23

Fed. R. Bankr. P. 2002(a)(2) ....................................................................................23

Fed. R. Bankr. P. 6004 .............................................................................................13

Fed. R. Bankr. P. 6004-1 ..........................................................................................25

Fed. R. Bankr. P. 6004(h) ..................................................................................36, 37

Fed. R. Bankr. P. 9007 .............................................................................................23

Fed. R. Bankr. P. 9013-1 ....................................................................................................25

Fed. R. Bankr. P. 9014 .......................................................................................................13

**Other Authorities**

10 COLLIER ON BANKRUPTCY ¶ 6004.11
    (Alan N. Resnick & Henry J. Somme reds., 16th ed.) ............................................36

# MEMORANDUM OF POINTS AND AUTHORITIES

## I.

## PRELIMINARY STATEMENT

After thorough marketing and extensive negotiations, the Debtor now seeks to sell the Property on an "AS IS, WHERE IS" basis, free and clear of liens, claims, interests and encumbrances to the Proposed Buyer for $45,591,000 in cash plus the credit bid of the Proposed Buyer as set forth in the PSA, subject to overbid(s).

In an effort to ensure that maximum value is obtained for the Property, the Debtor is first seeking approval of the Bidding Procedures outlined in this Motion and attached to the Laski Declaration as **Exhibit 1**.  The Debtor believes that an auction of the Property conducted in accordance with the Bidding Procedures will maximize the value of the Property.  As a result, the Debtor respectfully submits that the Court's approval of the Bidding Procedures is essential and in the best interest of the estate and the creditor body.

Upon approval of the Bidding Procedures, the Debtor will conduct the Auction, to be held concurrently with the hearing to approve the sale (the "Sale Hearing"), on Wednesday, October 14, 2020, commencing at 10:00 a.m., Pacific standard time at Courtroom 1568, 255 E. Temple Street, Los Angeles, California 90012.  At the Sale Hearing, the Debtor will ask the Court to approve the Sale of the Property to either the Proposed Buyer or the Successful Bidder(s).

## II.

## JURISDICTION AND VENUE

This Court has jurisdiction pursuant to 28 U.S.C. §§ 157 and 1334.  This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(A) and (O).  The venue of this case is proper pursuant to 28 U.S.C. §§ 1408 and 1409.

The statutory predicates for the relief sought herein are sections 105(a) and 363 of the Bankruptcy Code, and Rules 2002, 6004, and 9014 of the Bankruptcy Rules and Local Bankruptcy Rule 6004-1.

ARENT FOX LLP
ATTORNEYS AT LAW
LOS ANGELES

## III.

## STATEMENT OF RELEVANT FACTS

### A.    Case Background.

450 S. Western is the owner and operator of the Property, a three-story, 80,316 sq. ft. shopping center —commonly known as California Marketplace— located at the intersection of South Western Avenue and 5th Street in the heart of Koreatown.  The shopping center has been a staple in the Los Angeles Korean community and is home to twenty-eight (28) thriving and popular stores, restaurants, and retail shops.  Since its creation in 2003, 450 S. Western's mission has been to be more than a shopping center, but to serve as an entertainment and shopping hub for the Korean community in Los Angeles.  The California Marketplace has been referred to as the Korean community's "Grove" or "Americana" projects in mid-Los Angeles and Glendale, respectively. Presently, the Debtor has approximately six (6) employees, and pre-petition the Debtor hired Richard J. Laski of Wilshire Partners of CA, LLC as its Chief Restructuring Officer, who has been running the affairs of the Debtor's reorganization and business.[2]

Due to its prime location and prime tenants, 450 S. Western has historically been profitable and continues to be profitable.  The first floor is occupied by its key tenant, "Gaju Market" (translated as "California Market"), a high-end Korean grocery which is owned by the Rhee family.

Notwithstanding the Debtor's operating strengths, the Debtor suffers from a heavy debt load, owing to various factors including (a) accruing legal expenses allocated to the State Court Action (defined in the First Day Declaration) and related litigations, (b) the threat of foreclosure by secured lenders and their recorded notices of default, (c) a pending application to appoint a receiver, and (d) adversaries that continually shift the goal post in order to avoid receiving payment so as to take title to the building.  As such, the Debtor decided it would commence a chapter 11 case in order to reorganize or, more likely, effectuate a sale of substantially all of its assets as a going concern in order to maximize value for creditors.  Thus, on January 10, 2020 (the "Petition Date"),

---

[2] As discussed in greater detail in the *Motion for Order (1) Approving Engagement Agreement of Wilshire Partners of CA, LLC and (2) Authorizing Monthly Fee Statement Procedures and Payment* [Dkt. 52], Mr. Laski is a CPA and a financial and turnaround expert that is regularly appointed as an "off-panel" chapter 11 trustee in the Central District of California.  A full description of the Debtor's background and events leading to its bankruptcy filing is further described in the "first day" declaration of Richard J. Laski [Dkt. No. 7] (the "First Day Declaration").

ARENT FOX LLP
ATTORNEYS AT LAW
LOS ANGELES

- 14 -

1    the Debtor filed its voluntary petition for relief under chapter 11 of the Bankruptcy Code.

2    **B.    The Stipulation Entered into with the Senior Secured Creditors and the Official**

3    **Committee of Unsecured Creditors.**

4        G450, LLC ("G450"), Pontis Capital, LLC ("Pontis") and Five West Capital, LP ("Five

5    West" and collectively with G450 and Pontis, the "Senior Secured Creditors") assert that the

6    promissory notes entered into by the Debtor are secured by first, second, and third position deeds

7    of trust recorded on July 19, 2013, September 4, 2014 and May 14, 2015, respectively.

8        The Senior Secured Creditors have averred they have legal grounds, specifically pursuant

9    to Bankruptcy Code Section 362(d)(3) applicable to this Debtor's case as a single asset real estate

10   case, to immediately seek relief from the automatic stay.  In exchange for the Senior Secured

11   Creditors to forbear from exercising their rights to seek relief from stay and from foreclosing on

12   the Property, the Debtor and the Senior Secured Creditors agreed to compromise on a workable

13   timeline for the Debtor to conduct its sale for the benefit of the estate.  With input from the Official

14   Committee of General Unsecured Creditors (the "Committee"), the Debtor, the Senior Secured

15   Creditors, and the Committee entered a stipulation, dated July 7, 2020 [Dkt. No. 159, Exh. 1] (the

16   "Forbearance Stipulation") whereby the parties agreed the Debtor shall, among other things: (i) pay

17   monthly payments to the Senior Secured Creditors until entry of an order approving a sale of the

18   Property; (ii) file a signed purchase and sale agreement with the stalking horse buyer on or before

19   September 15, 2020; and (iii) file a sale motion that provides for a hearing and auction on or before

20   the week of October 15, 2020.  *See* Stipulation, at ¶¶ 3,5, and 6.  An order approving the Stipulation

21   was entered by the Court on July 9, 2020 as Dkt. No. 162.

22        Where each of the above conditions are satisfied by the Debtor, the parties contemplate the

23   sale of the Property to close promptly; the Stipulation provides that if a sale of the Property fails to

24   close on or before November 15, 2020, each of the Senior Secured Creditors will be entitled to

25   *limited* relief from stay without further order of the Court "solely as necessary to allow the [Senior

26   Secured Creditors] to record, file and serve one of more notices of sale with respect to the Property

27   pursuant to state law." *See Id.* at ¶ 7.  And, if a sale of the Property fails to close by December 14,

28   2020, each of the Senior Secured Creditors will be entitled to *complete* relief from stay without

1  further order of the Court.  *See Id.* at ¶ 8.

2  **C.**    **Sale and Marketing of the Property.**

3      The Debtor retained CBRE, Inc. as its real estate agent (the "Agent") to assist the Debtor in

4  marketing and selling the Property.  An order approving the retention of the Agent was entered by

5  this Court on April 21, 2020.  According to the application to employ the Agent, as revised by that

6  certain stipulation [filed as an exhibit to Dkt. No. 185], in the event the Property is sold pursuant to

7  the PSA, it will not be entitled to a commission.  It will, however, receive a $50,000 one-time

8  payment to cover its out-of-pocket marketing expenses.  In the event the Property is sold for a

9  purchase price greater than or equal to $50,000,000, the Agent shall be entitled to a commission of

10  3% of the ultimate purchase price, as agreed upon per the original listing agreement (or 3.75% if

11  the Successful Bidder(s) is represented by an outside broker, 0.75% of which will be offered to the

12  outside broker) [Dkt. No. 103].

13      The Agent, with the aid of the Debtor and its professionals, has worked tirelessly under the

14  most difficult of current circumstances to market the Property for sale and has reached out through

15  multiple channels of communication with numerous potential buyers.  The property listing has been

16  posted on commercial real estate websites such as the CBRE, Inc. platform DealFlow and Costar,

17  Inc. and "push" emails were made via our internal CBRE database of buyers, CampaignLogic and

18  Real Capital Analytics databases.  Specifically, the Agent: (i) presented the Property to

19  approximately 9,950 potential buyers and brokers; (ii) and as a result of those efforts, the Agent

20  received preliminary indications of interest from approximately 302 parties who signed the

21  confidentiality agreement; and (iii) provided all interested parties with additional details concerning

22  the Property.  Of those 302 interested parties, over 206 parties downloaded the documents on the

23  DealFlow website, and the Agent identified ten potential bidders who have expressed serious

24  interest in participating in an auction.  Seven prospective bidders submitted offers (five written and

25  two verbal) prior to the Debtor's selection of the offer of the Proposed Buyer as the stalking horse

26  bid.  The Debtor and the Agent will continue to actively market the Property to potential

27  overbidders including those that had previously expressed interest in the Property.  The Agent will

28  submit a declaration prior to the Sale Hearing to update this Court and interested parties on the sale

ARENT FOX LLP
ATTORNEYS AT LAW
LOS ANGELES

1  marketing efforts to date.

2      The Debtor submits that since the Property will be sold in an auction format as provided

3  below, the final purchase price offered for the Property at the conclusion of the Auction will

4  establish the fair market value for the Property.

5  **D.      The Proposed Sale.**

6      On September 15, 2020, the Debtor entered into the PSA with the Proposed Buyer, subject

7  to higher and/or better offers at the Auction.  If the Debtor does not receive a higher or otherwise

8  better offer for the Property, by this Motion, the Debtor will request that the Court enter an order

9  approving the PSA and the Sale of the Property to the Proposed Buyer.

10     Pursuant to Section 3.1 of the PSA, the Proposed Buyer has wired $1,000,000 as an earnest

11 money deposit to the escrow company.  The Proposed Buyer has waived all contingencies, except

12 as otherwise set forth in the PSA.

13 **E.      The Proposed Bidding Procedures.**

14     The Debtor believes that an auction of the Property in accordance with the Bidding

15 Procedures will maximize the value of the Property.  The salient terms of the Bidding Procedures

16 are summarized as follows[3]:

17     Under the Bidding Procedures, only Qualified Bidders may participate in the Auction and

18 sale process.  Qualified Bidders are those prospective bidders who deliver a Bid to counsel for the

19 Debtor, M. Douglas Flahaut, Arent Fox LLP, 555 West Fifth Street, 48th Floor, Los Angeles CA

20 90013, Email: douglas.flahaut@arentfox.com, so that the Bid is actually received on or before the

21 October 12, 2020 at 5:00 p.m. Pacific standard time, along with the following:

22
23     (a) An Overbid offer of at least Fifty Million 0/100 Dollars ($50,000,000.00) in cash
        consideration;

24     (b) A proposed PSA similar to the terms set forth in the Proposed Buyer's PSA (other than
25         the carve out provisions) with changes identified via a red-lined document such that all
           proposed changes are highlighted for the Court and interested parties;

26     (c) Statement that the Overbid is irrevocable until five (5) business days after the Property
27         has been sold pursuant to the closing of the sale approved by the Bankruptcy Court in a

28 ───────────────
[3] Capitalized terms used in this Section shall have the meaning ascribed to them in the Bidding Procedures unless
otherwise defined.

final, non-appealable order unless such Overbid is designated as the Back-Up Bid (as hereinafter defined);

(d) Statement that the Overbid is not conditioned on obtaining financing, regulatory contingencies, any internal approval, on the outcome or review of due diligence or any other condition precedent that would prevent the Qualified Bidder from entering into a PSA to purchase the Property;

(e) Written evidence of a firm, irrevocable commitment for financing or other evidence of the financial wherewithal such as availability in cash, or a binding commitment for availability in cash of at least $50,000,000 of such Qualified Bidder that the Seller reasonably believes in its sole discretion, provides the ability to consummate the sale with appropriate contact information for such financing sources;

(f) An Overbid deposit ("**Overbid Deposit**") in the amount of not less than of One Million and No/100 Dollars ($1,000,000.00), which will be non-refundable if the Qualified Bidder is the Successful Bidder at the conclusion of the Auction and the sale does not close due to the Qualified Bidder's default. The Overbid Deposit must be actually received by the Debtor or its designated escrow company by the Overbid Deadline;

(g) An acknowledgment and representation that the Qualified Bidder (other than the Proposed Buyer): (i) has had an opportunity to conduct any and all required due diligence regarding the Property prior to making its offer; (ii) has relied solely on its own independent review, investigation and/or inspection of any documents provided by the Debtor; (iii) did not rely upon any written or oral statements, representations, promises, warranties or guaranties whatsoever, whether express or implied (by operation of law or otherwise), regarding the Property or the completeness of any information provided in connection therewith or with the Auction, except as expressly stated in the proposed PSA; and (iv) is not entitled to any expense reimbursement, break-up fee, or similar type of payment in connection with its bid ;

(h) Evidence, in form and substance reasonably satisfactory to the Debtor, of authorization and approval from the Qualified Bidder's board of directors (or other comparable governing body) with respect to the submission, execution, delivery and closing of the PSA; and

(i) If the Qualified Bidder is a secured creditor of the Debtor who intends to make a credit bid, evidence of the amount, priority and basis for such creditor's secured claim against the Debtor; and if the Debtor reasonably determines, after consultation with its advisors and the Committee, that such creditor's secured claim, in whole or in part, is subject to dispute, then the disputed amount shall not be included in the amount of the secured creditor's credit bid

The Debtor will conduct an Auction for the Property. Such auction shall take place at the United States Bankruptcy Court, Central District of California, Los Angeles Division, Courtroom 1568, 255 E. Temple St., Los Angeles, CA 90012 on <u>Wednesday, October 14, 2020 at 10:00 a.m.</u>, or at such other date and time as ordered by the Court. Only Qualified Bidders who have submitted Qualified Bid(s) will be eligible to participate at the Auction. At such Auction, the Proposed Buyer and Qualified Bidder(s) will be permitted to increase their bids. The Debtor may adopt rules for

the bidding process that are not inconsistent with any of the provisions of the Bankruptcy Code, this Court's orders, or these Bidding Procedures.  The Debtor proposes minimal incremental overbids of $100,000.00.

Upon conclusion of the Auction, the Debtor shall: (i) review each Overbid on the basis of financial and contractual terms and the factors relevant to the sale process, including those factors affecting the speed, certainty of consummating the Sale, and gross recovery to the estate; and (ii) identify the highest and otherwise best offer (the "Successful Bid").  After the conclusion of the Auction, the Debtor shall present to the Court for approval the Successful Bid and any Back-up Bid(s) at the Sale Hearing to be held immediately following the Auction.

Following a hearing approving the Sale of the Property to the Successful Bidder, if such Successful Bidder fails to consummate an approved sale because of a breach or failure to perform on the part of such Successful Bidder, (a) he/she/it will forfeit his/her/its Overbid Deposit to the Debtor and the Debtor may pursue any and all of its options at law and in equity with respect to such breach, and (b) the Debtor may consummate the Sale with the Back-up Bid, as disclosed at the Sale Hearing, and the Debtor shall be authorized to effectuate such sale without further order of the Court, or (c) the Debtor may reschedule the Auction to a later date and time convenient to the Court.

To ensure that the best possible price for the Property is obtained, the Debtor will provide notice of the Auction and the Bidding Procedures by serving the Motion and the accompanying notice upon: (i) the Proposed Buyer; (ii) the Committee; (iii) all taxing authorities having jurisdiction over the Property; (iv) all parties that have requested or that are required to receive notice pursuant to Bankruptcy Rule 2002; (v) all parties that are known or reasonably believed to have expressed an interest in acquiring the Property; (vi) all parties that are known or reasonably believed to have asserted any lien, encumbrance, claim or other interest in the Property; (vii) all governmental agencies that are an interested party with respect to the Sale and transactions proposed thereunder; and (viii) all other known creditors of the estate.  The Debtor will also file the form F 6004-2 Notice of Sale of Estate Property so that the sale is published on the Court's website.  In this manner, the Debtor and the Agent intend to provide all parties who could

1  potentially be interested in purchasing the Property with the opportunity to present higher and better

2  bids pursuant to the Bidding Procedures set forth herein.

3  

**IV.**

**THE PROPOSED BIDDING PROCEDURES AND THE BREAK-UP FEE ARE**

**APPROPRIATE AND SHOULD BE APPROVED**

6  The Debtor believes that the foregoing Bidding Procedures provide an appropriate

7  framework for selling the Property and will enable the Debtor to review, analyze and compare all

8  bids received to determine which bid is in the best interests of the estate and its creditors.  Moreover,

9  for the reasons discussed below, the Debtor believes the Bidding Procedures are fair and reasonable

10  under the circumstances.

11  **A.**    **There Is Sound Business Justification for the Bidding Procedures.**

12  After notice and a hearing, a trustee may sell estate assets outside the ordinary course of

13  business.   11 U.S.C. § 363(b)(1).   Although 11 U.S.C. § 363 does not set forth a standard for

14  determining when it is appropriate for a court to authorize the sale or disposition of a debtor's

15  assets, courts in the Ninth Circuit and others, in applying this section, have required that it be based

16  upon the sound business judgment of the trustee.  *See Symantec v. Claims Prosecutor LLC (In re*

17  *Lahijani),* 325 B.R. 282, 288-89 (B.A.P. 9th Cir. 2005); *In re Ernst Home Center, Inc.,* 209 B.R.

18  974, 979 (Bankr. W.D. Wash. 1997); *In re Chateaugay Corp*., 973 F.2d 141 (2nd Cir. 1992).

19  The debtor is afforded great judicial deference in the exercise of its business judgment with

20  respect to the procedures to be used in selling assets of the estate.  *See In re Integrated Resources,*

21  *Inc.,* 147 B.R. 650, 656-57 (Bankr. S.D. N.Y. 1992) (noting that overbid procedures and have been

22  negotiated by a debtor-in-possession are to be reviewed according to the deferential "business

23  judgment" standard under which such procedures and arrangements are "presumptively valid"); *In*

24  *re 995 Fifth Ave. Assocs. L.P.*, 96 B.R. 24, 28 (Bankr. S.D. N.Y. 1989).

25  Here, as discussed below, sound business justification supports the proposed Bidding

26  Procedures.

27  **B.**    **The Bidding Procedures Are an Appropriate Means of Maximizing Value.**

28  To obtain approval of a proposed sale of assets, a debtor usually must show that the

1   proposed purchase price is the highest and best offer available under the circumstances of the case.

2   *See, e.g., In re Wonderbowl, Inc.*, 460 F.2d 1220, 1222 (9th Cir. 1972) (primary objective of

3   bankruptcy sales is to attract highest possible bid from a reasonable buyer); *Four B. Corp. v. Food*

4   *Barn Stores, Inc. (In re Food Barn Stores, Inc.),* 107 F.3d 558, 564-65 (8th Cir. 1997) (holding that

5   in bankruptcy sales, "a primary objective of the code [is] to enhance the value of the estate at

6   hand."); *Integrated Res., Inc.*, *supra* 147 B.R. at 659 ("It is well-established principle of bankruptcy

7   law that the . . . [Debtor's] duty with respect to such sales is to obtain the highest price or greatest

8   overall benefit possible for the estate.") (quoting *Cello Bag Co. v. Champion Int'l Corn (In re*

9   *Atlanta Packaging Prods., Inc.),* 99 B.R. 124, 131 (Bankr. N.D. Ga. 1988)); *see Integrated*

10  *Resources, Inc., supra* 147 B.R. at 656-57 (noting that overbid procedures that have been negotiated

11  by a debtor-in-possession are to be reviewed according to the deferential "business judgment"

12  standard under which such procedures and arrangements are "presumptively valid"); *995 Fifth Ave.*

13  *Assocs. L.P.*, *supra* 96 B.R. at 28.

14          In connection with sales of assets outside of the ordinary course of business, bankruptcy

15  courts frequently approve competitive bidding procedures as a means of ensuring that such sales

16  will generate the highest and best returns for the estate.  *See, e.g., Doehring v. Crown Corp. (In re*

17  *Crown Corp.)*, 679 F.2d 774, 775 (9th Cir. 1982) (court required specific minimum overbid

18  amounts, deposits, and comparable deal terms to be used by all overbidders); *In re Crowthers*

19  *McCall Pattern, Inc.*, 114 B.R. 877, 879 (Bankr. S.D.N.Y. 1990) (noting that the bankruptcy court

20  had entered an order requiring that overbids be made in specified minimum increments with

21  deposits).

22          The Bidding Procedures described herein are reasonably calculated to encourage a buyer to

23  submit a final bid and ensure a sale at the highest and best price.  The initial overbid amount of

24  $50,000,000 (approximately $3.5 million higher than the purchase price offered by the Proposed

25  Buyer after considering the Proposed Buyer's credit bid), was strategically chosen by the Debtor

26  to allow for payments of commission to the Agent, the Break-Up Fee of $500,000, and the amount

27  that would otherwise be necessary to satisfy the liens on the Property, including that of the Proposed

28  Buyer.

The Debtor believes that the Bidding Procedures provide a fair and appropriate framework for selling the Property and will enable the Debtor, with assistance from its professionals, to review, analyze and compare all bids received to determine which bids are in the best interests of the estate. The Bidding Procedures provide parties with a reasonable opportunity to participate in a competitive bidding process.  Indeed, vis-à-vis the Forbearance Stipulation, the Committee and interested parties have had notice of the Debtor's proposed Sale for nearly three (3) months.

Based on the forgoing, the Debtor requests this Court approve the Bidding Procedures.

**C.**    **The Break-Up Fee Represents an Appropriate Means of Maximizing Value.**

Approval of break-up fees and other forms of bidding protections in connection with the sale of a debtor's property pursuant to section 363 of the Bankruptcy Code is an established practice in bankruptcy sales.  Courts often approve bidding incentives similar to the Break-Up Fee requested herein where incentives are beneficial to the estate because they induce an initial bid, promote competitive bidding, provide a minimum floor bid on which other bidders and the debtor can rely and compensate the purchaser for its time, effort, expense and risk.  *See Calpine Corp. v. O'Brien Envtl. Energy, Inc.*, 181 F.3d 527, 533-37 (3rd Cir. 1999) (detailing situations where a break-up fee is entitled to administrative expense status under Bankruptcy Code section 503(b)(1)(A) because the fees provided a benefit to the estate); s*ee In re Wilde Horse Enter., Inc.*, 136 B.R. 830, 841 (Bankr. C.D. Cal. 1991) (applying a case-by-case approach and approving break-up fees only where it is in the best interest of the estate); *In re Lionel Corp.*, 722 F.2d 1063, 1071 (2d Cir. 1983) (standard for break-up fees is whether the transaction will "further the diverse interests of the debtor, creditors and equity holders, alike.").

Here, the proposed Break-Up Fee of $500,000 equates to only 1% of the purchase price if there is an overbid at $50,000,000, which is below what Courts have found to be reasonable in the Ninth Circuit. *See e.g. Doehring v. Crown Corporation (In re Crown Corp.)*, 679 F.2d 774 (9th Cir. 1982) (overbid protection of 4.9% approved); *e.g. In re Canyon Partnership*, 55 BR 520 (Bankr S. D. Cal 1985) (overbid protection of 3% approved); *e.g. In re Twenver, Inc.*, 149 B.R. 954, 957 (Bankr. D. Colo. 1992) (stating that breakup fees of 1% to 2% are found to be reasonable in the majority of cases approving such fees).

1  Approval of the Break-Up Fee is also appropriate in light of the Proposed Buyer's efforts

2  to date and projected efforts up to the Auction.  The Proposed Buyer has and continues to expend

3  considerable time, money and energy pursuing this sale and has engaged in extensive and lengthy,

4  good faith negotiations.  The Proposed Buyer incurred out of pocket expenses to establish the terms

5  and conditions of the stalking horse bid.  More importantly, the Debtor believes that the Break-Up

6  Fee incentivized the Proposed Buyer to make the initial "stalking horse" offer, therefore, allowing

7  the Debtor to run an auction process to ultimately obtain the highest and best offer for the Property.

8  The Debtor submits the Break-Up Fee will enhance the process by establishing a floor early

9  in the bidding process, which will discourage a bidding strategy designed to hold back competitive

10  bids until late in the process.  In sum, the Debtor's ability to offer the Break-Up Fee has enabled it

11  to secure a sale of the Property to a contractually-committed bidder while, at the same time,

12  provided itself with the potential of even greater benefit to the estate through an Auction.  Thus,

13  the Break-Up Fee should be approved.

14  **V.**

15  **NOTICE TO BE PROVIDED IN CONNECTION WITH THE PROPOSED SALE**

16  The Debtor will give notice of this Motion, in accordance with Bankruptcy Rules 2002(a)(2)

17  and 9007 and Local Bankruptcy Rules 6004-1(b), and 9013-1(a) (the "Notice"), to (i) the Proposed

18  Buyer; (ii) the Committee; (iii) all taxing authorities having jurisdiction over the Property; (iv) all

19  parties that have requested or that are required to receive notice pursuant to Bankruptcy Rule 2002;

20  (v) all parties that are known or reasonably believed to have expressed an interest in acquiring the

21  Property; (vi) all parties that are known or reasonably believed to have asserted any lien,

22  encumbrance, claim or other interest in the Property; (vii) all governmental agencies that are an

23  interested party with respect to the Sale and transactions proposed thereunder; and (viii) all other

24  known creditors of the estate.

25  The Debtor believes that such notice constitutes adequate notice pursuant to 11 U.S.C. §

26  102 and requests that such notice be approved by this Court as being adequate under the

27  circumstances.

28

ARENT FOX LLP
ATTORNEYS AT LAW
LOS ANGELES

- 23 -

# VI.

## APPROVAL OF THE PROPOSED SALE

**A.**    **The Proposed Sale Is Supported by Sound Business Judgment and Should be Approved.**

After notice and a hearing, a trustee may sell estate assets outside the ordinary course of business.  11 U.S.C. § 363(b)(1).  The Ninth Circuit Court of Appeals has ruled in cases under the Bankruptcy Code that a sale of a debtor's property should be approved if it is in the best interests of the estate and creditors.  *In re Huntington Ltd.*, 654 F.2d 578, 589 (9th Cir. 1991); *In re Equity Funding Corp.*, 492 F.2d 793, 794 (9th Cir. 1974).

In evaluating the propriety of a sale of property of the estate, courts have evaluated whether: (i) a "sound business purpose" justifies the sale; (ii) "accurate and reasonable notice" of the sale was provided; (iii) "the price to be paid is adequate, i.e., fair and reasonable"; and (iv) "good faith, i.e., the absence of any lucrative deals with insiders, is present*." In re Slates,* 2012 WL 5359489 (B.A.P. 9th Cir. 2012) (slip op.) citing *In re Wilde Horse Enters., Inc.,* 136 B.R. 830, 841 (Bankr. C.D. Cal. 1991); *see also In re Copy Crafters Quick Printing, Inc.*, 92 B.R. 973, 983 (Bankr. N.D. N.Y. 1988).

An examination of each of the above four factors reveals that the proposed Sale here should be approved.

1.    A Sound Business Justification Exists.

The debtor is afforded great judicial deference in the exercise of his business judgment. *Lahijani*, *supra* 325 B.R. at 289; *GBL Holding Co., Inc. v. Blackburn/Travis/Cole, Ltd.*, 331 B.R. 251, 254 (N.D. Tex. 2005).   The application of the business judgment test affords a trustee discretion in balancing the costs and benefits of administering or disposing of estate assets according to the needs of the estate.  *See In re Canyon P'ship*, 55 B.R. 520, 524 (Bankr. S.D. Cal. 1985).

Here, the proposed Sale will substantially benefit the estate and all creditors because (a) the holders of all undisputed liens against the Property will be paid and satisfied in full; (b) the estate will be relieved of the costs required to manage, insure and maintain the Property, and (c) the Sale

1    will monetize the Property for the benefit of creditors of this estate.  As to the last point, the main

2    impetus for the Debtor entering into the PSA is to derive some benefits for unsecured creditors.

3    Without the negotiated carve-out, the respective interests of the estate <u>and</u> junior lienholders would

4    have been extinguished an inevitable foreclosure sale by Pontis, Five West, and/or G450.

5        Accordingly, sound business justifications exist for this proposed Sale and without the Sale,

6    the estate will be unable to pay its creditors.

7        2.    <u>The Debtor Has Given Accurate and Reasonable Notice of the Sale.</u>

8        The purpose of the notice requirement is to provide an opportunity for objections and a

9    hearing before the court if there are objections.  *In re Karpe*, 84 B.R. 926, 930 (Bankr. M.D. Pa.

10   1988).  A notice is sufficient if it includes the terms and conditions of the sale and if it states the

11   time for filing objections. *Id.*

12       The Debtor has complied with all of the applicable provisions of the Bankruptcy Code, the

13   Bankruptcy Rules and the Local Bankruptcy Rules.  Specifically, the Debtor will give notice of this

14   Motion and the proposed Auction, in accordance with Bankruptcy Rules 2002(a)(2), 6004(a) and

15   (c), 9007, and 9014 and Rules 6004-1 and 9013-1 of the Local Bankruptcy Rules, to all known

16   creditors and parties-in-interest in this bankruptcy case by first class mail.

17       The Debtor and the Agent have publicized the Auction and Sale in a commercially

18   reasonable manner (and will continue to do so through the date of the Auction) including listing

19   the Property on commercial real estate websites such as the CBRE, Inc. platform DealFlow and

20   Costar, Inc. and "push" emails were made via our internal CBRE database of buyers,

21   CampaignLogic and Real Capital Analytics databases.   In addition, the Debtor is filing,

22   concurrently with this Motion, a *Notice of Sale of Estate Property* (Local Bankruptcy Form 6004-

23   2) to be posted on the Court's website.  The Debtor believes that such notice constitutes adequate

24   notice pursuant to 11 U.S.C. § 102 and requests that such notice be approved by this Court as being

25   adequate under all of the circumstances.

26       3.    <u>The Purchase Price for the Property Is Adequate.</u>

27       The Debtor submits that the consideration provided to the estate by the Proposed Buyer for

28   the Property represents adequate and fair consideration for the Property.  In any sale of estate assets,

1   the ultimate purpose is to obtain the highest price for the property sold.  *In re Chung King, Inc.*,

2   753 F.2d 547 (7th Cir. 1985); *In re Alpha Indus., Inc.*, 84 B.R. 703, 705 (Bankr. Mont. 1988).

3       Here, the marketing efforts of the Debtor and its Agent are detailed in Section III.C above

4   and the Laski Declaration which are incorporated herein.  The Agent will file an up-to-date

5   declaration on the marketing efforts prior to the Sale Hearing.  For the past six months, the Debtor

6   and the Agent have marketed the Property for sale and reached out to various potential buyers.  The

7   Debtor and the Agent have provided various types of due diligence information to such parties and

8   have encouraged potential bidders to submit bids.  Moreover, the Bidding Procedures used herein

9   include provisions intended to increase the likelihood that the estate will receive the highest and

10  best price for the Property.  Since the Property will be sold after extensive marketing and in auction

11  format in accordance with the Bidding Procedures, the Debtor submits that the final purchase price

12  offered for the Property at the conclusion of the Auction will establish the fair market value for the

13  Property.

14      4.      The Sale of the Property to the Proposed Buyer Is in Good Faith.

15      Finally, the Sale is proposed in good faith.  Other than communications concerning that

16  certain promissory note dated July 1, 2019, the Proposed Buyer has no prior connection to the

17  Debtor, and neither is an "insider" as defined under 11 U.S.C. § 101(31).  Moreover, negotiations

18  between the Debtor, the Agent, and the Proposed Buyer regarding the Sale were at all times arms-

19  length and no collusion was involved.  The Proposed Buyer was cooperative with the Debtor in the

20  negotiation process and did not seek to gain any advantage over any other interested party or chill

21  any other previous bidding for the Property.  Indeed, the PSA is the product of months of

22  negotiations between the Debtor, the Agent, and the Proposed Buyer.  Importantly, the sale of the

23  Property is subject to an auction and overbid process, which as noted above, was subject to

24  extensive marketing efforts by the Agent.  The auction process provides additional assurance that

25  the estate is receiving fair value.

26      Accordingly, based on the foregoing, the Debtor submits that the proposed Sale is based on

27  its sound business judgment and therefore, the Sale should be approved.

28

ARENT FOX LLP
ATTORNEYS AT LAW
LOS ANGELES

**B.**     **The Sale Should Be Approved Free and Clear of All Liens and Encumbrances.**

The Debtor requests that the Court approve the Sale of the Property to the Proposed Buyer or Successful Bidder free and clear of all lien, claims, interests, and encumbrances.  Section 363(f) of the Bankruptcy Code provides that a debtor may sell property free and clear of any interest in such property if one of the following conditions is satisfied:

(1)    applicable non bankruptcy law permits sale of such property free and clear of such interest;
(2)    such entity consents;
(3)    such interest is a lien and the price at which such property is to be sold is greater than the aggregate value of all liens on such property;
(4)    such interest is in *bona fide* dispute; or
(5)    such entity could be compelled, in a legal or equitable proceeding to accept a money satisfaction of such interest.

*See* 11 U.S.C. § 363(f).

This provision is supplemented by Bankruptcy Code Section 105(a), which provides that "[t]he Court may issue any order, process or judgment that is necessary or appropriate to carry out the provisions of [the Bankruptcy Code]."  11 U.S.C.  § 105(a).

Because Bankruptcy Code Section 363(f) is stated in the disjunctive, satisfaction of any one of its five requirements will suffice to permit the sale of the assets "free and clear" of liens and interests.  *See In re Kellstrom Indus., Inc.*, 282 B.R.  787, 793 (Bankr.  D. Del. 2002) ("Section 363(f) is written in the disjunctive, not the conjunctive, and if any of the five conditions is met, the debtor has the authority to conduct the sale free and clear of all liens.") (*citing Citicorp Homeowners Servs., Inc. v. Elliot (In re Elliot)*, 94 B.R.  343, 345 (E.D. Pa. 1988)).

The Debtor's analysis of the status of liens and encumbrances affecting the Property indicate that the Property is allegedly encumbered as follows as of the expected closing date of October 29, 2020:

| Claimant / Description | Amount of Secured Claim Asserted by Claimant | Amount of Secured Claim Not Currently Subject to A Bona Fide Dispute |
|---|---|---|
| Los Angeles County Treasurer and Tax Collector (2019-2020 | $2,157,568 | $2,157,568 |

| and prior) | | |
|---|---|---|
| Los Angeles County Treasurer and Tax Collector (2020-2021 tax year) | $179,458 | $179,458 |
| G450 | $31,205,507[4] | TBD[5] |
| Pontis | $5,082,515 | $5,082,515 |
| Five West | $6,352,944 | $6,352,944 |
| New Creation Engineering and Builders, Inc. ("New Creation") | $699,812[6] | $551,311 |
| Evergreen Capital Assets LP | $1,371,433 | $1,371,433 |
| One Stop Financial Consulting, Inc. | $93,167 | $0.00[7] |
| Philmont Management Inc. ("Philmont") | $2,361,878 | $0.00[8] |
| **TOTAL (referred to collectively as the "Total Liens")** | **$49,504,281** | **Less than or Equal to $46,900,735** |

The Debtor submits that one or more of the conditions set forth in Bankruptcy Code section 363(f) will be satisfied with respect to the sale of the Property.  Accordingly, the Debtor request that the Property be sold and transferred to the Successful Bidder free and clear of all liens, claims, interests, and encumbrances pursuant to Bankruptcy Code section 363(f).

1.    Holders of Disputed Liens Consented to the Free and Clear Aspect of this Sale.

A debtor may also sell property free and clear of an entity's interests in property if such entity consents.  11 U.S.C. § 362(f)(2).  Consent in this context may be express or implied.  *See FutureSource LLC v. Reuters Ltd.*, 312 F.3d 281 (7th Cir. 2002) , *cert. denied*, 538 U.S. 962, 123

[4] Amount of this claim is disputed.
[5] The Debtor currently believes only a small portion of this secured claim may be subject to a bona fide dispute but it is still in the process of reconciling the issues with the secured creditor, the Committee and the Proposed Buyer.
[6] Amount of this claim is disputed.
[7] One Stop Financial Consulting filed proof of claim no. 15-1 asserting their claim is unsecured.
[8] The secured status and amount of this claim is disputed in its entirety based on, among other things, improper and/or untimely perfection of the claimed mechanic's lien.

ARENT FOX LLP
ATTORNEYS AT LAW
LOS ANGELES

- 28 -

1   (2003) ("It is true that the Bankruptcy Code limits the conditions under which an interest can be

2   extinguished by a bankruptcy sale, but one of those conditions is the consent of the interest holder,

3   and lack of objection (provided of course there is notice) counts as consent."); *see e.g. Veltman v.*

4   *Whetzal*, 93 F.3d 517, 521 (8th Cir. 1996) (consent was found where  there was a stipulation

5   authorizing sale free of interest and the creditor still failed object to proposed sale); *see also*

6   *Citicorp Homeowners Servs., Inc. v. Elliot (In re Elliot)*, 94 B.R. 343 (E.D. Pa. 1988) (implied

7   consent found).

8        The Debtor does not anticipate any of the secured creditors will object to this Motion as

9   they all stand to benefit from having the opportunity for a real auction and avoiding a foreclosure

10   sale.  Thus, the Debtor submits that Section 363(f)(2) of the Bankruptcy Code will be met in

11   connection with the proposed sale, to the extent any of the parties holding liens, claims or

12   encumbrances on the Property fails to object to this Motion.

13        2.      The G450, New Creation, and Philmont Liens Are Subject to *Bona Fide* Dispute.

14        The Debtor may sell assets free and clear of liens, claims, interests and encumbrances if

15   "such interest is in bona fide dispute."  11 U.S.C. § 363(f)(4).  Although the term "bona fide

16   dispute" is not defined, numerous cases have found an interest to be subject to a *bona fide* dispute

17   if "there is an objective basis for either a factual or legal dispute as to the validity" of the interest.

18   *In re Gulf States Steel, Inc.*, 285 B.R. 497, 507 (Bankr. N.D. Ala. 2002); *In re Taylor*, 198 B.R.

19   142, 162 (Bankr. D. S.C. 1996).  The court need not resolve the dispute prior to the sale; it need

20   only determine that such a dispute exists.  *In re Gaylord Grain LLC*, 306 B.R. 624, 627 (B.A.P. 8th

21   Cir. 2004).  In fact, the propriety of the alleged interest does not even have to be the subject of an

22   immediate or concurrent adversary proceeding. *Id.*

23        "The purpose of § 363(f)(4) is to permit property of the estate to be sold free and clear of

24   interests that are disputed by the representative of the estate so that liquidation of the estate's assets

25   need not be delayed while such disputes are being litigated." *In re Clark,* 266 B.R. 163, 171 (B.A.P.

26   9th Cir. 2001).

27        In determining whether a factual or legal dispute as to the validity of an asserted interest

28   exists under section 363(f)(4), some factual ground must be provided to show there is an objective

ARENT FOX LLP
ATTORNEYS AT LAW
LOS ANGELES

1    basis for the dispute. *See In re Octagon Roofing*, 123 B.R. 583, 590 (Bankr. N.D. Ill. 1991); *In re*

2    *Collins*, 180 B.R. 447, 452 (Bankr. E.D. Va. 1995).  The court need not however, determine "the

3    probable outcome of the dispute, but merely whether one exists." *Octagon*, *supra* at 590; *Collins*,

4    *supra* at 452.  Applying this standard, courts have concluded that a variety of disputes, originating

5    under the Bankruptcy Code or under state law, were sufficient *bona fide* disputes permitting a sale

6    free and clear under section 363(d)(4).  *See e.g.*, *In re Bella Vista Assoc., LLC*, 2007 WL 4555891

7    (Bankr. D. N.J. Dec. 18, 2007) (finding debtor's assertion that creditor's interest in real property

8    was avoidable under section 544 constituted a *bona fide* dispute for 363(f)(4) purposes); *Gaylord*

9    *Grain*, *supra* at 628-20 (finding trustee's ostensible ability to avoid lien constituted a *bona fide*

10    dispute under section 363(f)(4)).

11        Based upon its investigation, the Debtor here disputes the validity and amounts of the lien

12    of Philmont, and the amounts of the liens held by G450 and New Creation.

13            a.    Factual and Legal Disputes Exist With Respect to the Philmont Lien.[9]

14        The Debtor, with the support of the Committee, challenges the mechanic's lien held by

15    Philmont (the "Philmont Lien") on three separate grounds and believes that the Philmont Lien

16    should not be paid from the proceeds of the Sale.  According to its Proof of Claim, the Philmont

17    Lien is asserted base upon "[m]aterial, labor, and equipment provided by general contractor" and

18    purportedly secured by a mechanic's lien recorded on December 19, 2019 and purportedly

19    perfected by a Notice of Perfection of Mechanic's Lien filed on April 29, 2020.  *See* Proof of Claim

20    No. 18-1.

21        First, the Debtor asserts that Philmont failed to timely record its mechanic's lien.  California

22    law requires a direct contractor to record its mechanic's lien statement (1) after the claimant

23    completes the direct contract and (2) before the earlier of: (a) 90 days after the completion of the

24    work of improvement, if the owner does not record a notice of completion or notice of cessation;

25    or (b) 60 days after the owner records a notice of completion or notice of cessation. Cal. Civ. Code

26    § 8412.  Furthermore, the claimant must file a complaint to foreclose the mechanic's lien within

27

28    ---
[9] The discussion herein is based on a preliminary review of the Philmont secured claim and all rights of the Debtor are reserved to raise additional issues and/or change its legal its legal theories relating to the Debtor's asserted defenses to the secured claim of Philmont.

ninety (90) days after recording the mechanic's lien statement.  Cal. Civ. Code § 8460(a).  Work of improvement is "complete," so as to start the 90-day deadline for the contractor to record its lien, when it is substantially complete; correction of trivial imperfections will not extend time for filing mechanic's lien.  *In re Showplace Square Loft Co., LLC*, 289 B.R. 403 (Bankr. N.D. Cal. 2003).  Additionally, a construction company has "completed its contract" within meaning of statute setting forth time period for recordation of mechanics' lien by virtue of commercial tenant's termination of construction contract by anticipatory breach by stating to company that it would make no more payments under contract.  *Howard S. Wright Construction Co. v. BBIC Investors, LLC*, (App. 1 Dist. 2006) 38 Cal.Rptr.3d 769, 136.  In other words, the time for filing a mechanics' lien claim commences to run exactly as though the work or improvement under construction were actually completed upon the occupation or use of the building by the owner, actual acceptance of the building by the owner, cessation from labor for 30 days upon such building, or the filing of notice of completion by the owner. *Stanislaus Lumber Co. v. Pike*, (App. 3 Dist. 1942) 51 Cal.App.2d 54.

Here, under California law, the December 19, 2019 mechanic's lien was not timely recorded.  Based on its Proof of Claim and the Debtor's internal records, Philmont has not performed work (or only trivial work) for the Debtor since June of 2018 as demonstrated by their last communication on July 2, 2019.[10]   As such, Philmont had completed its work more than 90 days prior to the recordation date.  Thus, the mechanic's lien was recorded late.

Second, a *bonafide* dispute exists as to whether Philmont properly perfect its lien in a timely manner. Cal. Civ. Code 8460(a) requires that Philmont must have filed a complaint to foreclose its mechanic's lien on or before March 18, 2020 – the date that is 90 days from the recording of the mechanic's lien.  Further, because the Debtor sought bankruptcy protection on January 10, 2020, the automatic stay prohibited Philmont from filing a complaint and thereby commencing an action to perfect its December 19, 2019 mechanic's lien.

"When commencement of an action is required to perfect or to maintain or continue perfection, a claimant is instructed by § 546(b)(2) to accomplish such perfection or continuance or maintenance of perfection by 'giving notice.'" *In re Baldwin Builders*, 232 B.R. 406, 413 (B.A.P.

---

[10] The Debtor is reviewing its internal records for any notice of completion or notice of cessation it may have filed.

1   9th Cir. 1999); *see also In re Birdview Satellite Communications, Inc.*, 90 B.R. 465, 470 ("It is

2   undisputed that [claimant] did not commence an action to foreclose its mechanic's lien within one

3   year, and [claimant] does not contend it took any steps to comply with the § 546(b) notice

4   requirement within one year.  Further, [claimant] does not contend that 11 U.S.C. § 108(c) extends

5   the time for other than pure statutes of limitation and it is clear that that section does not do so.

6   Accordingly, the Court determines [claimant's] lien expired by failure to perfect under 11 U.S.C.

7   § 546(b) and K.S.A. 60–1105(a)"); *In re Rincon Island Ltd. Partnership*, 253 B.R. 880, 884 (Bankr.

8   C.D. Cal. 2000) ("In bankruptcy cases if commencement of an action is required to maintain or

9   continue perfection, § 546(b) unambiguously mandates that notice shall be given instead.").

10       Based on the foregoing, Section 546(b)(2) of the Bankruptcy Code is clear that notice must

11   be given "within the time fixed by such law for such seizure or such commencement."  Thus,

12   assuming the December 19, 2019 mechanic's lien was not recorded too late or is not otherwise

13   invalid, Philmont should still have given notice under Section 546(b)(2) of the Bankruptcy Code

14   on or before March 18. 2020.  Here, the Notice of Perfection of Mechanic's Lien was filed and

15   served on April 29, 2020, and appears to have been filed late pursuant to Cal. Civ. Code 8412 and

16   Bankruptcy Code 546(b)(2).  Therefore, the late filing of the notice is fatal to Philmont's claim to

17   hold a secured interest in the Property and it must be treated as a general unsecured claimant.

18       Lastly, the Debtor avers that the amount of the asserted lien is inaccurate.  As a threshold

19   matter, Philmont fails to provide sufficient evidence to support a claim of $2,361,878.40 or consider

20   any set off claims from the Debtor.  Further, per Exhibit 1 to its Proof of Claim, Philmont asserts

21   default *compound* prejudgment interest at a rate of 10% in the amount of $526,317.08 since June

22   21, 2017.  Philmont submits insufficient evidence to support this amount, or why its prejudgment

23   interest may be compounded.  To the contrary, legal precedence in California supports the

24   proposition that such interest cannot be compounded. *See Douglas v. Westfall*, 113 Cal.App.2d 107,

25   112 (1952); *State v. Day*, 76 Cal.App.2d 536, 554 (1946).

26       Based on all of the foregoing, there are multiple *bonafide* disputes with respect the Philmont

27   Lien.

28

ARENT FOX LLP
ATTORNEYS AT LAW
LOS ANGELES

b.      The New Creation Lien.

Per its Proof of Claim No. 10-1, New Creation asserts a secured claim of $665,452.69 based upon a promissory note dated April 10, 2012.  The very note, attached as Exhibit 2 to the Proof of Claim, provides that interest only accrues at 10% per annum and *does not* contain any provision allowing compound interest.  *See* Proof of Claim 10-1, Exh. 2, at ¶ 3.  Based thereon, New Creation improperly calculated accrued interest at a compound rate, rather than the proper simple interest rate.  At most, New Creation's claim should be $551,311.

Based on the foregoing, a *bonafide* dispute exists with respect the amount asserted by New Creation.

a.      The G450 Lien.

While the Debtor's books and records seem to show that the amount of the claimed G450 lien is substantially accurate, disputes have arisen regarding G450's entitlement to certain interest and fee components that the Proposed Buyer and the Committee believes may be substantial.  As such, the parties are working to reconcile the secured claim of G450 and therefore the amount in dispute, if any, is still to be determined.

Based on all of the foregoing, there are *bonafide* disputes with respect to liens asserted by Philmont, New Creation, and G450, and therefore, grounds exist to approve the Sale free and clear under 11 U.S.C. § 363(f)(4).

3.      The Purchase Price Is Greater than the Total Liens.

A sale may be made free and clear of liens and interest if "the price at which the property is to be sold is greater than the aggregate value of all liens on such property." 11 U.S.C. § 363(f)(3). Here, based upon the above described defects of liens asserted by Philmont, New Creation, and G450, the total liens validly asserted against the Property must be reduced to something less than or equal to $46,900,735.  Therefore, the purchase price of $45,591,000 in cash plus the credit bid of the Proposed Buyer as set forth in the PSA is anticipated to be greater than the total value of the valid asserted liens and sufficient to pay / satisfy them in full.

Based thereon, the Sale to the Proposed Buyer or Successful Bidder(s) should be approved free and clear of all the foregoing interests under section 363(f)(3), with such liens and interests, to

1    the extent allowed, attaching to the Sale proceeds.

2         4.    <u>The Party Asserting the Interest Could Be Compelled to Accept a Money</u>

3               <u>Satisfaction.</u>

4         The Bankruptcy Code also provides that assets may be sold free and clear of liens, claims,

5    interests and encumbrances if "applicable nonbankruptcy law permits sale of such property free

6    and clear of such interest" or the holders thereof "could be compelled, in a legal or equitable

7    proceeding, to accept a money satisfaction of [their] interest[s]." 11 U.S.C. § 363(f)(1), (5).

8         In this case, state court foreclosure by any of the secured creditors is clearly a proceeding

9    which would extinguish any and all junior liens, and thereby forcing junior lienholders to take value

10   less than their secured claims. The Ninth Circuit recently held that the possibility of a foreclosure

11   by a senior lienholder allows a bankruptcy estate to sell free and clear of junior interests which

12   would be eliminated under state law:

13        Under Montana law, a foreclosure sale to satisfy a mortgage terminates a subsequent
          lease on the mortgaged property. *See Ruby Valley Nat'l Bank v. Wells Fargo*
14        *Delaware Trust Co*., 2014 MT 16, 373 Mont. 374, 317 P.3d 174, 178 (Mont. 2014);
          *Williard v. Campbell*, 91 Mont. 493, 11 P.2d 782, 787 (Mont. 1932). SPH's
15        bankruptcy proceeded, practically speaking, like a foreclosure sale—hardly
          surprising since its largest creditor was the holder of the note and mortgage on the
16        property. Indeed, had SPH not declared bankruptcy, we can confidently say that
          there would have been an actual foreclosure sale. Such a sale would have terminated
17        the Pinnacle and Opticom leases. Section 363(f)(1) does not require an actual or
          anticipated foreclosure sale. It is satisfied if such a sale would be legally
18        permissible.

19        In *Dishi & Sons*, the district court held that section 363(f)(1) "refers not to
          foreclosure sales, but rather only to situations where the owner of the asset may,
20        under nonbankruptcy law, sell an asset free and clear of an interest in such asset."
          510 B.R. at 710 (citation and internal quotations omitted). HN13 While we
21        acknowledge that bankruptcy protection is often sought "for the very purpose of
          avoiding the less favorable consequences of foreclosure," id. at 709, the protection
22        is generally for the debtor's benefit. We find it significant that section 365 recognizes
          appurtenant rights conferred by a lease "to the extent that such rights are enforceable
23        under applicable nonbankruptcy law," 11 U.S.C. § 365(h)(1)(A)(ii), and discern
          from that language a clear intent to protect lessees' rights outside of bankruptcy, not
24        an intent to enhance them. We see no reason to exclude the law governing [**17]
          foreclosure sales from the analogous language in section 363(f)(1).
25

26   *Pinnacle Rest. at Big Sky, LLC v. CH SP Acquisitions (In re Spanish Peaks Holdings II, LLC)*, 872

27   F.3d 892, 900 (9th Cir. 2017).

28        There is no doubt that similarly, under California law, that a foreclosure by a senior

1  lienholder would eliminate junior liens like the one asserted by the IRS.  *See Sumitomo Bank v.*

2  *Davis*, 4 Cal. App. 4th 1306, 1314 (1992) ("The judicial sale removes liens from the property junior

3  to the one being foreclosed").

4      Further, Philmont, New Creation, and G450 at best holds mortgage/mechanic's liens which

5  can be reduced to a specific monetary value.  It is not a covenant or equitable servitude—the

6  deprivation of which cannot be compensated with money.  *See e.g. In re Hassan Imports P'Ship*,

7  502 B.R. 851, 860 (C.D. Cal. 2013) (comparing the effects on a junior lien in a foreclosure sale,

8  where replacement liens would attach to sale proceeds, versus the effects on an operating covenant,

9  which would simply terminate under California law).

10      Therefore, the Debtor submits that approval of the Sale of the Property free and clear of

11  liens, claims, interests or encumbrances is appropriate under Sections 363(f)(2), (3), (4) or (5) of

12  the Bankruptcy Code.

13  **C.**      **Proposed Buyer Is Entitled to Protection as a Good Faith Purchaser Under 11 U.S.C.**

14       **§ 363(m).**

15      "[W]hen a bankruptcy court authorizes a sale of assets pursuant to § 363(b)(1) of the

16  Bankruptcy Code, it is required to make a finding with respect to the 'good faith' of the purchaser."

17  *In re Abbotts Dairies*, 788 F.2d 143, 149-150 (3rd Cir. 1986).  The purpose of such a finding is to

18  facilitate the operation of section 363(m) of the Bankruptcy Code, which provides for certain

19  protections to be provided to good faith purchasers from the trustee pursuant to section 363.  In this

20  respect, section 363(m) provides:

21          The reversal or modification on appeal of an authorization under
22          subsection (b) or (c) of this section of a sale or lease of property does
          not affect the validity of a sale or lease under such authorization to
23          an entity that purchased or leased such property in good faith,
          whether or not such entity knew of the pendency of the appeal,
24          unless such authorization and such sale or lease were stayed pending
          appeal.
25
    While the Bankruptcy Code does not define "good faith", the Ninth Circuit has held that:
26
27          [G]ood faith . . . speaks to the integrity of his conduct in the course of the
          sale proceedings.  Typically, the misconduct that would destroy a
28          purchaser's good faith status at a judicial sale involves fraud, collusion
          between the purchaser and other bidders or the trustee, or an attempt to take

1  grossly unfair advantage of other bidders.

2  *Alpha Indus., supra; Southwest Products, Inc. v. Durkin (In re Southwest Products, Inc.)*, 144 B.R.

3  100, 103 (B.A.P. 9th Cir. 1992); *Wilsey v. Central Washington Bank (In re Adams Apple, Inc.)*, 829

4  F.2d 1484, 1489 (9th Cir. 1987).

5  The Debtor submits that the Sale of the Property pursuant to the PSA and the Auction will

6  be conducted in an arms' length transaction.  As the Laski Declaration demonstrates, the

7  negotiations between the Proposed Buyer and the Debtor have been conducted at arms' length and

8  in good faith under applicable legal standards.  Indeed, the PSA is the product of months of

9  negotiations between the Debtor, the Agent, and the Proposed Buyer pursuant to which the

10  Proposed Buyer made many concessions in favor of the estate.  The Sale is also subject to an auction

11  and overbid, after extensive marketing efforts, assuring that the estate is receiving fair value.

12  In connection with the proposed Sale to the Proposed Buyer, the Debtor and the Agent have

13  evaluated the alternatives and acted with the intent of obtaining the best possible deal for the estate

14  in terms of maximizing value.  The terms of the proposed Sale of the Property to the Proposed

15  Buyer accomplishes this appropriate objective.  For these reasons, the Debtor requests that the

16  Court make a factual determination that the Proposed Buyer, or a Successful Bidder at the Sale

17  Hearing, has purchased the Property in good faith as defined under 11 U.S.C. § 363(m).

18  **VII.**

19  **THE COURT SHOULD PERMIT IMMEDIATE RELIEF**

20  The Debtor requests that the Court waive Bankruptcy Rule 6004(h) ("Rule 6004(h)"), which

21  provides that an "order authorizing the use, sale, or lease of property . . . is stayed until the

22  expiration of 14 days after entry of the order, unless the court orders otherwise.".  Although Rule

23  6004(h) is silent as to when a court should "order otherwise" and eliminate or reduce the fourteen

24  (14) day stay period, Collier on Bankruptcy suggests that the fourteen (14) day stay period should

25  be eliminated to permit a sale or other transaction to close immediately "where there has been no

26  objection to the procedure."  10 COLLIER ON BANKRUPTCY ¶ 6004.11 (Alan N. Resnick & Henry J.

27  Somme reds., 16th ed.).

28  Here, a waiver of Rule 6004(h) will permit the Debtor to immediately realize the value of

the Property for the benefit of the estate and its creditors and should, therefore, be granted.

## VIII.

## <u>CONCLUSION</u>

**WHEREFORE,** the Debtor respectfully requests that the Court enter an order:

1.      Granting the Motion;

2.      Approving the Bidding Procedures attached to the Laski Declaration as **Exhibit 1**;

3.      Authorizing the Sale of the Property to the Proposed Buyer or Successful Bidder(s) free and clear of <u>all</u> liens, claims, interests and encumbrances;

4.      Authorizing the Debtor to sell the Property outside the ordinary course of business and to pay, pursuant to demands submitted to escrow, all valid liens and encumbrances to the extent provided in the Motion;

5.      Authorizing the Debtor to sign all documents necessary to consummate the Sale and close escrow, including, but not limited to, the sale agreement, grant deed, and escrow instructions;

6.      Authorizing the Debtor and/or escrow to pay all customary costs of sale;

7.      Authorizing the Debtor and/or escrow to pay in full all installments of property taxes on the Property for all years up to and including 2018-2019;

8.      Approving the breakup fee provision of the PSA;

9.      Finding that the Proposed Buyer or Successful Bidder(s) is a "good faith" purchaser entitled to all of the protections and benefits of 11 U.S.C. § 363(m);

10.    Waiving the 14-day stay provided in Bankruptcy Rule 6004(h);

11.    Approving the scope and form of notice provided for the sale of the Property; and

12.    Granting such other and further relief the Court deems just and proper.

1    Dated:  September 23, 2020          **ARENT FOX LLP**

2

3                                  By: */s/ M. Douglas Flahaut*

4                                    Aram Ordubegian
                                   M. Douglas Flahaut

5                                    Christopher K.S. Wong
                                   General Bankruptcy and Restructuring Counsel

6                                    for Debtor and Debtor-in-Possession

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

ARENT FOX LLP
ATTORNEYS AT LAW
LOS ANGELES

## DECLARATION OF RICHARD J. LASKI

I, Richard J. Laski, declare that:

1.      I am the Chief Restructuring Officer of 450 S. Western, LLC.  I have personal knowledge of the facts described herein and if called as a witness, I could and would testify competently thereto.

2.      I submit this Declaration in support of the *Motion for an Order: (1) Authorizing Bidding Procedures for the Sale of Estate Property; (2) Approving the Sale of Property Under 11 U.S.C. § 363 Free and Clear of Liens, Claims, and Encumbrances, Subject to Higher and Better Offers; and (3) Approving the Form and Manner of Notice* (the "Motion").  All capitalized terms used herein shall have the meaning ascribed to them in the Motion unless otherwise defined.

3.      The factual allegations in support of the Motion are set forth in section III of the foregoing Motion.  I have reviewed and discussed these facts with the Debtor's management and advisors, and based upon such review and discussion, believe them to be true and correct to the best of my knowledge, information, and belief.

## THE PROPOSED SALE

4.      On September 15, 2020, the Proposed Buyer and I entered into the PSA, a true and correct copy of which has been filed as Docket No. 180, for the Sale of the Property to the Proposed Buyer, subject to higher and/or better offers at the Auction.  If I do not receive a higher or otherwise better offer for the Property, by the Motion, I intend to request that the Court enter an order approving the PSA and the Sale of the Property to the Proposed Buyer.

5.      Pursuant to the PSA, I am seeking to sell the Property on an "AS IS, WHERE IS" basis (subject to overbid(s)) free and clear of liens, claims, interests and encumbrances to the Proposed Buyer for the sum of $45,591,000 in cash plus the credit bid of the Proposed Buyer as set forth in the PSA.  According to the Debtor's application to employ the Agent, as modified by that certain stipulation that was recently filed with the Court, the Agent agreed that in the event the Property in sold pursuant to the PSA to the Proposed Buyer, it will not be entitled to a commission. It will, however, to receive a $50,000 one-time payment to cover its out-of-pocket marketing expenses.  In the event the Property is sold for a purchase price greater than or equal to $50,000,000,

1  the Agent shall be entitled to a commission of 3% of the ultimate purchase price, as agreed upon

2  per the original listing agreement (or 3.75% if the Successful Buyer is represented by an outside

3  broker (0.75% of which will be offered to the outside broker)).

4      6.    The Proposed Buyer has wired to escrow $1,000,000 in earnest money deposit.  The

5  Proposed Buyer has waived all contingencies, except as otherwise set forth in the PSA.

6                          **THE MARKETING PROCESS**

7      7.    I retained the Agent as my real estate broker to assist me in marketing and selling

8  the Property.  An order approving the retention of the Agent was entered by this Court on April 21,

9  2020.  The Agent, with the aid of myself and the Debtor's professionals, have worked tirelessly to

10  market the Property for sale, and reached out and met with numerous potential buyers.

11     8.    I am informed the Agent marketed the Property on commercial real estate websites

12  such as the CBRE, Inc. platform DealFlow and Costar, Inc. and sent "push" emails to the CBRE

13  database of buyers as well as CampaignLogic and Real Capital Analytics databases.  Specifically,

14  I am informed that CBRE (i) presented the Property to approximately 9,950 potential buyers and

15  brokers; (ii) as a result of those efforts, the Agent received preliminary indications of interest

16  from approximately 302 parties who signed the confidentiality agreement; and (iii) provided all

17  interested parties with additional details concerning the Property.  Of those 302 interested parties,

18  over 206 parties downloaded the documents on the DealFlow website, and the Agent identified ten

19  potential bidders who have expressed serious interest in participating in an auction.    Seven

20  prospective bidders submitted offers (five written and two verbal) prior to the Debtor's selection of

21  the offer of the Proposed Buyer as the stalking horse bid.

22     9.    Subsequent to the approval of the Bidding Procedures, I am informed that the Agent

23  will update all of the websites and listing services to reflect that I am soliciting overbids pursuant

24  to the Bidding Procedures and advise all interested parties to submit offers, qualify as overbidders

25  and make overbids at the Auction.  I am informed that the Agent continues to actively market the

26  Property to potential overbidders including those that had previously expressed interest in the

27  Property.  The Agent will submit a declaration prior to the Sale Hearing to update this Court and

28  interested parties on the sale marketing efforts to date.

ARENT FOX LLP
ATTORNEYS AT LAW
LOS ANGELES

10.     Since the Property will be sold in auction format as provided in the Motion, I submit that the final purchase price offered for the Property at the conclusion of the Auction will establish the fair market value for the Property.

## THE BIDDING PROCEDURES

11.     The Agent, Debtor's counsel and I have evaluated the offers to purchase the Property we received.  In the exercise of my reasonable business judgment, I have decided to accept the Proposed Buyer's offer, subject to this Court's approval and overbid pursuant to the procedures set forth in the proposed Bidding Procedures.  A true and correct copy of the Bidding Procedures is attached to the Motion as **Exhibit 1.**

12.     Based upon such facts and the advice of my counsel as to the legal issues presented, I believe the Bidding Procedures are in the best interests of the estate and should be approved.

13.     Upon conclusion of the Auction, I will: (i) review each Overbid on the basis of financial and contractual terms and the factors relevant to the sale process, including those factors affecting the speed, certainty of consummating the Sale, and gross recovery to the estate; and (ii) identify the highest and otherwise best offer.

14.     Following a hearing approving the Sale of the Property to the Successful Bidder, if such Successful Bidder fails to consummate an approved sale because of a breach or failure to perform on the part of such Successful Bidder, (a) he/she/it will forfeit his/her/its Overbid Deposit to me and I may pursue any and all of my options at law and in equity with respect to such breach, and (b) I may consummate the Sale with the Back-up Bid, as disclosed at the Sale Hearing, and I will be authorized to effectuate such sale without further order of the Bankruptcy Court, or (c) I may reschedule the Auction to a later date and time convenient to the Bankruptcy Court.

15.     To ensure that the best possible price for the Property is obtained, I will provide notice of the Auction and the Bidding Procedures by causing the Motion and the accompanying notice to be served upon: (i) the Proposed Buyer; (ii) the Committee; (iii) all taxing authorities having jurisdiction over the Property; (iv) all parties that have requested or that are required to receive notice pursuant to Bankruptcy Rule 2002; (v) all parties that are known or reasonably believed to have expressed an interest in acquiring the Property; (vi) all parties that are known or

reasonably believed to have asserted any lien, encumbrance, claim or other interest in the Property; (vii) all governmental agencies that are an interested party with respect to the Sale and transactions proposed thereunder; and (viii) all other known creditors of the estate.  I will also cause to be filed the form F 6004-2 Notice of Sale of Estate Property so that the sale is published on the Court's website.  In this manner, the Agent and I aim to provide all parties who could potentially be interested in purchasing the Property with the opportunity to present higher and better bids pursuant to the Bidding Procedures set forth herein.

16.    The Bidding Procedures described herein are reasonably calculated to encourage a buyer to submit a final bid and ensure a sale at the highest and best price.  Indeed, the Bidding Procedures provide parties with a reasonable opportunity to participate in a competitive bidding process.

## THE SALE SHOULD BE FREE AND CLEAR OF LIENS AND ENCUMBRANCES

17.    My analysis of the status of liens and encumbrances affecting the Property indicates that the Property is allegedly encumbered as follows based on a closing date of October 29, 2020:

| Claimant / Description | Amount of Secured Claim Asserted by Claimant | Amount of Secured Claim Not Currently Subject to A Bona Fide Dispute |
|---|---|---|
| Los Angeles County Treasurer and Tax Collector (2019-2020 and prior) | $2,157,568 | $2,157,568 |
| Los Angeles County Treasurer and Tax Collector (2020-2021 tax year) | $179,458 | $179,458 |
| G450 | $31,205,507[11] | TBD[12] |
| Pontis | $5,082,515 | $5,082,515 |
| Five West | $6,352,944 | $6,352,944 |

[11] Amount of this claim is disputed.
[12] The Debtor currently believes only a small portion of this secured claim may be subject to a bona fide dispute but it is still in the process of reconciling the issues with the secured creditor, the Committee and the Proposed Buyer.

ARENT FOX LLP
ATTORNEYS AT LAW
LOS ANGELES

| | | |
|---|---|---|
| New Creation Engineering and Builders, Inc. ("New Creation") | $699,812[13] | $551,311 |
| Evergreen Capital Assets LP | $1,371,433 | $1,371,433 |
| One Stop Financial Consulting, Inc. | $93,167 | $0.00[14] |
| Philmont Management Inc. ("Philmont") | $2,361,878 | $0.00[15] |
| **TOTAL (referred to collectively as the "Total Liens")** | **$49,504,281** | **Less than or Equal to $46,900,735** |

## THE SALE IS IN THE BEST INTEREST OF THE ESTATE AND CREDITOR BODY

18.     Based upon the facts of this case and the advice of my counsel as to the legal issues presented, I believe that it is in the best interest of the estate for the Sale to be approved for at least the following reasons: (i) holders of all undisputed liens against the Property will be paid and satisfied in full or a sum set aside to protect such creditor pending subsequent adjudication of his/her/its claim;  (ii) the estate will be relieved of the costs required to manage, insure and maintain the Property; (iii) the Sale will monetize the Property for the benefit of creditors of the estate; and (iv) the consideration provided to the estate by the Proposed Buyer pursuant to the PSA represents adequate and fair consideration for the Property.

19.     The Bidding Procedures are intended to increase the likelihood that the estate will receive the highest and best price for the Property.  By open solicitation of higher bids, I have made every effort to maximize the value of the Property to the estate and its creditors.

20.     At my direction, Debtor's counsel has given notice of the Motion and the proposed Auction, in accordance with Bankruptcy Rules 2002(a)(2), 6004(a) and (c), 9007, and 9014 and Rules 6004-1 and 9013-1 of the Local Bankruptcy Rules, to all known creditors and parties-in-interest in this bankruptcy case by first class mail.

## THE PROPOSED BUYER IS A GOOD FAITH PURCHASER

---

[13] Amount of this claim is disputed.
[14] One Stop Financial Consulting filed proof of claim no. 15-1 asserting their claim is unsecured.
[15] The secured status and amount of this claim is disputed in its entirety based on, among other things, improper and/or untimely perfection of the claimed mechanic's lien.

ARENT FOX LLP
ATTORNEYS AT LAW
LOS ANGELES

21.    Based on information and belief, other than communications concerning that certain promissory note dated July 1, 2019, the Proposed Buyer has no prior relationship with the Debtor, and is not an "insider" as defined under 11 U.S.C. § 101(31). Moreover, the negotiations between myself, the Agent, and the Proposed Buyer regarding the Sale were at all times arms-length and no collusion was involved.

22.    The Proposed Buyer was honest and cooperative with me in the negotiation process and did not seek to gain any advantage over any other interested party or chill any other previous bidding for the Property. Indeed, the PSA is the product of arms-length negotiations between myself, the Agent, and the Proposed Buyer. Importantly, the sale of the Property is subject to an auction and overbid process, which as noted above, was subject to extensive marketing efforts by the Agent. The auction process provides additional assurance that the estate is receiving fair value. Accordingly, based on the foregoing, I submit that the proposed Sale is based on my sound business judgment and therefore, the Sale should be approved.

23.    In connection with the proposed Sale to the Proposed Buyer, the Agent and I have evaluated the alternatives and acted with the intent of obtaining the best possible deal for the estate in terms of maximizing value. The terms of the proposed Sale of the Property to the Proposed Buyer accomplishes this appropriate objective.

## **NOTICE**

24.    At my direction, my counsel will give notice of the Motion substantially in accordance with Bankruptcy Rules 2002(a)(2) and 9007 and Local Bankruptcy Rules 6004-1(b), and 9013-1(a) to (i) the Proposed Buyer; (ii) the Committee; (iii) all taxing authorities having jurisdiction over the Property; (iv) all parties that have requested or that are required to receive notice pursuant to Bankruptcy Rule 2002; (v) all parties that are known or reasonably believed to have expressed an interest in acquiring the Property; (vi) all parties that are known or reasonably believed to have asserted any lien, encumbrance, claim or other interest in the Property; (vii) all governmental agencies that are an interested party with respect to the Sale and transactions proposed thereunder; and (viii) all other known creditors of the estate.

ARENT FOX LLP
ATTORNEYS AT LAW
LOS ANGELES

25.     To ensure that the best possible price for the Property is obtained, at my direction, my counsel and the Agent are prepared to provide notice of the Bidding Procedures as well as the Auction and Sale Hearing.  Counsel for the Debtor will also file a form F 6004-2 Notice of Sale of Estate Property so that the sale is published on the Court's website.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed this 23rd day of September 2020, at Pasadena, California.

Richard J. Laski

EXHIBIT 1

## Bidding Procedures

Set forth below are the bidding procedures (the "**Bidding Procedures**") to be employed with respect to the prospective sale by 450 S. Western, LLC (the "**Seller**"), as the debtor and debtor-in-possession in its chapter 11 bankruptcy case, Case No. 2:20-bk-10264-ER, of the real property located at 450 South Western Avenue, Los Angeles, CA 90020, APN No. 5503-014-020 (the "**Property**"), free and clear of all liens, claims, interests, and encumbrances pursuant to the Bankruptcy Code.

Seller has entered into a purchase sale agreement (the "**PSA**") for the purchase and sale of the Property to Evergreen Capital Assets LP or its assignee (the "**Proposed Buyer**"). Seller will seek entry of an order by the United States Bankruptcy Court (the "**Bankruptcy Court**"), among other things, authorizing and approving the sale to the Proposed Buyer or to a Qualified Bidder (as hereinafter defined) which the Bankruptcy Court may determine to have made the highest or otherwise best offer to purchase the Property (the "**Successful Bidder**").

## The Bidding Process

Seller shall (i) determine in its reasonable judgment according to the provisions set forth herein whether any person is a Qualified Bidder, (ii) coordinate the efforts of Qualified Bidders in conducting their respective due diligence regarding the Property, (iii) receive offers from Qualified Bidders, and (iv) negotiate any offer made to purchase the Property (collectively, the "**Bidding Process**"). Any person who wishes to participate in the Bidding Process must be a Qualified Bidder. Neither Seller nor its representatives shall be obligated to furnish any information of any kind whatsoever related to the Property to any person who is not a Qualified Bidder. Seller shall have the right to adopt such other rules for the Bidding Process which, in its reasonable judgment, will better promote the goals of the Bidding Process and which are not inconsistent with any of the other provisions hereof, Title 11 of the United States Code, or of any Bankruptcy Court order.

## Participation-Bid Requirements

Any party interested in submitting an overbid ("**Overbid**") for the Property ("**Overbidder**") must, no later than October 12, 2020 by 5:00 p.m. (Pacific Standard time) ("**Overbid Deadline**"), deliver written copies of his/her/its Overbid to counsel for the Seller, M. Douglas Flahaut, Arent Fox LLP, 555 West Fifth Street, 48th Floor, Los Angeles CA 90013, Email: douglas.flahaut@arentfox.com, along with the following:

(a) An Overbid offer of at least Fifty Million 0/100 Dollars ($50,000,000.00) in cash consideration;

(b) A proposed PSA similar to the terms set forth in the Proposed Buyer's PSA (other than the carve out provisions) with changes identified via a red-lined document such that all proposed changes are highlighted for the Court and interested parties;

(c) Statement that the Overbid is irrevocable until five (5) business days after the Property has been sold pursuant to the closing of the sale approved by the Bankruptcy Court in a final, non-appealable order unless such Overbid is designated as the Back-Up Bid (as hereinafter defined);

(d) Statement that the Overbid is not conditioned on obtaining financing, regulatory contingencies, any internal approval, on the outcome or review of due diligence or any other condition precedent that would prevent the Qualified Bidder from entering into a PSA to purchase the Property;

(e) Written evidence of a firm, irrevocable commitment for financing or other evidence of the financial wherewithal such as availability in cash, or a binding commitment for availability in cash of at least $50,000,000 of such Qualified Bidder that the Seller reasonably believes in its sole discretion, provides the ability to consummate the sale with appropriate contact information for such financing sources;

(f) An Overbid deposit ("**Overbid Deposit**") in the amount of not less than of One Million and No/100 Dollars ($1,000,000.00), which will be non-refundable if the Qualified Bidder is the Successful Bidder at the conclusion of the Auction and the sale does not close due to the Qualified Bidder's default. The Overbid Deposit must be actually received by the Debtor or its designated escrow company by the Overbid Deadline;

(g) An acknowledgment and representation that the Qualified Bidder (other than the Proposed Buyer): (i) has had an opportunity to conduct any and all required due diligence regarding the Property prior to making its offer; (ii) has relied solely on its own independent review, investigation and/or inspection of any documents provided by the Debtor; (iii) did not rely upon any written or oral statements, representations, promises, warranties or guaranties whatsoever, whether express or implied (by operation of law or otherwise), regarding the Property or the completeness of any information provided in connection therewith or with the Auction, except as expressly stated in the proposed PSA; and (iv) is not entitled to any expense reimbursement, break-up fee, or similar type of payment in connection with its bid ;

(h) Evidence, in form and substance reasonably satisfactory to the Debtor, of authorization and approval from the Qualified Bidder's board of directors (or other comparable governing body) with respect to the submission, execution, delivery and closing of the PSA; and

(i) If the Qualified Bidder is a secured creditor of the Debtor who intends to make a credit bid, evidence of the amount, priority and basis for such creditor's secured claim against the Debtor; and if the Debtor reasonably determines, after consultation with its advisors and the Committee, that such creditor's secured claim, in whole or in part, is subject to dispute, then the disputed amount shall not be included in the amount of the secured creditor's credit bid

### <u>Designation as Qualified Bidder</u>

Unless otherwise ordered by the Court, in order to participate in the bidding process, prior to the Bid Deadline (defined herein), each person, other than the Proposed Buyer who wishes to participate in the bidding process ( a "Potential Bidder") must deliver the following to the Notice Parties (defined herein):

(a) a written disclosure of the identity of each entity that will be bidding for the Debtor's Assets or otherwise participating in connection with such bid and whether such Potential Bidder is represented by a broker; and

(b) an executed confidentiality agreement (to be delivered prior to the distribution of any confidential information by the Debtor to a Potential Bidder) in the form and substance satisfactory to the Debtor and which will inure to the benefit of any purchaser of the Debtor's Assets; without limiting the foregoing, each confidentiality

agreement executed by a Potential Bidder shall contain standard non-solicitation provisions.

A Potential Bidder that delivers the documents and information described above and that Debtor determines in its reasonable business judgment, after consultation with its advisors and the Committee, is likely (based on availability of financing, experience, and other considerations) to be able to consummate the sale, will be deemed a "Qualified Bidder." The Debtor will limit access to due diligence to those parties it believes, in the exercise of its reasonable judgment are pursuing the transaction in good faith.

As promptly as practicable after a Potential Bidder delivers the materials required above, the Debtor will determine and will notify the Potential Bidder if such Potential Bidder is a Qualified Bidder.

## **Bid Protection**

Subject to Bankruptcy Court approval, Proposed Buyer shall be entitled to be paid break-up fee in the amount of Five Hundred Thousand and No/100 Dollars ($500,000.00) ("**Break-Up Fee**") if a higher or otherwise better offer from another bidder at the Auction results in a closed sale of all or substantially all of the Property to any person other than Proposed Buyer or a designee of Proposed Buyer (the "**Alternative Transaction**") and Proposed Buyer was not in default of any of its material obligations under the PSA and failed to cure such breach after receipt of written notice from the Debtor, and was otherwise ready, willing and able to close a sale for the Property. Payment of the Break-Up Fee shall be subject to the closing of the Alternative Transaction and paid from the sale proceeds within five (5) business days of the closing of the Alternative Transaction.

## **Bidding at Auction**

If at least one Qualified Bidder who has submitted an Overbid appears at the Auction, the Seller shall designate what it determines, in its reasonable judgment, to be the best and highest Overbid received for the Property to be the leading bid at the Auction. The Overbid must have value to the Debtor, in the Debtor's exercise of its reasonable business judgment, after consultation with its advisors and the Committee, that is greater than the sum of the value offered under the Proposed Buyer's Bid plus the amount of the Break-Up Fee and $500,000. Thereafter, the Seller shall solicit better and higher bids for the Property from the Qualified Bidders participating in the Auction (including the Proposed Buyer, if it chooses to participate) until the best and highest bid for the Property has been determined by the Seller (the "**Successful Bid**"). Any Overbid(s) must be in increments of at least one hundred thousand dollars ($100,000). The Qualified Bidder who submits the second best/highest bid for the Property at the Auction shall be designated as the back-up bidder ("**Back-up Bidder**"), if such bidder consents to act as the backup bidder. In the event that Proposed Buyer or the Successful Bidder cannot timely complete the purchase of the Property, the Seller shall be authorized to proceed with the sale of the Property to the Back-up Bidder without further notice, hearing or order of the Bankruptcy Court.

A Qualified Bid will be valued based upon several factors including without limitation, (i) the amount of such bid; (ii) the risks and timing associated with consummating such bid, (iii) any proposed revisions to the form of the Proposed Buyer's PSA, and (iv) any other factors deemed relevant by the Debtor in its reasonable discretion, in consultation with the Committee.

AFDOCS/22255338.2

## Auction and Sale Hearing

After all Qualified Bid(s) have been received, the Seller shall conduct an auction (the "**Auction**") for the Property. Such Auction shall take place at the Bankruptcy Court on <u>October 14, 2020, commencing at 10:00 a.m. (Pacific Standard time)</u>. Only a Qualified Bidder who has submitted a Qualified Bid will be eligible to participate at the Auction. At such Auction, the Proposed Buyer and Qualified Bidders will be permitted to increase their bids.

If the Debtor does not receive any Qualified Bids other than the Proposed Buyer PSA, the Debtor will not hold an auction and the Proposed Buyer shall be named the Successful Bidder for the Property.

The sale hearing (the "**Sale Hearing**") shall take place immediately following the Auction at the Bankruptcy Court. The Sale Hearing may be adjourned or rescheduled without notice by an announcement of the adjourned date of the Sale Hearing. At such Sale Hearing, Seller shall present the Successful Bid to the Bankruptcy Court for approval. The Auction shall be recorded.

The Auction shall run in accordance with the following procedures:

(a) only the Proposed Buyer and the Qualified Bidders who have timely submitted a Qualified Bid will be entitled to make any subsequent bids at the Auction;

(b) each Qualified Bidder shall be required to confirm in writing that it has not engaged in any collusion with respect to the bidding or the sale;

(c) at least one (1) business day prior to the Auction, each Qualified Bidder who has submitted a Qualified Bid must inform the Debtor whether it intends to attend the Auction; provided that in the event a Qualified Bidder elects not to attend the Auction, such Qualified Bidder's Qualified Bid shall nevertheless remain fully enforceable against such Qualified Bidder until the date of the selection of the Successful Bidder at the conclusion of the Auction. At least one business day prior to the Auction, the Debtor will provide copies of the Qualified Bid or combination of Qualified Bids which the Debtor believes in its reasonable discretion is the highest or otherwise best offer (the "Starting Bid") to all Qualified Bidders including the Proposed Buyer; and

(d) all Qualified Bidders who have timely submitted Qualified Bids will be entitled to be present for all Subsequent Bids at the Auction and the actual identity of each such Qualified Bidder will be disclosed on the record at the Auction; provided that all Qualified Bidders wishing to attend the Auction must have at least one individual representative with authority to bind such Qualified Bidder attending the Auction in person.

## Acceptance of Qualified Bids

Seller presently intends to sell the Property to Proposed Buyer or the highest Qualified Bidder. Seller's presentation to the Bankruptcy Court for approval of a particular Qualified Bid does not constitute Seller's acceptance of such bid. Seller will be deemed to have accepted a bid only when the bid has been approved by an order of the Bankruptcy Court.

## Closing of Sale and Forfeiture of Deposits

If the Successful Bidder fails to timely consummate the sale of the Property, the Successful Bidder will be deemed to have forfeited his/her/its deposit unless the Bankruptcy Court or the Seller agrees to provide the Successful Bidder with an extension of time to close the sale.  If the Successful Bidder fails to otherwise close due to his/her/its own default and forfeits his/her/its deposit, the backup bidder (if any) will be notified and will then have the opportunity to close the sale of the Property.  If the Back-up Bidder fails to timely close the sale, the Back-up Bidder will be deemed to have forfeited his/her/its deposit unless the Bankruptcy Court or the Seller agrees to provide such Back-up Bidder with an extension of time to close the sale.

## Modifications

Seller shall determine, in its business judgment, (a) which Qualified Bid, if any, is the highest or otherwise best offer; and (b) reject at any time before the entry of an order of the Bankruptcy Court approving a Qualified Bid, any bid that, in Seller's reasonable discretion is (i) inadequate or insufficient; (ii) not in conformity with the conditions of sale; or (iii) contrary to the best interests of Seller, the estate and/or its creditors.  At or before the Sale Hearing, Seller may impose such other terms and conditions as it may determine to be in the best interest of estate, its creditors and/or other parties in interest, provided that any such other terms or conditions are approved by the Bankruptcy Court.

# PROOF OF SERVICE OF DOCUMENT

I am over the age of 18 and not a party to this bankruptcy case or adversary proceeding.  My business address is:

Arent Fox LLP, Gas Company Tower, 555 West Fifth Street, 48th Floor, Los Angeles, CA 90013.

A true and correct copy of the foregoing document entitled (*specify*): **NOTICE OF MOTION AND MOTION FOR AN ORDER: (1) AUTHORIZING BIDDING PROCEDURES FOR THE SALE OF ESTATE PROPERTY; (2) APPROVING THE SALE OF PROPERTY UNDER 11 U.S.C. § 363 FREE AND CLEAR OF LIENS, CLAIMS, AND ENCUMBRANCES, SUBJECT TO HIGHER AND BETTER OFFERS; AND (3) APPROVING THE FORM AND MANNER OF NOTICE; MEMORANDUM OF POINTS AND AUTHORITIES; DECLARATION OF RICHARD J. LASKI IN SUPPORT THEREOF** will be served or was served **(a)** on the judge in chambers in the form and manner required by LBR 5005-2(d); and **(b)** in the manner stated below:

**1.  TO BE SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING (NEF)**:  Pursuant to controlling General Orders and LBR, the foregoing document will be served by the court via NEF and hyperlink to the document. On (date) **9/23/2020** I checked the CM/ECF docket for this bankruptcy case or adversary proceeding and determined that the following persons are on the Electronic Mail Notice List to receive NEF transmission at the email addresses stated below:

☒  Service information continued on attached page

**2.  SERVED BY UNITED STATES MAIL**:
On (*date*) **9/23/2020**, I served the following persons and/or entities at the last known addresses in this bankruptcy case or adversary proceeding by placing a true and correct copy thereof in a sealed envelope in the United States mail, first class, postage prepaid, and addressed as follows. Listing the judge here constitutes a declaration that mailing to the judge <u>will be completed</u> no later than 24 hours after the document is filed.

**JUDGE**

Honorable Ernest M. Robles
United States Bankruptcy Court
255 E. Temple Street, Suite 1560
Los Angeles, CA 90012

☐  Service information continued on attached page

**3.  SERVED BY PERSONAL DELIVERY, OVERNIGHT MAIL, FACSIMILE TRANSMISSION OR EMAIL** (state method for each person or entity served):  Pursuant to F.R.Civ.P. 5 and/or controlling LBR, on (*date*) **_____,** I served the following persons and/or entities by personal delivery, overnight mail service, or (for those who consented in writing to such service method), by facsimile transmission and/or email as follows.  Listing the judge here constitutes a declaration that personal delivery on, or overnight mail to, the judge <u>will be completed</u> no later than 24 hours after the document is filed.

☐  Service information continued on attached page

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct.

| | | |
|---|---|---|
| 9/23/2020 | AYLIN SOOKASSIANS | */s/ Aylin Sookassians* |
| *Date* | *Printed Name* | *Signature* |

This form is mandatory.  It has been approved for use by the United States Bankruptcy Court for the Central District of California.

*June 2012*                                                                          **F 9013-3.1.PROOF.SERVICE**

AFDOCS/22866703.1

**1.  <u>TO BE SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING (NEF)</u>**:

Jesse S Finlayson on behalf of Creditor Philmont Management, Inc.
jfinlayson@ftrlfirm.com, bmendoza@ftrlfirm.com

M Douglas Flahaut on behalf of Debtor 450 S. Western, LLC, a California limited liability company
flahaut.douglas@arentfox.com

Maria L Garcia on behalf of Creditor Committee OFFICIAL COMMITTEE OF UNSECURED CREDITORS OF 450 S. WESTERN, LLC
Maria.L.Garcia@lewisbrisbois.com

Amy L Goldman on behalf of Creditor Committee OFFICIAL COMMITTEE OF UNSECURED CREDITORS OF 450 S. WESTERN, LLC
goldman@lbbslaw.com

Jeffrey T Gwynn on behalf of Creditor New Creation Engineering and Builders, Inc.
jgwynn@vervelaw.com

Mark S Horoupian on behalf of Interested Party Courtesy NEF
mhoroupian@sulmeyerlaw.com, mhoroupian@ecf.inforuptcy.com;ccaldwell@sulmeyerlaw.com

Christian T Kim on behalf of Interested Party Christian Kim
ckim@dumas-law.com, ckim@ecf.inforuptcy.com

Richard J Laski (TR)
rlaski@wilshirellc.com

John P Lee on behalf of Creditor One Stop Financial Consulting, Inc.
jlee@kspllaw.com, admin@kspllaw.com

John P Lee on behalf of Creditor Richvest Asset Holdings, LLC.
jlee@kspllaw.com, admin@kspllaw.com

Won Lee on behalf of Attorney Square Mixx LA, Inc.
dlee@metallawgroup.com

Won Lee on behalf of Attorney Eunice Y. Tak
dlee@metallawgroup.com

Kenderton S Lynch on behalf of Creditor Evergreen Capital Assets, LP
kenlynchlaw@aol.com

Kenderton S Lynch on behalf of Interested Party Courtesy NEF
kenlynchlaw@aol.com

David W. Meadows on behalf of Creditor G 450 LLC
david@davidwmeadowslaw.com

David W. Meadows on behalf of Creditor G 450, LLC, Pontis Capital, LLC, and Five West Capital, LP
david@davidwmeadowslaw.com

David W. Meadows on behalf of Interested Party Courtesy NEF
david@davidwmeadowslaw.com

Juliet Y Oh on behalf of Interested Party Admire Capital Lending, LLC
jyo@lnbrb.com, jyo@lnbrb.com

This form is mandatory.  It has been approved for use by the United States Bankruptcy Court for the Central District of California.

June 2012                                                                                   **F 9013-3.1.PROOF.SERVICE**

AFDOCS/22866703.1

Juliet Y Oh on behalf of Interested Party Belmont Two Investment Holdings, LLC
jyo@lnbrb.com, jyo@lnbrb.com

Juliet Y Oh on behalf of Interested Party Courtesy NEF
jyo@lnbrb.com, jyo@lnbrb.com

Aram Ordubegian on behalf of Debtor 450 S. Western, LLC, a California limited liability company
ordubegian.aram@arentfox.com

Sagar Parikh on behalf of Creditor SoCal Lien Solutions, LLC
SP@BeverlyHillsLawCorp.com

Amelia Puertas-Samara on behalf of Debtor 450 S. Western, LLC, a California limited liability company
itcdbgc@edd.ca.gov, itcdgc@edd.ca.gov

Dean G Rallis, Jr on behalf of Interested Party Courtesy NEF
drallis@hahnlawyers.com,
marias@hahnlawyers.com;mpham@hahnlawyers.com;drallis@ecf.courtdrive.com;drallis@ecf.inforuptcy.com

Victor A Sahn on behalf of Interested Party Courtesy NEF
vsahn@sulmeyerlaw.com,
pdillamar@sulmeyerlaw.com;pdillamar@ecf.inforuptcy.com;vsahn@ecf.inforuptcy.com;cblair@sulmeyerlaw.com;cblair@e
cf.inforuptcy.com;dlee@metallawgroup.com;dlee@ecf.inforuptcy.com

Lovee D Sarenas on behalf of Creditor Committee OFFICIAL COMMITTEE OF UNSECURED CREDITORS OF 450 S.
WESTERN, LLC
lovee.sarenas@lewisbrisbois.com

United States Trustee (LA)
ustpregion16.la.ecf@usdoj.gov

Christopher K.S. Wong on behalf of Debtor 450 S. Western, LLC, a California limited liability company
christopher.wong@arentfox.com, yvonne.li@arentfox.com

Felix T Woo on behalf of Creditor SINO-US INVESTMENT AND MANAGEMENT CONSULTANT LIMITED
fwoo@ftwlawgroup.com, admin@ftwlawgroup.com

Hatty K Yip on behalf of U.S. Trustee United States Trustee (LA)
hatty.yip@usdoj.gov, hatty.k.yip@usdoj.gov

Timothy J Yoo on behalf of Interested Party Courtesy NEF
tjy@lnbyb.com

This form is mandatory.  It has been approved for use by the United States Bankruptcy Court for the Central District of California.

June 2012

**F 9013-3.1.PROOF.SERVICE**

AFDOCS/22866703.1