Aram Ordubegian (SBN 185142)
M. Douglas Flahaut (SBN 245558)
Christopher K.S. Wong (SBN 308048)
**ARENT FOX LLP**
555 West Fifth Street, 48th Floor
Los Angeles, CA  90013-1065
Telephone:    213.629.7400
Facsimile:    213.629.7401
Emails:        aram.ordubegian@arentfox.com
              douglas.flahaut@arentfox.com
              christopher.wong@arentfox.com

General Bankruptcy and Restructuring Counsel for
Debtor and Debtor-In-Possession

# UNITED STATES BANKRUPTCY COURT

# CENTRAL DISTRICT OF CALIFORNIA

# LOS ANGELES DIVISION

| | |
|---|---|
| In re<br><br>**450 S. WESTERN, LLC, a California limited liability company**<br><br>                    Debtor and Debtor-in-Possession. | Case No. 2:20-bk-10264-ER<br><br>Chapter 11<br><br>**DEBTOR'S FIRST AMENDED CHAPTER 11 PLAN OF LIQUIDATION, DATED FEBRUARY 26, 2021**<br><br><u>Hearing</u><br>Date:   [To be Set]<br>Time:   [To be Set]<br>Place: Courtroom 1568<br>          255 E. Temple St.<br>          Los Angeles, CA 90012[1] |

---

[1] The hearing may be conducted virtually via Zoom, WebEx, or other platform as required by the COVID-19 public health emergency.

ARENT FOX LLP
ATTORNEYS AT LAW
LOS ANGELES

AFDOCS/23752166.3

# TABLE OF CONTENTS

|  |  |  | **Page** |
|---|---|---|---|
| I. | INTRODUCTION | | 6 |
| II. | DATE OF HEARING ON PLAN CONFIRMATION | | 7 |
| III. | CLASSIFICATION AND TREATMENT OF CLAIMS UNDER THE PLAN | | 8 |
| | A. | Overview | 8 |
| | B. | Treatment of Unclassified Claims | 9 |
| | | 1. Administrative Expenses | 9 |
| | | 2. Professional Compensation and Reimbursement Claims | 11 |
| | | 3. Priority Tax Claims | 12 |
| | | 4. Office of the United States Trustee Fees | 13 |
| | C. | Treatment of Classified Claims and Interests | 13 |
| | | 1. Class 1 – Priority Non-Tax Claims, If Any. | 13 |
| | | 2. Class 2(A) – Secured Claim of G 450 LLC | 14 |
| | | 3. Class 2(B) – Secured Claim of Pontis Capital, LLC | 15 |
| | | 4. Class 2(C) – Secured Claim of Five West Capital, LP | 16 |
| | | 5. Class 2(D) – Secured Claim of New Creation Engineering & Builders, Inc. (Notice Only) | 17 |
| | | 6. Class 2(E) – Secured Claim of Evergreen Capital Assets, LP | 17 |
| | | 7. Class 2(F) – Secured Claim of Philmont Management, Inc | 18 |
| | | 8. Class 2(G) – Secured Claim of Los Angeles County Treasurer and Tax Collector (Notice Only) | 19 |
| | | 9. Class 3 – General Unsecured Claims | 20 |
| | | 10. Class 4 – Equity Interest Holders | 21 |
| IV. | MEANS OF EFFECTUATING THE PLAN AND OTHER PROVISIONS | | 21 |
| | A. | The Liquidating Trust and the Liquidating Trustee | 21 |
| | | 1. Creation of the Liquidating Trust | 21 |
| | | 2. Effective Date | 22 |
| | | 3. Employment of Liquidating Trustee | 22 |
| | | 4. Successor of the Liquidating Trustee | 22 |
| | | 5. Duties of the Liquidating Trustee | 22 |
| | | 6. Actions by the Liquidating Trustee to Implement the Plan | 22 |
| | | 7. Trust Assets | 23 |
| | | 8. Transfer of Assets | 23 |
| | | 9. Tax Classification of the Liquidating Trust | 23 |
| | | 10. Filing Tax Returns | 24 |
| | | 11. Estimating Fair Market Value of Assets | 24 |

# TABLE OF CONTENTS
### (continued)

|  |  |  | Page |
|---|---|---|---|
|  | 12. | Allocations of Taxable Income | 24 |
|  | 13. | Non-Transferability of Interests | 25 |
| B. | Duties and Powers of the Liquidating Trustee | | 25 |
|  | 1. | General Authority | 25 |
| C. | All Distributions by Liquidating Trustee as Disbursing Agent | | 26 |
| D. | Distributions on Allowed General Unsecured Claims | | 26 |
| E. | Method of Distributions Under the Plan | | 26 |
| F. | Date of Plan Distributions | | 27 |
| G. | Delivery of Distributions | | 27 |
|  | 1. | Last Known Address | 27 |
|  | 2. | Undeliverable Distributions | 27 |
| H. | Reserves | | 28 |
| I. | Time Bar to Cash Payments; Unclaimed Distributions | | 28 |
| J. | Distribution Record Date | | 29 |
| K. | Distributions After Effective Date | | 29 |
| L. | Setoffs and Recoupment | | 29 |
| M. | Allocation of Plan Distributions to Principal, then Interest | | 29 |
| N. | Tax Obligations | | 30 |
| O. | Withholding Taxes | | 30 |
| P. | Dissolution of the Debtor after the Effective Date | | 30 |
| Q. | Closing of the Debtor's Chapter 11 Case | | 30 |
| R. | Cancellation of Existing Agreements | | 31 |
| S. | Cancellation of Liens | | 31 |
| V. | PROVISION FOR TREATMENT OF DISPUTED CLAIMS UNDER THE PLAN | | 31 |
| A. | Objections to Claims; Filing of Late Claims; Disallowed Claims | | 31 |
| B. | Amendment of Claims | | 32 |
| C. | No Distributions Pending Allowance | | 32 |
| D. | Distributions After Allowance | | 32 |
| E. | Resolution of Claims | | 33 |
| F. | Estimation of Claims | | 33 |
| G. | Claims Paid or Reduced Prior to the Effective Date | | 33 |
| H. | Postpetition Interest on Claims | | 34 |
| I. | Fractional Dollars, De Minimis Distributions | | 34 |
| VI. | EXECUTORY CONTRACTS AND UNEXPIRED LEASES | | 34 |

ARENT FOX LLP
ATTORNEYS AT LAW
LOS ANGELES

**TABLE OF CONTENTS**
**(continued)**

Page

A.    Rejection of Any Remaining Executory Contracts and Unexpired Leases .......... 34

B.    Approval of Rejection of Executory Contracts and Unexpired Leases ................ 34

C.    Bar Date for Filing Proofs of Claim Relating to Executory Contracts and
Unexpired Leases Rejected Under the Plan ........................................................ 35

D.    Insurance Policies ............................................................................................. 35

VII.    CONDITIONS PRECEDENT TO EFFECTIVE DATE ..................................... 36

A.    Conditions Precedent to Effective Date ............................................................ 36

1.    Entry of the Confirmation Order ........................................................... 36

2.    Consents Obtained ................................................................................. 36

3.    Satisfaction of Conditions in Plan ......................................................... 36

4.    Transfer of Liquidating Trust Assets ..................................................... 36

5.    Execution of Documents; Other Actions ............................................... 36

B.    Waiver of Conditions ........................................................................................ 37

C.    Satisfaction of Conditions ................................................................................ 37

VIII.    EFFECT OF CONFIRMATION ......................................................................... 37

A.    Vesting of Assets .............................................................................................. 37

B.    Binding Effect ................................................................................................... 38

C.    Satisfaction of Claims and Termination of Interests ......................................... 38

D.    Injunction .......................................................................................................... 39

E.    Injunction on Causes of Action ........................................................................ 39

F.    Terms of Existing Injunctions or Stays ............................................................ 39

G.    Preservation of Causes of Action / Reservation of Rights ................................ 40

1.    Retention of Claims and Defenses ......................................................... 40

2.    Unknown Retained Claims and Defenses / No Preclusion ..................... 41

H.    Releases ............................................................................................................ 41

1.    Releases by the Estate ........................................................................... 41

2.    Compromise Under Fed. R. Bankr. P. 9019 .......................................... 42

I.    Retention of Jurisdiction ................................................................................... 43

IX.    MODIFICATION, REVOCATION, OR WITHDRAWAL OF THE PLAN ................. 45

A.    Modification of the Plan .................................................................................... 45

B.    Revocation or Withdrawal of the Plan .............................................................. 45

X.    MISCELLANEOUS PROVISIONS ................................................................... 46

A.    Effectuating Documents and Further Transactions ........................................... 46

B.    Withholding and Reporting Requirements ........................................................ 46

C.    Post-Confirmation Status Report ...................................................................... 46

ARENT FOX LLP
ATTORNEYS AT LAW
LOS ANGELES

**TABLE OF CONTENTS**
**(continued)**

Page

D.    United States Trustee Fees and Reports .................................................................. 47

E.    Expedited Tax Determination ................................................................................... 47

F.    Exemption from Transfer Taxes .............................................................................. 47

G.    Substantial Consummation ...................................................................................... 47

H.    Severability of Plan Provisions ............................................................................... 47

I.    Governing Law ......................................................................................................... 48

J.    Time .......................................................................................................................... 48

K.    Solicitation of the Plan ............................................................................................ 48

L.    Exhibits/Schedules ................................................................................................... 48

M.    Notices ...................................................................................................................... 48

N.    Section Headings ...................................................................................................... 49

O.    Inconsistencies ......................................................................................................... 49

XI.    DEFINITIONS AND INTERPRETATION ........................................................................ 49

A.    Definitions ................................................................................................................ 49

B.    Interpretation; Application of Definitions; Rules of Construction ....................... 57

EXHIBIT 1 ............................................................................................................................... 60

# I.

## INTRODUCTION

450 S. Western, LLC, a California limited liability company, the debtor and debtor-in-possession in this Case[2] respectfully proposes the following chapter 11 plan of liquidation.

**The document you are reading is the Plan**. The Disclosure Statement which is being sent to you in the same envelope as this document (a) sets forth information concerning the Plan and the alternatives to the Plan, (b) advises the holders of Claims and Interests of their rights under the Plan, (c) assists the holders of Claims and Interests in making an informed judgment regarding whether they should vote to accept or reject the Plan, and (d) assists the Court in determining whether this Plan complies with the provisions of the Bankruptcy Code and should be confirmed. The Disclosure Statement was approved by the Court on _____, 2021. In the event this Plan and the Disclosure Statement are inconsistent, this Plan will control.

This Plan explains the method by which the Debtor plans to wind up its affairs, liquidate its remaining assets, and make distributions to creditors of this Estate. **If the Court confirms the Plan, it will be binding on the Debtor, creditors, equity holders, and other interested parties.**

The Plan is a liquidating plan. Pursuant to the Sale Order entered by the Bankruptcy Court, the Debtor has sold the main asset in this Case – that certain real property located 450 S. Western Ave., Los Angeles, CA. The Plan provides for the creation of a Liquidating Trust to administer and liquidate all remaining Estate assets of the Debtor and make distributions to holders of Allowed Claims. The Plan further provides for the termination of all Interests in the Debtor, wind-up of the Debtor's affairs. As set forth more fully in the Disclosure Statement served concurrently herewith, it is estimated the Plan will allow the Debtor to pay General Unsecured Creditors an estimated 15% to 30% of their Allowed Claims.

The Effective Date of this Plan will be the first Business Day which is at least fourteen (14) days following the date of the entry of the Confirmation Order, assuming there has been no appeal from, or order staying the effectiveness of, the Confirmation Order. Notwithstanding this, the

---

[2] Capitalized terms used herein are defined in Section XI below.

ARENT FOX LLP
ATTORNEYS AT LAW
LOS ANGELES

AFDOCS/23752166.3

1  Debtor may at its sole discretion waive the fourteen (14) day requirement and elect to go effective

2  at any time after confirmation of this Plan.

3       The Debtor believes this Plan represents the best possible return to holders of Claims.

4  **Accordingly, the Debtor strongly urges you to read the Disclosure Statement and vote to**

5  **accept this Plan.**

6  **II.**

7  **DATE OF HEARING ON PLAN CONFIRMATION**

8       Pursuant to Section 1128 of the Bankruptcy Code, a Confirmation Hearing will be held on

9  _____, 2021, at __:00 _.m. prevailing Pacific Time, in Courtroom 1568, 255 E. Temple St.,

10  Los Angeles, CA 90012.  The Court may adjourn the Confirmation Hearing from time to time

11  without further notice except for the announcement of the adjournment date made at the

12  Confirmation Hearing or at any subsequent adjourned Confirmation Hearing.

13       Any objection to confirmation of the Plan must be made in writing and specify in detail the

14  name and address of the objector, all grounds for the objection and the amount of the claim or

15  number of shares of stock held by the objector.  Any such objection must be filed with the Court

16  and served so that it is received by the Court, the Office of the United States Trustee, the Debtor's

17  counsel at the addresses listed in the upper left-hand corner of the first page of this Plan, and the

18  Debtor on or before _____, 2021.  Objections to confirmation of the Plan are governed by

19  Bankruptcy Rule 9014.  Failure by a creditor or interest holder to timely file an objection to the

20  Plan or timely cast a ballot shall constitute an agreement by silence to accept the terms contained

21  in this Plan.

22       Any interested party desiring further information about the Plan should contact counsel of

23  record for the Debtor, Christopher K.S. Wong of Arent Fox LLP, 555 West Fifth Street, 48th Floor,

24  Los Angeles, California 90013, telephone: (213) 629-7400, facsimile: (213) 629-7401; email:

25  christopher.wong@arentfox.com.

26

27

28

**III.**

**CLASSIFICATION AND TREATMENT OF CLAIMS UNDER THE PLAN**

**A.    Overview.**

As required by the Bankruptcy Code, this Plan classifies claims and interests in various classes according to their right to priority and other relative rights in a way that comports with Section 1112 of the Bankruptcy Code.  The Plan lists each class of Claims established under the Plan and states whether each class is impaired or unimpaired by this Plan.

| Class | Description of Class | Voting Status |
|-------|---------------------|---------------|
| Class 1 | Priority Non-Tax Claims | Unimpaired. Not entitled to vote. |
| Class 2(A) | Secured Claim of G 450 LLC | Impaired.  Entitled to vote. |
| Class 2(B) | Secured Claim of Pontis Capital, LLC | Impaired.  Entitled to vote. |
| Class 2(C) | Secured Claim of Five West Capital, LP | Impaired.  Entitled to vote. |
| Class 2(D) | Secured Claim of New Creation Engineering & Builders, Inc. (Notice Only – Paid in Full Prior to Confirmation) | Unimpaired. Not entitled to vote. |
| Class 2(E) | Secured Claim of Evergreen Capital Asset | Unimpaired.  Not entitled to vote. |
| Class 2(F) | Secured Claim of Philmont Management, Inc. | Unimpaired.  Not entitled to vote. |
| Class 2(G) | Secured Claim of Los Angeles County Treasurer and Tax Collector (Notice Only – Paid in Full Prior to Confirmation) | Unimpaired. Not entitled to vote. |
| Class 3 | General Unsecured Claims | Impaired.  Entitled to vote. |
| Class 4 | Interest Holders | Impaired and deemed to reject the Plan.  Not entitled to vote. |

**B.**      **Treatment of Unclassified Claims.**

Certain types of Claims are not placed into voting classes; instead they are unclassified.  As such, they are not considered impaired and do not vote on the Plan because they are automatically entitled to specific treatment as provided in the Bankruptcy Code.  Therefore, the Debtor has not placed these Claims in a class.

**1.**      **Administrative Expenses.**

Except to the extent that an Allowed Administrative Expense Claim (i) is not yet due, (ii) is paid before the Effective Date, or (iii) agrees to a different treatment in full satisfaction, settlement, and release of an in exchange for each Allowed Administrative Expense Claim (excluding any Professional Compensation and Reimbursement Claim), the holder thereof shall receive Cash from the Debtor or the Liquidating Trustee, as applicable, equal to the amount of such Administrative Expense Claim on or as soon as reasonable practicable after the later of (a) the Effective Date or (b) the date on which such Administrative Expense Claim becomes Allowed by Final Order. Allowed Administrative Expense Claims not yet due and owing as of the Effective Date shall be paid by the Liquidating Trustee in the ordinary course of business, unless otherwise agreed to in writing by the Liquidating Trustee and the holder.

Except as other provided herein, requests for payment of Administrative Claims must be filed and served on the Debtor and the Liquidating Trustee no later than the applicable Administrative Expense Claims Bar Date.  Holders of Administrative Expense Claims (other than Professional Compensation and Reimbursement Claims) that are required to, but do not, file and serve a request for payment of such Administrative Expense Claims by such date shall be forever barred, estopped and enjoined from asserting such Administrative Expense Claims against the Debtor, the Liquidating Trust or the Liquidating Trustee, or their property, and such Administrative Expense Claims shall be deemed satisfied as of the Effective Date. Objections to requests for payment of Administrative Expense Claims shall be filed no later than five (5) Business Days before the hearing on such Claims.  Notwithstanding the foregoing, no request for payment of an Administrative Expense Claim need be filed with respect to (i) any Administrative Expense Claim

1    previously Allowed by a Final Order, including any Administrative Expense Claim expressly

2    Allowed under the Plan.

3         The following chart lists all of the Estate's § 507(a)(2) administrative claims and their

4    treatment under the Plan.

| Name | Amount Currently Owed | Amount Previously Paid | Treatment |
|------|----------------------|------------------------|-----------|
| Arent Fox LLP, General Bankruptcy and Restructuring Counsel for Debtor and Debtor-in-Possession | $411,594.98 (est.) | $385,870.95[3] | Paid in full on the Effective Date, unless claimant agrees to a different treatment. Final claim amount pending order approving final fee application. |
| Law Offices of Daniel M. Shapiro, Special Litigation Counsel for the Debtor and Debtor-in-Possession | $9,500 (est.) | $29,941.18[4] | Paid in full on the Effective Date, unless claimant agrees to a different treatment. Final claim amount pending order approving final fee application. |
| Lewis Brisbois Bisgaard & Smith LLP, Counsel for the Official Committee of Unsecured Creditors | $51,644.75 (est.) | $146,077.53[5] | Paid in full on the Effective Date, unless claimant agrees to a different treatment. Final claim amount pending order approving final fee application. |

[3] Since the Petition Date, Arent Fox LLP has drawn down and applied its remaining pre-petition retainer in the approximate amount of $385,870.95 pursuant to the order approving, among other applications, the firm's first interim fee application [Dkt. No. 239] (the "First Interim Fee Order").

[4] Since the Petition Date, the Law Offices of Daniel M. Shapiro has drawn down and applied its remaining pre-petition retainer in the approximate amount of $29,941.18 pursuant to the First Interim Fee Order.

[5] Since the Petition Date, Lewis Brisbois Bisgaard & Smith LLP has drawn down and applied its remaining pre-petition retainer in the approximate amount of $146,077.53 pursuant to the First Interim Fee Order.

| Wilshire Partners of CA, LLC[6] | $60,000.00 (est.) | $540,945.00[7] | Paid in full on the Effective Date, unless claimant agrees to a different treatment. Final claim amount pending order approving final fee application. |
|---|---|---|---|
| CBRE, Inc. / Jake Sharp Group | $646,875.00 | $1,509,375[8] | Paid in full upon resolution of the Commission Motion.[9] |
| Clerk's Office Fees | Unknown, but estimated to be less than $1,000 | $0.00 | Paid in full on the Effective Date. |
| Office of the U.S. Trustee Fees | Unknown, but estimated to be less than $110,000.00 | $264,625.00 | Paid in full on the Effective Date. |
| **TOTAL** | $1,290,614.73 (est.) | | |

**2.    Professional Compensation and Reimbursement Claims.**

All Entities seeking an award by the Bankruptcy Court of compensation for services rendered or reimbursement of expenses incurred through and including the Effective Date under Sections 327, 328, 329, 330, 331, 503, or 1103 of the Bankruptcy Code (i) shall file their respective

---

[6] Wilshire Partners of CA, LLC is not an estate professional employed under Section 327 or 328 of the Bankruptcy Code, but is listed here in the interest of full disclosure.

[7] Per the First Interim Fee Order,  Further, per the *Order Approving Deferred Compensation Earned by Wilshire Partners of CA, LLC* [Dkt. No. 264], Wilshire Partners of CA, LLC received $180,025.00 from the sale proceeds representing deferred compensation earned by Wilshire Partners from January 10, 2020 through and including November 30, 2020.

[8] In accordance with the *Order Approving Application for Authority to Employ CBRE, Inc. as Real Estate Broker,* and the Sale Order, CBRE, Inc. was paid $1,078,125.00 as broker for the Debtor, and Jake Sharp Group was paid $431,250.00 as the outside broker.

[9] As described in the *Motion for Order to Allocate Commission Proceeds* [Dkt. No. 280] (the "Commission Motion"), it is the Debtor's understanding that a dispute remains regarding whether CBRE or Jake Sharp Group is entitled to the remaining portion of the commission, in the amount of $646,875.00.  The Debtor takes no position with respect to this dispute, and the Plan contemplates that the disputed amount will be transferred to the Liquidating Trust pending instructions from the Court by way of a final order.

final applications for allowance of compensation for services rendered and reimbursement of expenses incurred by the date that is sixty (60) days after the Effective Date, and (ii) shall be paid in full in such amounts as are Allowed by the Bankruptcy Court (A) on the date on which the order relating to any such Professional Compensation and Reimbursement Claim is entered or (B) upon such other terms as may be mutually agreed upon between the holder of such an Professional Compensation and Reimbursement Claim and the Liquidating Trustee.  Holders of Professional Compensation and Reimbursement Claims that do not file and serve such application by the required deadline shall be forever barred from asserting such Professional Compensation and Reimbursement Claims against the Debtor, its properties, or the Liquidating Trust, and such Claims shall be deemed waived as of the Effective Date.  Objections to Professional Compensation and Reimbursement Claims shall be filed no later than seven (7) Business Days before the hearing on such Claims.  The Liquidating Trust is authorized to pay compensation for professional services rendered and reimbursement of expenses incurred after the Effective Date in the ordinary course and without the need for Bankruptcy Court approval, including the reasonable fees and expenses of professionals employed subsequent to the Effective Date by the Liquidating Trustee.

**3.**    **Priority Tax Claims.**

Except to the extent that a holder of an Allowed Priority Tax Claim has not been paid by the Debtor before the Effective Date, each holder of an Allowed Priority Tax Claim shall receive, on account of and in full and complete settlement, release, and satisfaction of, and in exchange for, such Allowed Priority Tax Claim Cash, an amount equal to such Allowed Priority Tax Claim on the later of (i) the date that is fourteen (14) days after the Effective Date or (ii) fourteen (14) days after such Priority Tax Claim becomes an Allowed Priority Tax Claim.

The following chart lists all of the Estate's Section 507(a)(8) priority tax claims and their treatment under the Plan:

| Description | Amount Owed | Treatment |
|---|---|---|
| Internal Revenue Services | $8,232.09 (est.) | Paid in full on the later of (i) the date that is fourteen (14) days after the Effective Date or (ii) fourteen (14) days after such Priority Tax Claim becomes an Allowed Priority Tax Claim. |

| Description | Amount Owed | Treatment |
|---|---|---|
| Franchise Tax Board | $21,033.23 (est.) | Paid in full on the later of (i) the date that is fourteen (14) days after the Effective Date or (ii) fourteen (14) days after such Priority Tax Claim becomes an Allowed Priority Tax Claim. |
| City of Los Angeles, Offices of Finance | $0.00 (est.) | Paid in full on the later of (i) the date that is fourteen (14) days after the Effective Date or (ii) fourteen (14) days after such Priority Tax Claim becomes an Allowed Priority Tax Claim. |
| Employment Development Department | $0.00 (est.) | Paid in full on the later of (i) the date that is fourteen (14) days after the Effective Date or (ii) fourteen (14) days after such Priority Tax Claim becomes an Allowed Priority Tax Claim. |
| **TOTAL** | **$29,265.32 (est.)** | |

**4.      Office of the United States Trustee Fees.**

All fees payable pursuant to Section 1930 of Title 28 of the United States Code and any applicable interest thereon pursuant to Section 3717 of Title 31 of the United States Code that are due and payable as of the Effective Date shall be paid on the Effective Date. All such fees and any applicable interest thereon that become due and payable after the Effective Date shall be paid by the Liquidating Trustee with funds from the Liquidating Trust Assets when such fees become due and payable, and shall continue to be paid until the entry of a final decree closing the Chapter 11 Case or conversion or dismissal of the Chapter 11 Case, whichever is earlier.

**C.      Treatment of Classified Claims and Interests.**

**1.      Class 1 – Priority Non-Tax Claims, If Any.**[10]

*Description.*    Certain priority claims that are referred to in Bankruptcy Code Sections 507(a)(3), (4), (5), (6), and (7) are required to be placed in a class or classes.

*Treatment.*    Each holder of a Priority Non-Tax Claim shall receive Cash equal to the Allowed amount of such Claim on the Effective Date, or as soon as practicable thereafter, unless the holder agrees to other treatment.

Class 1 is unimpaired and not entitled to vote on the Plan.

---

[10] The Debtor believes there are no priority, non-tax claims; however, if any are Allowed, they will be treated as provided herein.

2.    **Class 2(A) – Secured Claim of G 450 LLC.**

*Description*.  According to Proof of Claim No. 9-1, G 450 LLC ("G 450") asserts a claim secured in first position against the Property in the amount of $30,063,331.49 as of the Petition Date.  The purported basis for the claim is a loan entered into by the Debtor under that certain *Secured Promissory Note*, dated June 28, 2013.  As of the Sale Closing Date, G 450 asserts the claim had accrued to $30,785,842.00.

As set forth in the Sale Motion, a bona fide dispute arose regarding G 450's calculation of interest and fees, as well as G 450's application of payments it received from the Debtor under the operative loan documents.  Notwithstanding this dispute, the parties agreed G 450 possessed a valid, first priority secured claim in the amount of at least $28,785,842.00 as of the Sale Closing Date and, upon closing of the Sale, G 450 was paid $28,785,842.00 from escrow in partial satisfaction of its secured claim.  G 450 continues to assert a secured claim in the amount of at least $2,000,000 with interest and attorneys' fees continuing to accrue.

*Treatment.*  After the Effective Date, all rights of the Debtor and the Estate to dispute, object to, and litigate the unpaid portion of G 450's Secured Claim shall be transferred to the Liquidating Trust to be pursued by the Liquidating Trustee under the terms of this Plan and the Liquidating Trust Agreement.  Interest shall accrue on the remaining balance of the Allowed Secured Claim at the interest rate applicable pursuant to the G 450 Proof of Claim as determined as a result of settlement or entry of a non-appealable order, plus as of the Effective Date of Plan, one-percent (1%) per annum until paid.  At such time as a final non-appealable order is entered or a settlement reached with respect to the amount of G 450's unsatisfied Allowed Secured Claim, if any, the Liquidating Trustee will pay such remaining Allowed Secured Claim of G 450 in full in two (2) equal quarterly installments, with the first payment commencing on the first day of the first calendar quarter after a final non-appealable order is entered or a settlement reached with respect to the amount of G 450's Allowed Secured Claim and the second payment due on the first day of the second calendar quarter after a final non-appealable order is entered or a settlement reached with respect to the amount of G 450's Allowed Secured Claim.  The treatment provided herein shall be in full satisfaction of the creditor's Allowed Claim in Class 2(A).

1   Class 2(A) is impaired and entitled to vote on the Plan.

2   **3.    Class 2(B) – Secured Claim of Pontis Capital, LLC.**

3   *Description.*  Class 2(B) consists of the secured Claim of Pontis Capital, LLC ("Pontis").

4   According to Proof of Claim No. 7-2, Pontis is the holder of a Claim secured in second position

5   against the Property in the amount of $4,846,959.75 as of the Petition Date.  The purported basis

6   of the claim is a loan entered into by the Debtor under that certain *Promissory Note Secured by*

7   *Deed of Trust*, dated August 21, 2014 (the "Pontis Note").

8   Upon closing of the Sale, Pontis was paid $5,102,515.00 through escrow, which amount

9   represented payment of all principal and interest due and owing under the Pontis Note as of the

10  Sale Closing Date.  However, Pontis continues to reserve the right to seek attorneys' fees in

11  connection with the Pontis Note and the Debtor reserves the right to dispute some or all of such

12  attorneys' fees.

13  *Treatment.*  After the Effective Date, all rights of the Debtor and the Estate to dispute, object

14  to, and litigate the attorneys' fees claimed by Pontis shall be transferred to the Liquidating Trust to

15  be pursued by the Liquidating Trustee under the terms of this Plan and the Liquidating Trust

16  Agreement.  Interest shall accrue on the remaining balance of the Allowed Secured Claim at the

17  rate of ten-percent (10%) per annum pursuant to the "Order Approving Stipulation with Second and

18  Third Lienholders for Allowance of Claims and Modification of Financing Terms" (the "2nd and 3rd

19  Lienholder Order") [Dkt. No. 125], plus as of the Effective Date of Plan, one-percent (1%) per

20  annum until paid.  At such time as a final non-appealable order is entered or a settlement reached

21  with respect to the amount of Pontis' Allowed attorneys' fees if any, if any, the Liquidating Trustee

22  will pay such Allowed attorneys' fees in full in two (2) equal quarterly installments, with the first

23  payment commencing on the first day of the first calendar quarter after a final non-appealable order

24  is entered or a settlement reached with respect to the amount of Pontis' Allowed attorneys' fees and

25  the second payment due on the first day of the second calendar quarter after a final non-appealable

26  order is entered or a settlement reached with respect to the amount of Pontis' Allowed attorneys'

27  fees.  The treatment provided herein shall be in full satisfaction of the creditor's Allowed Claim in

28  Class 2(B).

1    Class 2(B) is impaired and is entitled to vote on the Plan.

2    **4.    <u>Class 2(C) – Secured Claim of Five West Capital, LP.</u>**

3    *Description.*  Class 2(C) consists of the secured Claim of Five West Capital, LP ("Five

4    West").  According to Proof of Claim No. 8-2, Five West is the holder of a Claim secured in third

5    position against the Property in the amount of $5,855,998.95 as of the Petition Date.  The purported

6    basis of the Claim is a loan entered into by the Debtor under that certain *Promissory Note Secured*

7    *by Deed of Trust, dated May 14, 2015* (the "Five West Note").

8    Upon closing of the Sale, Five West was paid $6,382,944.00 through escrow, which amount

9    represented payment of all principal and interest due and owing under the Five West Note as of the

10    Sale Closing Date.  However, Five West continues to reserve the right to seek attorneys' fees in

11    connection with the Five West Note and the Debtor reserves the right to dispute some or all of such

12    attorneys' fees.

13    *Treatment.*  After the Effective Date, all rights of the Debtor and the Estate to dispute, object

14    to, and litigate the attorneys' fees claimed by Five West shall be transferred to the Liquidating Trust

15    to be pursued by the Liquidating Trustee under the terms of this Plan and the Liquidating Trust

16    Agreement.  Interest shall accrue on the remaining balance of the Allowed Secured Claim at the

17    rate of ten-percent (10%) per annum pursuant to the 2nd and 3rd Lienholder Order, plus as of the

18    Effective Date of Plan, one-percent (1%) per annum until paid.  At such time as a final non-

19    appealable order is entered or a settlement reached with respect to the amount of Five West's

20    Allowed attorneys' fees, if any, the Liquidating Trustee will pay such Allowed attorneys' fees in

21    full in two (2) equal quarterly installments, with the first payment commencing on the first day of

22    the first calendar quarter after a final non-appealable order is entered or a settlement reached with

23    respect to the amount of Five West's Allowed attorneys' fees and the second payment due on the

24    first day of the second calendar quarter after a final non-appealable order is entered or a settlement

25    reached with respect to the amount of Five West's Allowed attorneys' fees.  The treatment provided

26    herein shall be in full satisfaction of the creditor's Allowed Claim in Class 2(C).

27    Class 2(C) is impaired and is entitled to vote on the Plan.

28

1   **5.     Class 2(D) – Secured Claim of New Creation Engineering & Builders, Inc.**

2   **(Notice Only).**

3     **Description.**   Class 2(D) consists of the secured Claim of New Creation Engineering &

4   Builders, Inc. ("New Creation").  According to Proof of Claim No. 10-1, New Creation is a holder

5   of a Claim secured by the Property in the amount of $665,452.69.  The purported basis of the Claim

6   is a loan entered into by the Debtor under that certain *Promissory Note*, dated April 10, 2012 (the

7   "New Creation Note").

8       As set forth in the Sale Motion, a bona fide dispute arose between the Debtor and New

9   Creation regarding New Creation's application of compound interest under the New Creation Note.

10  On January 8, 2021, the Debtor and New Creation entered into that certain *Stipulation Resolving*

11  *Secured Claim of New Creation Engineering & Builders, Inc.* [Dkt. No. 274], wherein New

12  Creation agreed to amend its Proof of Claim to reflect a secured claim in the amount of $551,311.

13  Subsequently, the Debtor, the Committee, G 450, Evergreen Capital Assets, LP, and Philmont

14  Management, Inc. entered into a stipulation to pay the stipulated amount from the Sale Proceeds

15  [Dkt. No. 275].  On January 22, 2021 the Court entered an order approving both Stipulations [Dkt.

16  No. 282] (the "New Creation Order").

17      As authorized by the New Creation Order, New Creation was paid $551,311.00 from the

18  Debtor's segregated account holding the Sale Proceeds, which represents payment of all amounts

19  due and owing under the New Creation Note, whether arising pre-petition or post-petition, and

20  inclusive of all interest, fees and costs.

21    **Treatment.**   The Claim by New Creation has been satisfied in full and New Creation is

22  listed in Class 2(D) for noticing purposes only.

23      Class 2(D) is unimpaired and is not entitled to vote on the Plan.

24  **6.     Class 2(E) – Secured Claim of Evergreen Capital Assets, LP.**

25    **Description.**   Class 2(E) consist of the secured claim of Evergreen Capital Assets, LP

26  ("Evergreen").  According to Proof of Claim No. 17-1, Evergreen is the holder of a Claim secured

27  by the Property in the amount of $1,263,452.05 as of the Petition Date.  The purported basis of the

28  Claim is a loan entered into by the Debtor under that certain *Promissory Note*, dated July 1, 2019

ARENT FOX LLP
ATTORNEYS AT LAW
LOS ANGELES

AFDOCS/23752166.3

(the "Evergreen Note").  Subsequently, Evergreen filed an amended Proof of Claim No. 17-2 to assert pre- and post-petition attorney's fees in the amount of $183,014.67.

Upon closing of the Sale, Evergreen was paid $1,384,967.00 through escrow, which amount represented payment of all principal and interest due and owing under the Evergreen Note as of the Sale Closing Date.  However, Evergreen continues to reserve the right to seek its attorneys' fees in connection with the Evergreen Note and the Debtor reserves the right to dispute some or all of such attorneys' fees.

*Treatment.*  After the Effective Date, all rights of the Debtor and the Estate to dispute, object to, and litigate the attorneys' fees claimed by Evergreen shall be transferred to the Liquidating Trust to be pursued by the Liquidating Trustee under the terms of this Plan and the Liquidating Trust Agreement.  At such time as a final non-appealable order is entered or a settlement reached with respect to the amount of Evergreen's Allowed attorneys' fees, if any, the Liquidating Trustee will immediately pay Evergreen the full amount of such Allowed attorneys' fees in full and final satisfaction thereof.  Until such time a Final Order is entered or a settlement is reached with respect to the amount of Evergreen's Allowed Secured Claim, if any, the Liquidating Trustee shall, after the Effective Date, reserve 125% of the $183,014.67 claimed by Evergreen in a segregated account. If the amount required to be paid to Evergreen under such Final Order or settlement is less than the reserved amount plus any earnings accrued thereon, the surplus shall be available to satisfy other Claims or for use as permitted under this Plan.

Class 2(E) is unimpaired and is not entitled to vote on the Plan.

## 7. **Class 2(F) – Secured Claim of Philmont Management, Inc.**

*Description.*  Class 2(F) consists of the secured Claim of Philmont Management, Inc. ("Philmont").  According to Proof of Claim No. 18-1, Philmont asserts a claim allegedly secured by the Property in the amount of $2,361,878.40 as of the Petition Date.  The purported basis of the Claim is "[m]aterial, labor, and equipment provided by general contractor" and purportedly secured by a mechanic's lien recorded on December 19, 2019 (the "Philmont Mechanic's Lien") and purportedly perfected by a Notice of Perfection of Mechanic's Lien filed on April 29, 2020.

On February 11, 2021, Philmont Management, Inc. filed a complaint to determine the validity, priority and extent of the Philmont Mechanic's Lien, styled as *Philmont Management, Inc. v. 450 S. Western, LLC*, Adv. Case No. 2:21-ap-01030-ER.

**Treatment.**  After the Effective Date, all rights of the Debtor and the Estate to dispute, object to, and litigate Philmont's Claim shall be transferred to the Liquidating Trust to be pursued by the Liquidating Trustee under the terms of this Plan and the Liquidating Trust Agreement.  At such time as a final non-appealable order is entered or a settlement reached with respect to the amount of Philmont's Allowed Secured Claim, if any, the Liquidating Trustee will immediately pay Philmont the full amount of such Allowed Secured Claim in full and final satisfaction thereof.  Until such time a Final Order is entered or a settlement is reached with respect to the amount of Philmont's Allowed Secured Claim, if any, the Liquidating Trustee shall, after the Effective Date, reserve 125% of the $2,361,878.40 claimed by Philmont in a segregated account.  If the amount required to be paid to Philmont under such Final Order or settlement is less than the reserved amount plus any earnings accrued thereon, the surplus shall be available to satisfy other Claims or for use as permitted under this Plan.

Class 2(F) is unimpaired and is not entitled to vote on the Plan.

**8.** **Class 2(G) – Secured Claim of Los Angeles County Treasurer and Tax Collector (Notice Only).**

**Description.**  The Los Angeles County Treasurer and Tax Collector ("LACTTC") filed a secured claim in the amount of $2,711,797.05 on the basis of property taxes.  These taxes are for all prior year taxes and penalties owed, and include: (1) $1,653,722.97 in taxes defaulted on in 2018 owing for 2017; (2) $516,733.85 in taxes for the period of July 1, 2019 to June 30, 2020; and (3) $541,340.23 in estimated taxes for 2020-2021.

Upon closing of the Sale, LACTTC was paid $2,437,177.20 through escrow, which represents payment of all property taxes due and owing, whether arising pre- or post-petition, and inclusive of all interest, fees and costs, as of the Sale Closing Date.

*Treatment.*  The claim by LACTTC has been satisfied in full, and LACTTC is listed in Class 2(G) for noticing purposes only.[11]

Class 2(G) is unimpaired and is not entitled to vote on the Plan.

**9.    Class 3 – General Unsecured Claims.**

*Description.*  Class 3 consists of all Allowed General Unsecured Claims (*i.e.* an Unsecured Claim that is not an Administrative Expense Claim, Professional Compensation and Reimbursement Claim, Priority Tax Claim, Priority Non-Tax Claim, or an Interest).

*Treatment.*  After the Effective Date, all rights of the Debtor and the Estate to dispute, object to, and/or litigate any Class 3 Claim (including all rights of the Debtor and the Estate to seek to determine and/or recharacterize some or all of a Class 3 Claim as equity and/or to subordinate some or all of a Class 3 Claim to other Class 3 Claims  pursuant to, *inter alia*, Section 510) shall be transferred to the Liquidating Trust to be pursued by the Liquidating Trustee under the terms of this Plan and the Liquidating Trust Agreement.

Except to the extent that a holder of a Class 3 Claim has agreed to a less favorable treatment of such Claim, and only to the extent that any such Claim has not been paid in full before the Effective Date, each holder of an Allowed Class 3 Claim shall receive, on a Distribution Date, its Pro Rata Share of the Net Available Cash from the Liquidating Trust, after full and final satisfaction of, or release of, all (i) Secured Claims; (ii) Administrative Expense Claims, (iii) Professional Compensation and Reimbursement Claims, (iv) Priority Tax Claims, and (v) Priority Non-Tax Claims, in accordance with the terms of the Plan and the Liquidating Trust Agreement, as full and complete satisfaction of such holder's Claims.  In the event any *pro rata* distributions are made to holders of Allowed Class 3 claims, the Liquidating Trustee shall maintain a reserve sufficient to pay the same *pro rata* distribution to holders of disputed Class 3 Claims (based on the claim amounts set forth in such creditors' filed proofs of claim or, if applicable, the claim amounts allowed pursuant to subsequent Court order or settlement by the parties).

---

[11] The 2020-2021 taxes (estimated to be $541,340.23) are not yet due and owing and were only estimates per the proof of claim.

ARENT FOX LLP
ATTORNEYS AT LAW
LOS ANGELES

AFDOCS/23752166.3

1    In the event all or any portion of a Class 3 Claim is finally determined to be subordinated

2    to other Class 3 General Unsecured Claims, such Claim or portion of such Claim shall be paid from

3    the Net Available Cash but only after other allowed Class 3 Claims that have not been subordinated

4    have been paid in full.

5    In the event all or any portion of a Class 3 Claim is finally determined to be an equity

6    interest or is otherwise recharacterized as an equity interest, such Claim or portion of such Claim

7    shall be given the same treatment as Class 4 Equity Interest Holders and such equity interest shall

8    be cancelled.

9    The treatment provided herein shall be in full satisfaction of the holders of Allowed Claims

10    in Class 3.

11    Class 3 is impaired and entitled to vote on the Plan.

12    **10.    Class 4 – Equity Interest Holders.**

13    *Description.*  Class 4 consists of parties who hold ownership interest (*i.e.*, equity) in the

14    Debtor.

15    *Treatment.*  On the Effective Date, all Existing Equity Interests shall be cancelled.  As such,

16    Class 4 Holders of Allowed Existing Equity Interests shall receive nothing under the Plan.

17    Class 4 is impaired.  However, because Class 4 will receive nothing under the Plan, Class 4

18    is not entitled to vote and is deemed to reject the Plan.

19    **IV.**

20    **MEANS OF EFFECTUATING THE PLAN AND OTHER PROVISIONS**

21    A.    **The Liquidating Trust and the Liquidating Trustee.**

22    **1.    Creation of the Liquidating Trust.**

23    On the Effective Date, the Liquidating Trust shall be created pursuant to the Liquidating

24    Trust Agreement, which shall be executed on behalf of the Debtor by the CRO and by the

25    Liquidating Trustee, who shall accept the appointment.  The Liquidating Trust Agreement shall be

26    in substantially the same form as **Exhibit 1** attached hereto.  The Liquidating Trust shall not

27    terminate upon the death or incapacity of the Liquidating Trustee and shall continue until its

28    termination in accordance with the terms of this Plan and the Liquidating Trust Agreement.  The

Liquidating Trust Agreement constitutes an integral part of the Plan and is hereby incorporated by reference for all purposes.

### 2. **Effective Date.**

On the Effective Date, (i) the authority, power, and incumbency of the persons who are or were acting as directors and officers of the Debtor shall be terminated and such directors and officers shall be deemed to have resigned; (ii) the Liquidating Trustee shall have the powers of an officer of the Debtor; and (iii) the Liquidating Trustee is authorized to wind up the affairs of and dissolve the Debtor.

### 3. **Employment of Liquidating Trustee.**

The salient terms of the Liquidating Trustee's employment, including the Liquidating Trustee's duties and compensation, is set forth in the Liquidating Trust Agreement and shall be consistent with that of functionaries in similar types of bankruptcy proceedings.

### 4. **Successor of the Liquidating Trustee.**

In the event the Liquidating Trustee resigns or is terminated, a successor shall be designated as set forth in the Liquidating Trust Agreement.

### 5. **Duties of the Liquidating Trustee.**

The Liquidating Trustee shall carry out the duties set forth in Section IV.B of the Plan and in the Liquidating Trust Agreement.  The fees and expenses of the Liquidating Trustee will be paid in accordance with the Liquidating Trust Agreement and the Liquidating Trustee shall be authorized to retain professionals necessary to carry out his or her duties and to compensate such professionals in accordance with the Liquidating Trust Agreement.

### 6. **Actions by the Liquidating Trustee to Implement the Plan.**

The entry of the Confirmation Order shall constitute all necessary authorization for the Liquidating Trustee to take, or cause to be taken, all actions necessary or appropriate to consummate, implement, or perform all provisions of the Plan on and after the Effective Date, and all such actions taken or caused to be taken shall be deemed to have been authorized and approved by the Bankruptcy Court without further approval, act, or action under any applicable law, order, rule, or regulation, including, without limitation, (i) all transfers of assets that are to occur pursuant

to the Plan; (ii) the cancellation of Interests and the winding up and dissolution of the Debtor; (iii) the performance of the terms of the Plan and the making of all Distributions required under the Plan; and (iv) subject to the terms of the Plan, entering into any and all transactions, contracts, or arrangements permitted by applicable law, order, rule, or regulation.

**7.    Trust Assets.**

The Debtor and the Estate shall constitute the settlor of the Liquidating Trust.  As of the Effective Date, all assets shall be transferred to the Liquidating Trust, where they will constitute the Trust Assets.  The Trust Assets shall encompass all valuable Assets held by the Estate as of the Effective Date and shall specifically include without limitation: (i) all Estate Cash, including but not limited to the remaining Proceeds; (ii) all Estate Accounts Receivable; (iii) all Estate Claims; (iv) all Estate Defenses; and (v) any Executory Contracts assumed by the Estate.

**8.    Transfer of Assets.**

On the Effective Date, the Debtor shall assign and transfer to the Liquidating Trust all assets of the Debtor and the Estate, including, without limitation, Cash, Causes of Action, and Avoidance Actions.

**9.    Tax Classification of the Liquidating Trust.**

For federal income tax purposes, it is intended that the Liquidating Trust be classified as a liquidating trust under Treasury Regulation Section 301.7701-4 and that such trust be owned by its beneficiaries.  Accordingly, for federal income tax purposes, it is intended that the beneficiaries be treated as if they had received a distribution of an undivided interest in the Liquidating Trust Assets and then contributed such interests to the Liquidating Trust.  The Liquidating Trust Agreement shall (i) state that the primary purpose of the Liquidating Trust is to liquidate the Liquidating Trust Assets with no objective to continue or engage in the conduct of a trade or business, except to the extent reasonably necessary to, and consistent with, its liquidating purpose and (ii) contain a fixed or determinable termination date that is not more than five (5) years from the date of creation of the Liquidating Trust, which termination date may be extended for one or more finite terms subject to the approval of the Bankruptcy Court upon a finding that the extension is necessary to its liquidating

purpose.  Each such extension must be approved by the Bankruptcy Court within six (6) months of the beginning of the extended term.

### 10.    Filing Tax Returns.

The Liquidating Trustee shall be responsible for filing all federal, state and local tax returns for the Liquidating Trust.  The Liquidating Trustee shall file all federal tax returns for the Liquidating Trust as a grantor trust under Treasury Regulation Section 1.671-4 unless otherwise required by applicable law.  The Liquidating Trustee also will annually send to each Liquidating Trust beneficiary a separate statement regarding the receipts and expenditures of the Liquidating Trust as relevant for U.S. federal income tax purposes and will instruct all such holders to use such information in preparing their U.S. federal income tax returns or to forward the appropriate information to such holder's underlying beneficial holders with instructions to utilize such information in preparing their U.S. federal income tax returns.  The Liquidating Trustee shall also file (or cause to be filed) any other statement, return or disclosure relating to the Liquidating Trust that is required by any Governmental Unit.

### 11.    Estimating Fair Market Value of Assets.

As soon as practical after the Effective Date and to the extent reasonably possible, the Liquidating Trustee shall estimate the fair market value, as of the Effective Date, of all other Liquidating Trust Assets, and shall make all such values available from time to time, to the extent relevant, and such values shall be used consistently by all parties to the Liquidating Trust (including, without limitation, the Debtor, the Liquidating Trustee, and Liquidating Trust beneficiaries) for all United States federal income tax purposes.

### 12.    Allocations of Taxable Income.

Allocations of Liquidating Trust taxable income among the Liquidating Trust beneficiaries shall be determined by reference to the manner in which an amount of cash representing such taxable income would be distributed (were such cash permitted to be distributed at such time) if, immediately before such deemed distribution, the Liquidating Trust had distributed all its assets (valued at their tax book value) to the holders of the Liquidating Trust beneficiaries, adjusted for prior taxable income and loss and taking into account all prior and concurrent distributions from

the Liquidating Trust.  Similarly, taxable loss of the Liquidating Trust shall be allocated by reference to the manner in which an economic loss would be borne immediately after a hypothetical liquidating distribution of the remaining Liquidating Trust Assets.  The tax book value of the Liquidating Trust Assets for purpose of this paragraph shall equal their fair market value on the Effective Date, adjusted in accordance with tax accounting principles prescribed by the Tax Code, the applicable Treasury Regulations, and other applicable administrative and judicial authorities and pronouncements.

### 13.    Non-Transferability of Interests.

Interests in the Liquidating Trust shall be non-transferrable and any such transfer shall be disregarded by the Liquidating Trustee, except with respect to a transfer by will or under laws of descent and distribution; provided, _however_, such transfer will not be effective until and unless the Liquidating Trustee receives written notice of such transfer under the law of descent and distribution.

### B.    Duties and Powers of the Liquidating Trustee.

### 1.    General Authority.

The Liquidating Trustee, together with his or her representatives and professionals, shall administer the Plan.  The Liquidating Trustee shall constitute a representative of the Estate pursuant to Section 1123(b)(3)(B) of the Bankruptcy Code and shall be accorded all powers, rights, duties, and responsibilities pursuant to this Plan, the Confirmation Order, and the Liquidating Trust Agreement.  In such capacity, the powers, rights, duties, responsibilities, and compensation of the Liquidating Trustee, set forth more fully in the Liquidating Trust Agreement, shall include any and all powers necessary to implement the Plan and to administer and distribute the assets and wind up the business and affairs of the Debtor, including, without limitation: (i) overseeing the Claims resolution and distribution process (including, without limitation, the ability to object to, seek to subordinate, compromise, or settle any or all Claims against the Debtor or the Estate, other than Claims that are Allowed under the Plan); (ii) evaluating and, if appropriate, commencing, prosecuting, and continuing to pursue on behalf of the Debtor's Estate the Avoidance Actions and other Causes of Action; (iii) winding down the affairs of the Debtor, including through the sale or

abandonment of the Estate's remaining assets which shall be transferred to the Liquidating Trust; (iv) dissolving the Debtor at the appropriate time post-confirmation; (v) maintaining books and records; (vi) investing and managing Cash of the Liquidating Trust; (vii) filing post confirmation operating reports; (viii) filing any closing report, as may be required by Local Bankruptcy Rule 3020-1; and (ix) paying United States Trustee Fees.

**C.    Distributions by Liquidating Trustee as Disbursing Agent.**

All distributions under the Plan shall be made by the Liquidating Trustee as Disbursing Agent from the Net Available Cash in the Liquidating Trust as provided for herein and in the Liquidating Trust Agreement.  The Liquidating Trustee shall be deemed to hold all property to be distributed hereunder in trust for the beneficiaries of the Liquidating Trust entitled to receive same. The Liquidating Trustee shall not hold an economic or beneficial interest in such property.

**D.    Distributions on Allowed General Unsecured Claims.**

All Allowed General Unsecured Claims in a single Class held by a single creditor shall be aggregated and treated as a single Claim.  At the written request of the Disbursing Agent, any creditor holding multiple Claims shall provide to the Liquidating Trustee, as the case may be, a single address to which any distributions shall be sent.

**E.    Method of Distributions Under the Plan.**

All distributions to holders of Allowed Claims shall be made by the Liquidating Trustee in accordance with the terms of the Plan and the Liquidating Trust Agreement.

As Claims become Allowed and to the extent of Available Cash, the Liquidating Trustee shall pay the holders of such Allowed Claims in Cash as provided hereunder.

At reasonable periodic intervals determined by the Liquidating Trustee, in his sole discretion, the Liquidating Trustee shall make payments to holders of Allowed Claims in accordance with the Plan.  The Liquidating Trustee shall maintain Net Available Cash sufficient to pay holders of Class 3 Claims in the amount such holders would be entitled to receive under the Plan if such Claims were to become Allowed General Unsecured Claims.  Upon completion of all duties of the Liquidating Trustee, and after the satisfaction of all outstanding obligations of the

Liquidating Trust, all Net Available Cash at such time, if any, shall be distributed in accordance with the Plan.

Notwithstanding anything in this Plan or the Disclosure Statement to the contrary, the Liquidating Trustee shall have the authority to object to the allowance or payment of any Disputed Claims on any grounds in accordance with the procedures set forth herein; provided, however, that the Liquidating Trustee shall make distributions in accordance with the Plan with respect to the undisputed portion of any Allowed Claim.

**F.     Date of Plan Distributions.**

Except as otherwise provided herein, any distributions and deliveries to be made under the Plan shall be made on the Effective Date or as soon thereafter as is reasonably practicable. Whenever any distribution to be made under this Plan shall be due on a day other than a Business Day, such distribution shall instead be made, without interest, on the immediately succeeding Business Day and shall be deemed to have been made on the date due.

**G.     Delivery of Distributions**

 **1.     Last Known Address.**

Subject to the provisions of Bankruptcy Rule 9010, distributions and deliveries to holders of Allowed Claims or Existing Equity Interests shall be made at the address of such holders as set forth on the Schedules filed with the Bankruptcy Court unless superseded by the address set forth on proofs of claim filed by such holders, or at the last known address of such holders if no proof of claim is filed or if the Debtor or the Liquidating Trustee have been notified in writing of a change of address.

 **2.     Undeliverable Distributions.**

In the event that any distribution to any holder of a Claim or Existing Equity Interest is returned to the Liquidating Trustee as undeliverable, no further distributions shall be made to such holder unless and until the Liquidating Trustee is notified, in writing, of such holder's then-current address. Undeliverable distributions shall remain in the possession of the Liquidating Trustee until such time as a distribution becomes deliverable; provided, however, that such distributions shall be deemed unclaimed property under Section 347(b) of the Bankruptcy Code at the expiration of

1 ninety (90) days after Distribution. After such date, all unclaimed property or interest in property

2 shall become Net Available Cash for distribution under the terms of the Plan, and the Claim of any

3 other holder to such property or interest in property shall be discharged and forever barred,

4 notwithstanding any applicable federal or state escheat, abandoned, or unclaimed property laws to

5 the contrary. All Entities ultimately receiving undeliverable Cash shall not be entitled to any

6 interest or other accruals of any kind. Nothing contained in the Plan shall require the Liquidating

7 Trustee to attempt to locate any holder of an Allowed Claim. After such date, all unclaimed

8 property or interest in property shall revert to the Liquidating Trust to be distributed in accordance

9 with the terms of this Agreement and the Plan, and the Claim of any other holder to such property

10 or interest in property shall be discharged and forever barred.

11 **H.** <u>**Reserves.**</u>

12  The Liquidating Trustee may estimate and create and set aside Reserves as may be necessary

13 or appropriate, including but not limited to a Reserve on account of Disputed Claims ("Claim

14 Reserve"). The Liquidating Trustee may, but shall not be required to, move the Bankruptcy Court

15 to approve: (a) the amount of, and terms on which, such Reserves shall be held, maintained, and

16 disbursed; or (b) the amount and timing of any proposed Distribution to holders of Allowed Claims.

17 Once appropriate Reserves have been established for potential Claims having a higher priority for

18 receiving Distributions under this Plan, the Liquidating Trustee may make Distributions to holders

19 of Allowed Claims pursuant to the terms of the Liquidating Trust Agreement and this Plan. Except

20 as otherwise expressly provided herein, the Liquidating Trustee, in the exercise of his good faith

21 business judgment, may transfer funds out of any of the Reserves as necessary or appropriate.

22 However, the Liquidating Trustee shall not be required to create separate accounts for such

23 Reserves which may be created and memorialized by entries or other accounting methodologies,

24 which may be revised from time to time, to enable the Liquidating Trustee to determine the amount

25 of Cash available for Distribution to beneficiaries of the Liquidating Trust.

26 **I.** <u>**Time Bar to Cash Payments; Unclaimed Distributions.**</u>

27  Checks issued by the Liquidating Trust on account of Allowed Claims shall be null and void

28 if not negotiated within one hundred and eighty (180) days from and after the date of issuance

thereof.  Requests for re-issuance of any check shall be made directly to the Liquidating Trustee by the holder of the Allowed Claim with respect to which such check originally was issued.  All distributions under the Plan that are unclaimed for a period of twelve (12) months after distribution thereof shall be deemed unclaimed property under Section 347(b) of the Bankruptcy Code and any entitlement of any holder of any Claims to such distributions shall be extinguished and forever barred.  Subject to the conditions set forth in the Plan, any distributions that remain unclaimed after the expiration of the twelve (12) month period set forth in the immediately preceding sentence shall be redistributed to holders of Claims or Interests under the terms of the Plan.

**J.**     **Distribution Record Date.**

With respect to holders of all Claims, on the Distribution Record Date, the Claims register shall be closed and any transfer of any Claim thereafter shall be prohibited.  The Debtor or the Liquidating Trustee, as applicable, shall have no obligation to recognize any transfer of any such Claims occurring after the close of business after such date.

**K.**     **Distributions After Effective Date.**

Distributions made after the Effective Date to holders of Disputed Claims that are not Allowed Claims as of the Effective Date but which later become Allowed Claims shall be deemed to have been made on the Effective Date.

**L.**     **Setoffs and Recoupment.**

Other than with respect to Claims Allowed hereunder, the Debtor may, but shall not be required to, setoff against or recoup from any Claim and the payments to be made under the Plan in respect of such Claim any Claims of any nature whatsoever that the Debtor may have against the claimant, but neither the failure to do so nor the allowance of any Claim hereunder shall constitute a waiver or release by the Debtor of any such Claim it may have against such claimant.

**M.**     **Allocation of Plan Distributions to Principal, then Interest.**

To the extent that any Allowed Claim under the Plan is comprised of indebtedness and accrued but unpaid interest thereon, such distribution shall be allocated first to the principal amount of the Claim (as determined for federal income tax purposes) and then, to the extent the consideration exceeds the principal amount of the Claim, to accrued but unpaid interest.

**N.      Tax Obligations.**

The Liquidating Trustee shall be further authorized to: (i) administer and pay any taxes, including filing tax returns for the Debtor and the Liquidating Trust, as applicable; (ii) request an expedited determination of any unpaid tax liability of the Debtor or the Estate under Section 505 of the Bankruptcy Code for all taxable periods of the Debtor through the liquidation of the Debtor as determined under applicable tax law; and (iii) represent the interest and account of the Debtor or the Estate before any taxing authority in all matters including, without limitation, any action, suit, proceeding, or audit.

**O.      Withholding Taxes.**

The Liquidating Trustee shall be entitled to deduct any federal, state or local withholding taxes from any payments made under this Plan. As a condition to making any such payment, the Liquidating Trustee may require that the holder of an Allowed Claim provide its Taxpayer Identification Number and such other information and certification as may be deemed necessary for the Liquidating Trustee to comply with applicable tax reporting and withholding laws. If any Holder of an Allowed Claim fails to provide such number, information or certification within sixty (60) days from the date of first notification to the Holder of the need for such information, such Holder's distribution will be treated as unclaimed property in accordance with Section IV.G.2 herein or the amount required to be withheld may be so withheld and turned over to the applicable authority.

**P.      Dissolution of the Debtor after the Effective Date.**

The Debtor shall be dissolved as soon as practicable after the Effective Date, as to be determined by the Liquidating Trustee in his sole discretion; whereupon, Liquidating Trustee shall cause to be filed with the State of California and any other governmental authority such certificate of dissolution or cancellation and other certificates or documents as may be or become necessary to terminate the legal existence of the Debtor after the Effective Date.

**Q.      Closing of the Debtor's Chapter 11 Case.**

After all Disputed Claims have become Allowed Claims or have been disallowed by Final Order, the Liquidating Trustee may seek to obtain a final decree from the Bankruptcy Court closing

1  this Case in accordance with the Bankruptcy Code and the Bankruptcy Rules.  However, the

2  Liquidating Trustee in his business judgment may choose to keep this Case open for any reason.

3  **R.**      **Cancellation of Existing Agreements.**

4          Except (a) as otherwise expressly provided in this Plan; (b) with respect to executory

5  contracts or unexpired leases that have been assumed and assigned by the Debtor; (c) for purposes

6  of evidencing a right to distributions under the Plan; or (d) with respect to any Claim that is

7  reinstated and rendered unimpaired under the Plan (if any), on the date of closing of the Chapter 11

8  Case in accordance with the Plan, all instruments evidencing any Claims against the Debtor,

9  including, without limitation, existing agreements and other contracts, shall be deemed

10  automatically cancelled without further act or action under any applicable agreement, contract, law,

11  regulation, order, or rule, and the obligations of the Debtor thereunder shall be satisfied under the

12  Plan.

13  **S.**      **Cancellation of Liens.**

14          Except as otherwise provided for pursuant to this Plan, upon the occurrence of the Effective

15  Date, any Lien securing any Secured Claim shall be deemed released, and the holder of such

16  Secured Claim shall be authorized and directed to release any Collateral or other property of any

17  Debtor (including any cash Collateral) held by such holder and to take such actions as may be

18  requested by the Debtor or the Liquidating Trustee to evidence the release of such Lien, including

19  the execution, delivery, and filing or recording of such releases.

20                                            **V.**

21      **PROVISION FOR TREATMENT OF DISPUTED CLAIMS UNDER THE PLAN**

22  **A.**      **Objections to Claims; Filing of Late Claims; Disallowed Claims.**

23          As of the Effective Date, objections to, and requests for estimation of, Claims against the

24  Debtor may be interposed and prosecuted only by the Liquidating Trustee.  The Liquidating Trustee

25  may review all Claims filed or deemed filed and may object to, move to estimate, or seek

26  subordination of any Claim filed or scheduled in this Case.  The Claims Objection Deadline shall

27  be ninety (90) days after the Effective Date.  The Court shall retain jurisdiction over the Case to

28  resolve such objections to claims following the confirmation of the Plan.  Nothing contained in the

Plan shall constitute a waiver or release of any rights of setoff or recoupment with respect to any claim.

Any Claim which is listed in the Schedules as unliquidated, contingent, or disputed, and for which no proof of claim has been timely filed, shall be deemed Disallowed as of the Effective Date without the necessity of any further action by the Liquidating Trustee or further order of the Bankruptcy Court other than the Entry of the Confirmation Order.

**B.      Amendment of Claims.**

A Claim may be amended before the Effective Date as permitted by the Bankruptcy Court, the Bankruptcy Rules, the Local Rules, or applicable non-bankruptcy law.  On or after the Effective Date, the Holder of a Claim (other than an Administrative Claim or a Professional Compensation and Reimbursement Claim) must obtain prior authorization from the Bankruptcy Court and the Liquidating Trustee (which consent may not unreasonably be withheld), to amend a Claim.  Unless the holder of such Claim complies with such requirements, the Liquidating Trustee shall have no obligation to recognize any amendment of such Claim.

**C.      No Distributions Pending Allowance.**

Notwithstanding any other provision hereof, if any portion of a Claim is Disputed, no payment or distribution provided hereunder shall be made on account of such Claim unless and until such Disputed Claim becomes Allowed.

**D.      Distributions After Allowance.**

To the extent that a Disputed Claim ultimately becomes an Allowed Claim, distributions, if any, shall be made to the holder of such Allowed Claim in accordance with the provisions of the Plan.  As soon as practicable after the date that the order or judgment of the Bankruptcy Court Allowing any Disputed Claim becomes a Final Order (which date may be, at the option of the Liquidating Trustee, the next Distribution Date to holders of Allowed General Unsecured Claims), the Liquidating Trustee will provide to the holder of such Allowed Claim the distribution to which such holder is entitled under the Plan.

**E.        Resolution of Claims.**

On and after the Effective Date, the Liquidating Trustee shall have the authority to compromise, settle, otherwise resolve, or withdraw any objections to Claims and to compromise, settle, or otherwise resolve any Disputed Claims without approval of the Bankruptcy Court.

**F.        Estimation of Claims.**

The Liquidating Trustee may at any time request that the Bankruptcy Court estimate any Claim under Section 502(c) of the Bankruptcy Code regardless of whether the Debtor or the Liquidating Trustee previously objected to such Claim or whether the Bankruptcy Court has ruled on any such objection (for the avoidance of doubt, however, to the extent a Claim has been Allowed by a Bankruptcy Court order, such Claim is no longer subject to estimation), and the Bankruptcy Court will retain jurisdiction to estimate any Claim at any time during litigation concerning any objection to any Claim, including, without limitation, during the pendency of any appeal relating to any such objection.  In the event that the Bankruptcy Court estimates any Claim, the amount so estimated shall constitute either the Allowed amount of such Claim or a maximum limitation on such Claim, as determined by the Bankruptcy Court.  If the estimated amount constitutes a maximum limitation on the amount of such Claim, the Liquidating Trustee may pursue supplementary proceedings to object to the allowance of such Claim.  All of the aforementioned objection, estimation, and resolution procedures are intended to be cumulative and not exclusive of one another.  Claims may be estimated and subsequently compromised, settled, withdrawn, or resolved by any mechanism approved by the Bankruptcy Court.

**G.        Claims Paid or Reduced Prior to the Effective Date.**

Notwithstanding the contents of the Schedules, Claims listed therein as undisputed, liquidated, and not contingent shall be reduced by the amount, if any, that was paid by the Debtor prior to the Effective Date, including pursuant to orders of the Bankruptcy Court.  To the extent such payments are not reflected in the Schedules, such Schedules will be deemed amended and reduced to reflect that such payments were made.  Nothing in the Plan shall preclude the Liquidating Trustee from paying Claims that the Debtor was authorized to pay pursuant to any Final Order entered by the Bankruptcy Court prior to the Effective Date.

ARENT FOX LLP
ATTORNEYS AT LAW
LOS ANGELES

33

AFDOCS/23752166.3

**H.      Postpetition Interest on Claims.**

Except as may be otherwise expressly provided in the Plan, postpetition interest shall not accrue or be paid on any Claims against the Debtor, and no Holder of any such Claim against the Debtor shall be entitled to payment or Distributions on account of interest accruing on or after the Petition Date.

**I.      Fractional Dollars, *De Minimis* Distributions.**

Notwithstanding anything contained herein to the contrary, payments of fractions of dollars will not be made.  Whenever any payment of a fraction of a dollar under the Plan would otherwise be called for, the actual payment made will reflect a rounding of such fraction to the nearest dollar (up or down) with half dollars being rounded down.  The Liquidating Trustee shall have the discretion not to make payments of less than twenty-five dollars ($25) on account of any Allowed Claim, unless a specific request is made in writing to the Liquidating Trustee or before ninety (90) days after allowance of such claim.

**VI.**

**EXECUTORY CONTRACTS AND UNEXPIRED LEASES**

**A.      Rejection of Any Remaining Executory Contracts and Unexpired Leases.**

Any executory contracts or unexpired leases (i) which have not expired by their own terms on or prior to the Effective Date, or (ii) which have not been assumed or assigned or rejected with the approval of the Court or pursuant to procedure established by order of the Court shall be deemed rejected by the Estate on the Effective Date.  The entry of the Confirmation Order by the Court shall constitute approval of such rejection pursuant to Sections 365(a) and 1123(b)(2) of the Bankruptcy Code.

**B.      Approval of Rejection of Executory Contracts and Unexpired Leases.**

Entry of the Confirmation Order shall, subject to and upon the occurrence of the Effective Date, constitute the approval by the Bankruptcy Court, under Sections 365(a) and 1123(b)(2) of the Bankruptcy Code, of the assumption or rejection of the executory contracts and unexpired leases as of the Effective Date that are assumed or rejected under Section VI.A of the Plan.

**C.**     **Bar Date for Filing Proofs of Claim Relating to Executory Contracts and Unexpired Leases Rejected Under the Plan.**

    **The bar date for filing a proof of claim based on a claim arising from the rejection of an unexpired lease or executory contract which is rejected on the Effective Date under Section VI.A will be fourteen (14) calendar days after the date of entry of the Confirmation Order.** Any Claim based on the rejection of an unexpired lease or executory contract will be barred if a proof of claim is not timely filed, unless the Court orders otherwise. To the extent any claims are filed based on rejection of executory contracts or unexpired leases, such claims shall be treated as Class 3 General Unsecured Claims. All such Claims not filed within such time will be forever barred from assertion against the Debtor, the Estate, and the Liquidating Trust.

**D.**     **Insurance Policies.**

    Unless specifically assumed or rejected by order of the Bankruptcy Court, or unless listed in the Liquidating Trust Agreement, all of the Debtor's insurance policies and any agreements, documents, or instruments relating thereto, are treated as executory contracts under the Plan and shall be rejected in accordance with Section VI.A of the Plan. Nothing contained in this section shall constitute or be deemed a waiver of the right to assert and collect on claims relating to the period before the Effective Date or any Cause of Action that the Debtor may hold against any Entity, including, without limitation, the insurer, under any of the Debtor's policies of insurance, and all such rights and Causes of Action shall be assigned and shall vest in the Liquidating Trust on the Effective Date. For the avoidance of any doubt, nothing herein shall affect the rights or ability of the Debtor and its Estate, or the Liquidating Trustee, as successor in interest of the Debtor and its Estate, to assert, prosecute, or settle, by litigation or otherwise, any Causes of Action of the Debtor and its Estate covered, or the availability of coverage, under of the Debtor's insurance policies, and any agreements, documents, or instruments relating thereto, and all rights under the Debtor's insurance policies, and any agreements, documents, or instruments relating thereto shall be preserved and shall vest with the Liquidating Trust and shall remain in full force and effect after the Effective Date for the term thereof. Further, for the avoidance of any doubt, the Liquidating Trustee may assert, prosecute, or settle Causes of Action under any of the Debtor's director and

1    officer liability, employment practices, liability, or fiduciary liability insurance policies, as an

2    insolvency trustee, receiver, examiner, liquidator, or similar official, as those terms are used in the

3    polices.

4    **VII.**

5    **CONDITIONS PRECEDENT TO EFFECTIVE DATE**

6    **A.    Conditions Precedent to Effective Date.**

7        The occurrence of the Effective Date and the substantial consummation of the Plan are

8    subject to satisfaction of the following conditions precedent:

9        **1.    Entry of the Confirmation Order.**

10        The Clerk of the Bankruptcy Court shall have entered the Confirmation Order in form and

11    substance acceptable to the Plan Proponent, the effectiveness of which shall not have been stayed

12    within fourteen (14) days following the entry thereof, and the Confirmation Order shall be a Final

13    Order.

14        **2.    Consents Obtained.**

15        The Debtor shall have received all authorizations, consents, rulings, letters, opinions, or

16    documents that are necessary to implement and consummate the Plan and that are required by law,

17    regulation, or order.

18        **3.    Satisfaction of Conditions in Plan.**

19        The Debtor shall have satisfied all other conditions set forth in the Plan.

20        **4.    Transfer of Liquidating Trust Assets.**

21        The Liquidating Trust Assets shall have been transferred to the Liquidating Trust under the

22    Plan and the Liquidating Trust Agreement; and

23        **5.    Execution of Documents; Other Actions.**

24        All other actions and documents necessary to implement the Plan shall have been effected

25    or executed.

26

27

28

**B.**    **Waiver of Conditions.**

The Debtor may, to the extent not prohibited by applicable law, waive one or more of the conditions precedent to the Effective Date set forth in Section VII.A of the Plan without notice to any party in interest or the Bankruptcy Court and without a hearing.

**C.**    **Satisfaction of Conditions.**

Except as expressly provided or permitted in the Plan, any actions required to be taken on the Effective Date shall take place and shall be deemed to have occurred simultaneously, and no such action shall be deemed to have occurred before the taking of any other such action.  If one or more of the conditions specified in Section VII.A of the Plan have not occurred or otherwise been waived under Section VII.B of the Plan within one hundred and twenty (120) days after the Effective Date, which period may be extended by the Debtor, then (a) the Confirmation Order shall be vacated; (b) no distributions under the Plan shall be made; (c) the Debtor and all holders of Claims and Interests shall be restored to the *status quo ante* as of the day immediately preceding the Effective Date as though the Effective Date never occurred; and (d) the Debtor's obligations with respect to Claims and Interests shall remain unchanged and nothing contained herein shall constitute or be deemed a waiver or release of any Claims or Interests by or against the Debtor or any other person or to prejudice in any manner the rights of the Debtor or any Entity in any further proceedings involving the Debtor.

**VIII.**

**EFFECT OF CONFIRMATION**

**A.**    **Vesting of Assets.**

On the Effective Date, under Sections 1141(b) and (c) of the Bankruptcy Code, all Liquidating Trust Assets shall vest in the Liquidating Trust, subject to the rights and interest of the Liquidating Trust's beneficiaries, and the Debtor's and its Estate's assets, properties, and interests shall be released from the custody and jurisdiction of the Bankruptcy Court, and all such assets, properties, and interests shall vest in the Liquidating Trust free and clear of all Claims, Liens, encumbrances, charges, and other interests, except as provided under the Plan.

ARENT FOX LLP
ATTORNEYS AT LAW
LOS ANGELES

37

AFDOCS/23752166.3

**B.**        **Binding Effect.**

Subject to the occurrence of the Effective Date, on and after the Effective Date, the provisions of the Plan shall bind any present and former holder of a Claim against, or Interest in, the Debtor and its Estate and such holder's respective related Entities, successors and assigns, whether or not such holder's Claim or Interests is impaired under the Plan, whether or not such holder has voted or failed to vote to accept or reject the Plan, and whether or not such holder is entitled to receive any distribution under the Plan.

**C.**        **Satisfaction of Claims and Termination of Interests.**

The rights afforded in this Plan and the payments and distributions to be made hereunder shall be in exchange for and in complete satisfaction of all existing debts, liabilities, and Claims, and shall terminate all Interests, of any kind, nature, or description whatsoever, including any interest accrued on such Claims from and after the Petition Date, against the Debtor and its Estate, or any of its assets or properties, regardless of whether any property shall have been distributed or retained under this Plan on account of such Claims and Interests, including demands, liabilities, and causes of action that arose before the Effective Date, any contingent or non-contingent liability on account of representations or warranties issued on or before the Effective Date, and all debts of the kind specified in Sections 502(g), 502(h), or 502(i) of the Bankruptcy Code.  Except as otherwise provided herein, on the Effective Date, all existing Claims against the Debtor and Interests in the Debtor, shall be, and shall be deemed to be satisfied and all holders of Claims and Interests shall be precluded and enjoined from asserting against the Liquidating Trust or any of its respective assets or properties, any other or further Claim or Interest based upon any act or omission, transaction, or other activity of any kind or nature that occurred before the Effective Date, whether or not such holder has filed a proof of Claim or proof of Interest.  The Confirmation Order shall be a judicial determination of the satisfaction of all Claims and termination of all Interests subject to the Effective Date occurring, except as otherwise specifically provided in this Plan or the Confirmation Order.

**D.      Injunction.**

Except as otherwise expressly provided in this Plan, the Confirmation Order, or such other order of the Bankruptcy Court that may be applicable, all Entities who have held, hold, or may hold Claims or other debt or Interests or other right of equity interest in the Debtor or the Estate are permanently enjoined, from and after the Effective Date, from (a) commencing or continuing in any manner any action or other proceeding of any kind on any such Claim or other debt or liability or Interest or other right of equity interest that is terminated or cancelled under the Plan against the Debtor, the Debtor's Estate, properties or interests in properties of the Debtor, or the Liquidating Trust, (i) commencing or continuing, in any manner or in any place, any action or other proceeding; (ii) enforcing, attaching, collecting or recovering in any manner any judgment, award, decree or order; (iii) creating, perfecting or enforcing any lien or encumbrance; (iv) asserting a setoff, right of subrogation or recoupment of any kind against any debt, liability or obligation; and (v) commencing or continuing any action in any manner, in any place that does not comply with or is inconsistent with the provisions of the Plan.

By accepting distributions pursuant to the Plan, each holder of an Allowed Claim receiving distributions pursuant to the Plan will be deemed to have specifically consented to the injunctions set forth in this section.

**E.      Injunction on Causes of Action.**

Except as provided in the Plan, as of the Effective Date, all non-Debtor entities are permanently enjoined from commencing or continuing in any manner, any Causes of Action, whether directly, derivatively, on account of or respecting any debt or Cause of Action of the Debtor which the Liquidating Trustee retains sole and exclusive authority to pursue in accordance with the Plan and the Liquidating Trust Agreement or which have been released under the Plan.

**F.      Terms of Existing Injunctions or Stays.**

Except as otherwise provided in this Plan, to the extent permitted by applicable law and subject to the Bankruptcy Court's post-confirmation jurisdiction to modify the injunctions and stays under this Plan, (a) all injunctions with respect to or stays against an action against property of the Debtor's Estate arising under or entered during the Chapter 11 Case under Sections 105 or 362 of

the Bankruptcy Code, and in existence on the Effective Date, shall remain in full force and effect until such property is no longer property of the Debtor's Estate; and (b) all other injunctions and stays arising under or entered during the Chapter 11 Case under Sections 105 or 362 of the Bankruptcy Code shall remain in full force and effect until the earlier of (i) the date that the Chapter 11 Case is closed pursuant to a Final Order of the Bankruptcy Court or (ii) the date that the Chapter 11 Case is dismissed pursuant to a Final Order of the Bankruptcy Court.

**G.** **Preservation of Causes of Action / Reservation of Rights.**

**1.** **Retention of Claims and Defenses.**

Unless otherwise expressly set forth in this Plan or the Confirmation Order, pursuant to Section 1123(b)(3)(B), all Causes of Action, claims and defenses of any kind or nature whatsoever against third parties arising before the Effective Date and belonging to the Debtor or the Estate shall vest in the Liquidating Trust on the Effective Date, and the Liquidating Trustee shall have the discretion to assert any such Causes of Action under any provision of the Bankruptcy Code or any applicable non-bankruptcy law. Notwithstanding any otherwise applicable principle of law or equity, including, without limitation, any principles of judicial estoppel, res judicata, collateral estoppel, issue preclusion, or any similar doctrine, the failure to list, disclose, describe, identify, analyze or refer to any such retained claims and defenses in the Plan, the Disclosure Statement, the Liquidating Trust Agreement, or any other document filed with the Bankruptcy Court will in no manner waive, eliminate, modify, release, or alter the right of the Liquidating Trustee to commence, prosecute, defend against, settle, and realize upon any retained claims and defenses that the Debtor or the Estate have or may have as of the Effective Date. Retained claims and defenses shall include, without limitation:

- All claims and defenses pursuant to applicable non-bankruptcy law and Sections 502, 506, 524 and 553 of the Bankruptcy Code against any Creditor regarding the amount of such holder's Allowed Claim (whether prepetition or postpetition), to enforce the discharge of any Secured Creditors' Claims;

- All claims and defenses pursuant to applicable non-bankruptcy law and Sections 502, 506, 510, 524, 542 and 553 of the Bankruptcy Code including, without limitation, claims and defenses based on any Creditors' assertion of unreasonable professionals' fees, costs, charges and penalties (whether disguised as interest, or otherwise);

• All avoidance causes of action and objections to Claims under Sections 105, 502, 506, 510, 542 through 551 and 553 of the Bankruptcy Code that belong to the Debtor or to the Estate.

• All claims and defenses related to the recovery of professionals' fees and expenses by the Debtor from Creditors;

• All claims and defenses whatsoever related to those litigation matters described in Section II.G. of the Disclosure Statement.

• All causes of action, including, but not limited to, claims against the Debtor's insiders, employees, and/or agents relating to pre-confirmation and/or pre-petition conduct, including without limitation, claims for fraud, breach of fiduciary duty or negligence.

Nothing contained in the Plan or the Confirmation Order shall be deemed to be a waiver or the relinquishment of any of the Debtor's rights with respect to the retained Claims and defenses and the Liquidating Trustee shall be entitled to assert fully all retained rights and defenses.

**2.** **Unknown Retained Claims and Defenses / No Preclusion.**

Unless otherwise expressly set forth in the Plan, the Confirmation Order, or the Liquidating Trust Agreement, the reservation of rights and the retained claims and defenses set forth above shall include, without limitation, any retained claims and defenses of which the Debtor may presently be unaware, or which may arise or exist by reason of additional facts or circumstances unknown to the Debtor at this time or facts or circumstances that may change or be different from those the Debtor now believes to exist including, without limitation, claims based on theories of construction defect, breach of warranty, negligence, indemnification and contribution. Therefore, no preclusion doctrine, including, without limitation, the doctrines of *res judicata*, collateral estoppel, waiver, estoppel (judicial, equitable or otherwise), or laches will apply to the Liquidating Trustee with respect to the retained claims and defenses upon or after the Confirmation of the Plan based on this Plan, the Disclosure Statement or the Confirmation Order.

**H.** **Releases.**

**1.** **Releases by the Estate.**

For good and valuable consideration, on and after the Effective Date, the Released Parties shall be deemed to be conclusively, absolutely, unconditionally, irrevocably, and forever released and discharged by the Debtor, the Estate, and any Person seeking to exercise the rights of the foregoing, from any and all claims, obligations, rights, suits, judgments, damages, demands, debts,

rights, causes of action, remedies, losses, and liabilities whatsoever, including any derivative claims, asserted or assertable on behalf of the Debtor or the Estate, whether known or unknown, foreseen or unforeseen, liquidated or unliquidated, matured or unmatured, contingent or fixed, existing or hereinafter arising, in law, equity or otherwise, that the Debtor, the Estate, or their affiliates would have been legally entitled to assert in their own right (whether individually or collectively) or on behalf of the holder of any Claim or Interest or other Person, based on or relating to, or in any manner arising from, in whole or in part, the Debtor, the Estate, the formation, operation, and conduct of the Debtor's business, the Case, the negotiation, formulation, or preparation thereof, the solicitation of votes on the Plan, or any other act or omission, in all cases based upon any act or omission, transaction, agreement, event, or other occurrence taking place on or before the Effective Date, including all Claims and Causes of Action under Chapter 5 of the Bankruptcy Code or any other Avoidance Actions under the Bankruptcy Code or applicable federal or state law, including any preference or fraudulent transfer Claims or Causes of Action; provided that nothing in this release shall be construed to release any post-Effective Date obligations of any Person under the Plan.

Notwithstanding anything contained in this provision, nothing in this Plan shall effect a release of any claim arising from an act or omission that is determined in a Final Order by a court of competent jurisdiction to constitute gross negligence, willful misconduct, or a breach of fiduciary duties.

**2.      Compromise Under Fed. R. Bankr. P. 9019.**

Entry of the Confirmation Order shall constitute the Bankruptcy Court's approval, pursuant to Bankruptcy Rule 9019, of the compromises memorialized in the releases set forth herein, and shall constitute the Bankruptcy Court's finding that the releases set forth in the Plan are: (a) essential to the confirmation of the Joint Plan; (b) consensual; (c) given in exchange for good and valuable consideration provided by the Released Parties, including the Released Parties' contributions to facilitating and implementing the Plan; (d) a good faith settlement and compromise of the Claims released; (e) in the best interests of the Debtor and the Estate; (f) fair, equitable, and reasonable; and (g) given and made after due notice and opportunity for hearing.

1    **I.      Retention of Jurisdiction.**

2         The Bankruptcy Court shall retain and have exclusive jurisdiction over any matter arising

3    under the Bankruptcy Code, arising in or related to the Chapter 11 Case or the Plan, or that relates

4    to the following purposes:

5         •      to resolve any matters related to the assumption, assumption and assignment,

6    or rejection of any executory contract or unexpired lease to which a Debtor is a

7    party or with respect to which a Debtor may be liable and to hear, determine and,

8    if necessary, liquidate, any Claims arising therefrom;

9         •      to enter such orders as may be necessary or appropriate to implement or

10   consummate the provisions of the Plan and all contracts, instruments, releases, and

11   other agreements or documents created in connection with the Plan;

12        •      to determine any and all adversary proceedings, contested matters,

13   applications, motions (including motions under Bankruptcy Rule 2004), or

14   litigation matters that may be pending on the Effective Date or that, under the Plan,

15   may be commenced by the Liquidating Trustee after the Effective Date (which

16   jurisdiction shall be non-exclusive as to any non-core matters);

17        •      to ensure that distributions to holders of Allowed Claims are accomplished

18   as provided herein;

19        •      to hear and determine any timely objections to Claims and Interests,

20   including any objections to the classification of any Claim or Interest, and to allow,

21   disallow, subordinate, recharacterize, determine, liquidate, classify, estimate,

22   compromise, settle, or establish the priority, or secured or unsecured status, of any

23   Claim, including Disputed Claims, in whole or in part;

24        •      to resolve any Disputed Claims;

25        •      to enter and implement such orders as may be appropriate in the event the

26   Confirmation Order is for any reason stayed, revoked, modified, reversed, or

27   vacated;

28

ARENT FOX LLP
ATTORNEYS AT LAW
LOS ANGELES

43

- to hear and determine any matters or disputes arising under or in connection with the Liquidating Trust Agreement;

- to issue such orders in aid of consummation of the Plan, to the extent authorized by Section 1142 of the Bankruptcy Code;

- to consider any modifications of the Plan, to cure any defect or omission, or reconcile any inconsistency in any order of the Bankruptcy Court, including, without limitation, the Confirmation Order;

- to hear and determine all applications for awards of compensation for services rendered and reimbursement of expenses incurred before or after the Effective Date under Sections 330, 331, and 503(b) of the Bankruptcy Code;

- to hear and determine all requests for payment of Administrative Expense Claims;

- to hear and determine any disputes over matters relating to the indemnification of the Liquidating Trustee and any professionals retained by the Liquidating Trustee under the Liquidating Trust Agreement;

- to hear and determine and adjudicate any litigation involving Causes of Action, Avoidance Actions, or any other Liquidating Trust Assets;

- to hear and determine disputes arising in connection with or relating to the Plan or the interpretation, implementation, or enforcement of the Plan or the extent of any Entity's obligations incurred in connection with or released under the Plan;

- to issue restraining orders or injunctions and to enter and implement other orders, or take such other actions as may be necessary or appropriate to restrain interference by any Entity with the consummation, implementation, or enforcement of the Plan, the Confirmation Order, or any other order of the Bankruptcy Court;

- to determine any other matters that may arise in connection with or are related to the Plan, the Disclosure Statement, the Confirmation Order, or any contract, instrument, release, agreement, or document created in connection with the Plan, the Disclosure Statement, or the Liquidating Trust Agreement;

1    • to hear and determine any actions to recover assets of the Debtor and

2    property of the Debtor's Estate, wherever located;

3    • to hear and determine matters concerning state, local, and federal taxes in

4    accordance with Sections 346, 505, and 1146 of the Bankruptcy Code (including

5    the expedited determination of tax under Section 505(b) of the Bankruptcy Code);

6    • to hear and determine any other matters related hereto for any purpose that

7    is not inconsistent with the Bankruptcy Code and title 28 of the United States Code;

8    and to enter a final decree closing the Chapter 11 Case.

9                                    IX.

10        **MODIFICATION, REVOCATION, OR WITHDRAWAL OF THE PLAN**

11   **A.    Modification of the Plan.**

12       The Plan Proponent reserves its right, in accordance with the Bankruptcy Code and the

13   Bankruptcy Rules, to amend or modify the Plan, or any exhibits to the Plan at any time before entry

14   of the Confirmation Order.  Upon entry of the Confirmation Order, the Plan Proponent may, upon

15   order of the Bankruptcy Court, jointly amend or modify the Plan, in accordance with Section

16   1127(b) of the Bankruptcy Code or remedy any defect or omission or reconcile any inconsistency

17   in the Plan in such manner as may be necessary to carry out the purpose and intent of the Plan.  A

18   holder of a Claim that has adopted the Plan shall be deemed to have accepted the Plan as modified

19   if the proposed modification does not materially and adversely change the treatment of the Claim

20   of such holder.

21   **B.    Revocation or Withdrawal of the Plan.**

22       The Plan may be revoked or withdrawn by the Plan Proponent before the Effective Date.  If

23   the Plan is revoked or withdrawn before the Effective Date, the Plan shall be deemed null and void.

24   In such event, nothing contained herein shall be deemed to constitute a waiver or release of any

25   claims by the Debtor or any other Entity or to prejudice in any manner the rights of the Debtor or

26   any other Entity in any further proceedings involving the Debtor.

27

28

# X.

## MISCELLANEOUS PROVISIONS

### A. Effectuating Documents and Further Transactions.

On or before the Effective Date, and without the need for any further order or authority, the Debtor shall file with the Bankruptcy Court or execute, as appropriate, such agreements and other documents as may be necessary or appropriate to effectuate and further evidence the terms and conditions of the Plan. The Debtor is authorized to execute, deliver, file, or record such contracts, instruments, releases, indentures, and other agreements or documents and take such actions as may be necessary or appropriate to effectuate and further evidence the terms and conditions of the Plan.

### B. Withholding and Reporting Requirements.

In connection with the consummation of the Plan and all instruments issued in connection herewith and distributed hereunder, any party issuing any instrument or making any distribution under the Plan shall comply with all applicable withholding and reporting requirements imposed by any federal, state, or local taxing authority, and all distributions under the Plan shall be subject to any such withholding or reporting requirements. Notwithstanding the above, each holder of an Allowed Claim or Existing Equity Interest that is to receive a distribution under the Plan shall have the sole and exclusive responsibility for the satisfaction and payment of any tax obligations imposed on such holder by any Governmental Unit, including income, withholding, and other tax obligations, on account of such distribution. Any party issuing any instrument or making any distribution under the Plan has the right, but not the obligation, to not make a distribution until such holder has made arrangements satisfactory to such issuing or disbursing party for payment of any such tax obligations.

### C. Post-Confirmation Status Report.

Within 120 days of the entry of the Confirmation Order, the Liquidating Trustee shall file a status report with the Court explaining what progress has been made toward consummation of the confirmed Plan. The status report shall be served on the United States Trustee and those parties who have requested special notice. Further status reports shall be filed every 120 days and served on the same parties.

**D.      United States Trustee Fees and Reports.**

After the Effective Date and until the Chapter 11 Case is closed, all fees incurred under 28 U.S.C. Section 1930(a)(6) by reason of disbursements made by the Liquidating Trust shall be paid by the Liquidating Trustee. After the Effective Date, the Liquidating Trustee shall prepare, file, and serve on the United States Trustee such quarterly disbursement reports for the Liquidating Trust as required by the Office of the United States Trustee for as long as the Chapter 11 Case remains open as required by the guidelines.

**E.      Expedited Tax Determination.**

The Liquidating Trustee may request an expedited determination of taxes under Section 505(b) of the Bankruptcy Code for all returns filed for, or on behalf of, such Debtor for all taxable periods through the Effective Date.

**F.      Exemption from Transfer Taxes.**

Under Section 1146(a) of the Bankruptcy Code, the assignment or surrender of any lease or sublease, or the delivery of any deed or other instrument of transfer under, in furtherance of, or in connection with the Plan, including any deeds, bills of sale, or assignments executed in connection with any disposition of assets contemplated by the Plan shall not be subject to any stamp, real estate transfer, mortgage recording, sales, use, or other similar tax.

**G.      Substantial Consummation.**

On the Effective Date, the Plan shall be deemed to be substantially consummated under Sections 1101 and 1127(b) of the Bankruptcy Code.

**H.      Severability of Plan Provisions.**

If, before the Effective Date, any term or provision of the Plan shall be held by the Bankruptcy Court to be invalid, void, or unenforceable, the Bankruptcy Court shall, at the request of the Plan Proponent, have the power to alter and interpret such term or provision to make it valid or enforceable to the maximum extent practicable, consistent with the original purpose of the term or provision held to be invalid, void, or unenforceable, and such term or provision shall then be applicable as altered or interpreted. Notwithstanding any such holding, alteration, or interpretation, the remainder of the terms and provisions of the Plan shall remain in full force and effect and shall

in no way be affected, impaired, or invalidated by such holding, alteration, or interpretation. The Confirmation Order shall constitute a judicial determination and shall provide that each term and provision of the Plan, as it may have been altered or interpreted in accordance with the foregoing, is valid and enforceable under its terms.

**I.**  **Governing Law.**

Except to the extent that the Bankruptcy Code or other federal law is applicable, or to the extent that an exhibit hereto provides otherwise, the rights, duties, and obligations arising under this Plan shall be governed by, and construed and enforced in accordance with, the Bankruptcy Code and, to the extent not inconsistent therewith, the laws of the State of California, without regard to any conflicts of law provisions that would require the application of the law of any other jurisdiction.

**J.**  **Time.**

In computing any period of time prescribed or allowed by the Plan, unless otherwise set forth herein or determined by the Bankruptcy Court, the provisions of Bankruptcy Rule 9006 shall apply.

**K.**  **Solicitation of the Plan.**

As of and subject to the occurrence of the Effective Date, the Plan Proponent shall be deemed to have solicited acceptances of the Plan in good faith and in compliance with the applicable provisions of the Bankruptcy Code, including without limitation, Section 1125(a) and (e) of the Bankruptcy Code, and any applicable non-bankruptcy law, rule, or regulation governing the adequacy of disclosure in connection with such solicitation.

**L.**  **Exhibits/Schedules.**

All exhibits and schedules to the Plan are incorporated into and are a part of the Plan as if set forth in full herein.

**M.**  **Notices.**

All notices, requests, and demands to or upon the Debtor shall, to be effective, be in writing (including by facsimile transmission) and, unless otherwise expressly provided herein, shall be

ARENT FOX LLP
ATTORNEYS AT LAW
LOS ANGELES

AFDOCS/23752166.3

deemed to have been duly given or made when actually delivered or, in the case of notice by facsimile transmission, when received and telephonically confirmed, addressed as follows:

> <u>To the Debtor</u>:
> 450 S. Western, LLC
> c/o Wilshire Partners of CA, LLC
> 470 Maylin Street
> Pasadena, CA 91105
> Attention:    Richard J. Laski, Chief Restructuring Officer
>
> <u>With Copy To</u>:
> Arent Fox LLP
> 555 West Fifth Street, 48th Floor
> Los Angeles, California 90013
> Attention:    Aram Ordubegian

**N.    <u>Section Headings.</u>**

The section headings contained in this Plan are for reference purposes only and shall not affect in any way the meaning or interpretation of the Plan.

**O.    <u>Inconsistencies.</u>**

To the extent of any inconsistencies between the information contained in the Disclosure Statement and the terms and provisions of the Plan, the terms and provisions contained herein shall govern.

## XI.

## <u>DEFINITIONS AND INTERPRETATION</u>

**A.    <u>Definitions.</u>**

As used in the Plan, the following terms shall have the respective meanings specified below:

***"Administrative Expense Claim"*** means any right to payment constituting a cost or expense of administration of the Chapter 11 Case Allowed under and in accordance with, as applicable, Sections 330, 364(c)(1), 365, 503(b), 507(a)(2), and 507(b) of the Bankruptcy Code, including, without limitation, (a) any actual and necessary costs and expenses of preserving the Debtor's Estate or operating the Debtor's businesses, (b) any indebtedness or obligations incurred or

assumed by the Debtor, as debtor in possession, during the Chapter 11 Case, (c) any compensation for professional services rendered and reimbursement of expenses incurred by a professional retained by order of the Bankruptcy Court or otherwise allowed under Section 503(b) of the Bankruptcy Code, and (d) Section 503(b)(9) Claims.

*"Administrative Expense Claims Bar Date"* means, for any Administrative Expense Claim, the date which is thirty (30) days after the Effective Date or such earlier deadline that may be set by an order of the Bankruptcy Court for filing a request for allowance of such Administrative Expense Claim.  Professional Compensation and Reimbursement Claims shall not be subject to the Administrative Expense Claims Bar Date.

*"Allowed"* means, with reference to any Claim, (a) any Claim that has been listed by the Debtor in its Schedules, as such Schedules may be amended by the Debtor from time to time in accordance with Bankruptcy Rule 1009, as liquidated in amount and not disputed or contingent and for which no contrary proof of claim, objection, or request for estimation has been filed on or before any applicable objection deadline, if any, set by the Bankruptcy Court or the expiration of such other applicable period fixed by the Bankruptcy Court; (b) any Claim that is not Disputed; (c) any Claim that is compromised, settled, or otherwise resolved under the authority granted to the Debtor or Liquidating Trustee, as the case may be, under a Final Order of the Bankruptcy Court; or (d) any Claim that has been allowed hereunder or by Final Order; provided, however, that Claims allowed or estimated solely for the purpose of voting to accept or reject the Plan under an order of the Bankruptcy Court shall not be considered "Allowed Claims" hereunder.  Unless otherwise specified herein or by order of the Bankruptcy Court, "Allowed Administrative Expense Claim" or "Allowed Claim" shall not, for any purpose under the Plan, include interest on such Administrative Expense Claim or Claim from and after the Petition Date.

*"Avoidance Actions"* means any and all Causes of Action and rights to exercise the avoidance powers, to recover or avoid transfers, or to avoid a lien arising under chapter 5 of the Bankruptcy Code or applicable state law, including, without limitation, under Sections 502, 506, 510, 541, 542, 543, 544, 545, 546, 547, 548, 549, 550, 551, and 553 of the Bankruptcy Code, and the proceeds thereof.

"*Ballot*" means the document for accepting or rejecting the Plan in the form approved by the Bankruptcy Court and distributed with the Disclosure Statement.

"*Bankruptcy Code*" means title 11 of the United States Code, as amended from time to time, as applicable to the Chapter 11 Case.

"*Bankruptcy Court*" means the United States Bankruptcy Court for the Central District of California having jurisdiction over the Chapter 11 Case.

"*Bankruptcy Rules*" means the Federal Rules of Bankruptcy Procedure, as promulgated by the United States Supreme Court under Section 2075 of title 28 of the United States Code, and any local rules of the Bankruptcy Court, as amended, as applicable to the Chapter 11 Case.

"*Business Day*" means any day of the calendar week, except Saturday, Sunday, a "legal holiday" as defined in Bankruptcy Rule 9006(a), or any day on which national banking institutions in the state of California are authorized or required by law or executive order to close.

"*Cash*" means legal tender of the United States of America.

"*Causes of Action*" means, without limitation, any and all actions, causes of action, rights of action, counterclaims, defenses, setoff or offset rights, proceedings, controversies, liabilities, obligations, rights to legal remedies, rights to equitable remedies, rights to payment, Claims, suits, damages, judgments, objections to Claims, recharacterization or subordination of Claims, and demands whatsoever, whether known or unknown, reduced to judgment, liquidated or unliquidated, fixed or contingent, matured or unmatured, disputed or undisputed, secured or unsecured, direct or derivative, existing or hereafter arising, in law, equity, or otherwise, now owned or hereafter acquired by the Debtor or the Debtor's Estate, whether arising under the Bankruptcy Code or other applicable federal, state, or foreign law, equity or otherwise, including, without limitation, the Avoidance Actions, Claims or causes of action for breach of fiduciary duty or aiding and abetting breach of fiduciary duty, Claims or causes of action under any applicable director and officer liability, employment practices liability, or fiduciary liability insurance policies maintained by the Debtor, or Claims, causes of action or right to seek a determination by the Bankruptcy Court or any other court of competent jurisdiction of any tax, fine or penalty relating to a tax, or any addition to a tax, under Section 505 of the Bankruptcy Code, based in whole or in part upon any act or omission

or other event occurring before the Petition Date or during the course of the Chapter 11 Case, including through the Effective Date, and the Cash and non-Cash proceeds of any of the foregoing. For the avoidance of doubt, Causes of Action also specifically includes all actions, whether pending or forthcoming, against the Debtor's former officers, directors, managers, employees, Existing Equity Holders, affiliates, insiders, agents, consultants, and professionals (except the Released Parties), and other litigation targets, whether or not these Entities are identified herein or in Section II of the Disclosure Statement.

*"Chapter 11 Case"* means the case commenced by filing a voluntary petition under chapter 11 of the Bankruptcy Code on January 10, 2020, which is captioned *In re 450 S. Western, LLC, a California Limited Liability Company*, Case No. 2:20-10264-ER and is currently pending before the Bankruptcy Court.

*"Chief Restructuring Officer"* or *"CRO"* means Richard J. Laski of Wilshire Partners of CA, LLC, as the Chief Restructuring Officer for the Debtor.

*"Claim"* means a "claim" as the term is defined in Section 101(5) of the Bankruptcy Code.

*"Claims Objection Deadline"* means the deadline for objecting to Claims or Interests, as set forth herein in Section V.A which shall be ninety (90) days after the Effective Date.

*"Class"* means a category of Claims or Interests classified by the Plan under Sections 1122 and 1123(a)(1) of the Bankruptcy Code.

*"Collateral"* means any property, or interest in property, of the Debtor or the Debtor's Estate subject to a Lien, charge, or other encumbrance to secure the payment or performance of a Claim, which Lien, charge, or other encumbrance is not subject to avoidance or otherwise invalid under the Bankruptcy Code or other applicable federal or state law.

*"Confirmation Hearing"* means the hearing to consider confirmation of the Plan under Section 1128 of the Bankruptcy Code, as it may be adjourned or continued from time to time.

*"Confirmation Order"* means the order of the Bankruptcy Court confirming the Plan under Section 1129 of the Bankruptcy Code.

*"Creditor"* means a "creditor" as the term is defined in Section 101(10) of the Bankruptcy Code.

***"Debtor"*** means 450 S. Western, LLC., as debtor and debtor-in-possession in this Chapter 11 Case.

***"Disclosure Statement"*** means that certain disclosure statement relating to the Plan, including, without limitation, all exhibits and schedules thereto, as approved by the Bankruptcy Court under Section 1125 of the Bankruptcy Code.

***"Disputed"*** means, with reference to any Claim or any portion thereof, (a) any Claim that is listed on the Schedules as unliquidated, disputed, or contingent, (b) any Claim as to which the Debtor or any other party in interest has interposed a timely objection or request for estimation in accordance with the Bankruptcy Code and the Bankruptcy Rules, or that is otherwise disputed by the Debtor in accordance with applicable law, which objection, request for estimation, or dispute has not been determined by a Final Order, or (c) any Claim with respect to which a proof of claim was required to be filed by order of the Bankruptcy Court but as to which such proof of claim was not timely or properly filed.  A Claim that is Disputed as to its amount only shall be deemed Allowed in the amount agreed upon, if any, by the Liquidating Trustee, and Disputed as to the excess.

***"Distribution Date"*** means a date or dates, as determined by the Liquidating Trustee, on which the Liquidating Trustee makes a distribution to holders of Allowed Claims or Interests under the Plan.

***"Distribution Record Date"*** means the record date for purposes of making distributions under the Plan on account of Allowed Claims or Interests, which date shall be two (2) Business Days before the Effective Date.

***"Effective Date"*** means the first Business Day that is practicable following the date on which the Clerk of the Bankruptcy Court enters the Confirmation Order on the docket of the Bankruptcy Court with respect to the Chapter 11 Case on which (a) the conditions to effectiveness of the Plan set forth in Section VII.A of the Plan have been satisfied or otherwise waived in accordance with Section VII.B or VII.C of the Plan and (b) no stay of the Confirmation Order is in effect.

***"Entity"*** means an "entity" as the term is defined in Section 101(15) of the Bankruptcy Code, including, without limitation, a person, a corporation, a general partnership, a limited

partnership, a limited liability company, a limited liability partnership, an association, a joint stock company, a joint venture, an estate, a trust, an unincorporated organization, a Governmental Unit or any subdivision thereof, including, without limitation, the Office of the United States Trustee.

*"Estate"* means the estate of the Debtor created in the Debtor's Chapter 11 Case, containing all property and other interests of the Debtor under Section 541 of the Bankruptcy Code.

*"Estate Cash"* means all Cash held by the Estate.

*"Existing Equity Holder"* means any party that held or subsequently is deemed to have held an equity interest in the Debtor as of the Effective Date.

*"Existing Equity Interests"* means the Interests held by the Existing Equity Holders in the Debtor.

*"Final Order"* means an order or judgment of the Bankruptcy Court or any other court of competent jurisdiction that has not been reversed, vacated, or stayed and as to which (a) the time to appeal, petition for *certiorari*, or move for a stay, new trial, reconsideration, reargument, or rehearing has expired and as to which no appeal, petition for *certiorari*, or other proceedings for stay, new trial, reargument, or rehearing shall then be pending or (b) if an appeal, writ of certiorari, stay, new trial, reconsideration, reargument, or rehearing has been sought, (i) such order or judgment shall have been affirmed by the highest court to which such order was appealed, *certiorari* shall have been denied, or a stay, new trial, reconsideration, reargument, or rehearing shall have been denied or resulted in no modification of such order, and (ii) the time to take any further appeal, petition for *certiorari*, or move for a stay, new trial, reconsideration, reargument, or rehearing shall have expired; provided, however, that the possibility that a motion under Section 502(j) of the Bankruptcy Code, Rule 59 or Rule 60 of the Federal Rules of Civil Procedure, Bankruptcy Rule 8002, or any analogous rule under applicable state court rules of civil procedure may be, but has not been, filed with respect to such order shall not cause such order not to be a Final Order.

*"General Unsecured Claim"* means any Claim against the Debtor that (a) is not an Administrative Expense Claim, Professional Compensation and Reimbursement Claim, Priority Tax Claim, Priority Non-Tax Claim, or an Interest; or (b) is otherwise determined by the Bankruptcy Court to be a General Unsecured Claim.

***"Governmental Unit"*** means a "governmental unit" as the term is defined in Section 101(27) of the Bankruptcy Code.

***"Impaired"*** means "impaired" within the meaning of Section 1124 of the Bankruptcy Code.

***"Interest"*** means any equity security within the meaning of Section 101(16) of the Bankruptcy Code or any other instrument evidencing an ownership interest in the Debtor, whether or not transferable, and any right to acquire any such equity security or instrument, including any option, warrant, or other right, contractual or otherwise, to acquire, sell, or subscribe for any such security or instrument.

***"Lien"*** means a "lien" as the term is defined in Section 101(37) of the Bankruptcy Code.

***"Liquidating Trust"*** means the trust established under the Plan in accordance with the Liquidating Trust Agreement.

***"Liquidating Trustee"*** means Richard J. Laski, who is appointed under the Liquidating Trust Agreement to serve as the trustee of and to administer the Liquidating Trust.

***"Liquidating Trust Agreement"*** means that certain Liquidating Trust Agreement to be executed as of the Effective Date which shall establish and govern the operation of the Liquidating Trust, conforming substantially to the form attached hereto as **Exhibit 1**.

***"Liquidating Trust Assets"*** means, collectively, the Cash, accounts receivable, prepaid expenses, litigation claims and rights, Causes of Action, Avoidance Actions, and all other assets and property of the Debtor and the Debtor's Estate whatsoever, including any proceeds thereof, all of which will be transferred to the Liquidating Trust on the Effective Date.

***"Net Available Cash"*** means, at any time, the Cash held by the Liquidating Trust that is available for distribution to holders of Claims in accordance with the Plan.

***"Petition Date"*** means January 10, 2020, the date on which the petition was filed by the Debtor.

***"Plan"*** means this chapter 11 plan (including, without limitation, the Liquidating Trust Agreement, and all exhibits, supplements, appendices, and schedules annexed hereto or thereto), either in its present form or as the same may be altered, amended, modified, or supplemented from time to time in accordance with the terms and provisions hereof.

1    ***"Plan Proponent"*** means the Debtor.

2    ***"Priority Non-Tax Claim"*** means any Claim of an entity that is entitled to priority in right

3    of payment under Bankruptcy Code Sections 507(a)(3), (4), (5), (6), or (7).

4    ***"Priority Tax Claim"*** means any Claim of a Governmental Unit against the Debtor entitled

5    to priority in payment under Sections 502(i) and 507(a)(8) of the Bankruptcy Code; provided,

6    however, that any Claims for penalties asserted by a Governmental Unit shall not be Priority Tax

7    Claim.

8    ***"Pro Rata Share"*** means the proportion that a Claim bears to the sum of all Claims

9    (including Disputed Claims) within such Class or group of Classes for which an allocation is being

10    determined, unless the Plan provides otherwise with respect to such Claim or Claims.

11    ***"Professional Compensation and Reimbursement Claim"*** means an Administrative Claim

12    under Sections 330(a), 331, or 503 of the Bankruptcy Code for compensation of a professional or

13    other Entity for services rendered or expenses incurred in the Chapter 11 Case on or before the

14    Effective Date.

15    ***"Property"*** means, among other things, an approximately three-story, 80,046 square foot

16    shopping center on approximately 1.67 acres located at 450 S. Western, Los Angeles, California,

17    Assessor's Parcel Number 5503-014-020.

18    ***"Purchase and Sale Agreement"*** or ***"PSA"*** means the fully executed purchase and sale

19    agreement dated October 15, 2020 by and between the Debtor and Jake Sharp Capital, Notice of

20    which was filed November 13, 2020 and amended November 13, 2020 [Dkt. No. 250] and

21    subsequently amended November 20, 2020 [Dkt. No. 252].

22    ***"Released Parties"*** means each of the following in his/her/its capacity as such: (i) 450 S.

23    Western LLC as the Debtor; (ii) the Debtor's current officers, directors, and managers; and (iii) the

24    following professionals employed in this case: (a) Richard J. Laski ,Wilshire Partners of CA, LLC

25    as the Debtor's Chief Restructuring Officer, (b) Arent Fox LLP as the Debtor's general bankruptcy

26    and restructuring counsel, (c) the Law Offices of Daniel M. Shapiro as the Debtor's special

27    litigation counsel, (d) CBRE, Inc. as the Debtor's broker.

28

ARENT FOX LLP
ATTORNEYS AT LAW
LOS ANGELES

AFDOCS/23752166.3

1    *"Reserve"* or *"Reserves"* means any reserves set aside by the Liquidating Trustee pursuant

2    to this Plan or the Liquidating Trust Agreement in order to fund any Distribution or payment

3    pursuant to this Plan, including but not limited to any Claim that is Allowed or Disputed.

4    *"Sale"* means the sale of the Property as detailed in the PSA by and between the Debtor

5    and Jake Sharp Capital, as represented by Jake Sharp Group.

6    *"Sale Closing Date"* means December 14, 2020, the date on which the Sale of the Property

7    closed.

8    *"Sale Order"* means the Order of the Bankruptcy Court dated October 23, 2020 [Dkt. No.

9    241] approving the Sale of the Property under Section 363 of the Bankruptcy Code free and clear

10    of liens, claims, and encumbrances pursuant to the PSA.

11    *"Sale Proceeds"* means the approximately $57,500,000 in proceeds from the Sale of the

12    Property.

13    *"Schedules"* means the schedules of assets and liabilities, the lists of holders of Interests,

14    and the statement of financial affairs filed by the Debtor under Section 521 of the Bankruptcy Code,

15    Bankruptcy Rule 1007, as such schedules and statements have been or may be amended or

16    supplemented on or before the Effective Date.

17    *"Subordinated Claim"* means a Claim or a portion of any Claim subject to subordination

18    under Section 510 of the Bankruptcy Code.

19    *"Tax Code"* means the Internal Revenue Code of 1986, as amended from time to time.

20    *"Unimpaired"* means, with respect to a Claim, Class, or Interest, a Claim, Class, or Interest

21    that is not Impaired.

22    *"United States Trustee Fees"* means any fees or charges assessed against the Debtor's

23    Estate under Section 1930 of chapter 123 of title 28 of the United States Code.

24    **B.**    **Interpretation; Application of Definitions; Rules of Construction.**

25    Unless the context otherwise requires, any capitalized term used and not defined herein or

26    elsewhere in the Plan that is defined in the Bankruptcy Code shall have the meaning assigned to

27    that term in the Bankruptcy Code.  Wherever from the context it appears appropriate, each term

28    stated in either the singular or the plural shall include both the singular and the plural and pronouns

stated in the masculine, feminine, or neuter gender shall include the masculine, feminine, and neuter.  Unless otherwise specified, (a) all article, section, schedule, or exhibit references in the Plan are to the respective article of, section in, schedule to, or exhibit to the Plan, as the same may be altered, amended, modified, or supplemented from time to time in accordance with the terms and provisions hereof and (b) all references to dollars are to the lawful currency of the United States of America.  The words "herein," "hereof," "hereto," "hereunder," and other words of similar import refer to the Plan as a whole and not to any particular section, subsection, or clause contained in the Plan.  The rules of construction contained in Section 102 of the Bankruptcy Code shall apply to the construction of the Plan.  In computing any period of time prescribed or allowed by the Plan, unless otherwise expressly provided, the provisions of Bankruptcy Rule 9006(a) shall apply.  The headings in the Plan are for convenience of reference only and shall not limit or otherwise affect the provisions of the Plan.

*[Remainder of Page Intentionally Left Blank]*

1

Dated:   February 26, 2021

2

3

By: _____

4

Richard J. Laski,
Chief Restructuring Officer for the Debtor

5

and Debtor-In-Possession

6

**PRESENTED BY:**

7

8

Dated:   February 26, 2021                           **ARENT FOX LLP**

9

10

11

By:   _/s/  M. Douglas Flahaut_

12

Aram Ordubegian
M. Douglas Flahaut

13

Christopher K.S. Wong
Attorneys for the Debtor and Debtor-in-

14

Possession

15

16

17

18

19

20

21

22

23

24

25

26

27

28

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

# **EXHIBIT 1**

*Liquidating Trust Agreement*

## LIQUIDATING TRUST AGREEMENT
## FOR THE LIQUIDATING TRUST OF 450 S. WESTERN, LLC

This Liquidating Trust Agreement (the "Agreement") dated _____, 2021 and executed by and between Richard J. Laski, as the liquidating trustee (the "Liquidating Trustee") and 450 S. Western, LLC, the debtor and debtor-in-possession (the "Debtor"), in that certain chapter 11 bankruptcy case, Case No. 2:20-bk-10264-ER (the "Bankruptcy Case") pending in the United States Bankruptcy Court for the Central District of California (the "Bankruptcy Court") in connection with the *Debtor's First Amended Chapter 11 Plan of Liquidation, Dated February 26, 2021* (as amended, modified, or supplemented, the "Plan"). Capitalized terms used but not defined herein shall have the meaning ascribed to them in the Plan.

## RECITALS

WHEREAS, on January 10, 2020 (the "Petition Date") the Debtor filed a voluntary petition for relief under chapter 11 of title 11 of the United States Code (the "Bankruptcy Code");

WHEREAS, the Debtor's principal asset was that certain piece of real property commonly known as 450 S. Western Ave., Los Angeles California (the "Property").

WHEREAS, on or about September 23, 2020, the Debtor filed a motion to approve the sale of the Property pursuant to that certain Purchase and Sale Agreement with Evergreen Capital Assets, LP or its assignee, subject to overbids [Dkt. No. 188] (the "Sale Motion").

WHEREAS, after an auction held in open court on October 14, 2020 at 10:00 a.m. (Pacific standard time), Jake Sharp Capital (the "Buyer") was announced as the Successful Bidder for the Property at the final bid and purchase price of $57,500,000. On October 23, 2020, the Court entered its order approving the sale of the Property to the Buyer under 11 U.S.C. §§ 363(b) and (f) as Docket. No. 241.

WHEREAS, on November 30, 2020, the Debtor filed the *Notice of Filing of Stipulation re: Distribution of Sale Proceeds* [Dkt. No. 253], which *inter alia*, provides that upon closing of the sale, $11,419,486.00 shall be held in a segregated debtor-in-possession account (the "Segregated Account") pending resolution of certain disputed claims,

WHEREAS, on December 8, 2020, the Debtor filed its *Notice of Closing of Real Property* [Dkt. No. 257] to inform the Court and all interested parties that the sale of the Property to the Buyer closed on December 4, 2020.

WHEREAS, on February 26, 2021, the Debtor filed the Plan [Dkt. No. __] with the Bankruptcy Court, which amends and supersedes the initial chapter 11 plan of liquidation filed on January 27, 2021.

WHEREAS, on _____, 2021, the Bankruptcy Court entered an order confirming the Plan [Dkt. No. __] (the "Confirmation Order");

WHEREAS, the Plan and the Confirmation Order provides, *inter alia*, for the establishment of a liquidating trust (the "<u>Liquidating Trust</u>") for the benefit of its Beneficiaries (defined below) and for the appointment of the Liquidating Trustee as the trustee and manager of the Liquidating Trust.  The Plan provides for the creation of this Liquidating Trust to administer those Liquidating Trust Assets (as defined in the Plan) that have been distributed, transferred to, and vested in the Liquidating Trust for the benefit of the holders of Allowed Claims.  In accordance with the Plan, the Liquidating Trustee shall have exclusive control over all Liquidating Trust Assets after the Effective Date.

WHEREAS, the Liquidating Trustee has agreed to act as trustee under this Liquidating Trust Agreement;

WHEREAS, the Liquidating Trust is established for the sole purpose of administering Liquidating Trust Assets and implementing the Liquidating Trust Functions (defined below), in accordance with Treasury Regulations Section 301.7701-4(d), with no objective or authority to continue or engage in the conduct of a trade or business;

WHEREAS, the Liquidating Trust is intended to qualify as a liquidating trust within the meaning of Treasury Regulations Section 301.7701-4(d) that is treated as "grantor trust" for federal and applicable state income tax purposes;

NOW, THEREFORE, for and in consideration of the promises and mutual covenants herein contained, pursuant to the Plan, the parties do hereby covenant and agree as follows:

## ARTICLE I

### Definitions; Interpretive Rules.

1.1     <u>Terms Defined in the Plan</u>.  Any capitalized term used and not defined herein shall have the meaning assigned to it in the Plan.

1.2     <u>Interpretive Rules</u>.  For purposes of this Agreement, except as otherwise expressly provided herein or unless the context otherwise requires: (a) references to "Articles", "Sections", and other subdivisions, without reference to a particular document, are to be designated Articles, Sections, and other subdivisions of this Agreement; (b) the use of the term "including" means "including but not limited to"; and (c) the words "herein", "hereof", "hereunder", and other words of similar import refer to this Agreement as a whole and not to any particular provision (unless otherwise specified).  The enumeration and headings contained in this Agreement are for convenience of reference only and are not intended to have any substantive significance in interpreting this Agreement.  The singular shall include the plural and the singular, when the context so requires, and the feminine, the masculine, and the neuter genders shall be mutually inclusive.  Wherever the conjunctive (*e.g.*, "and") is used herein, it shall also be read as if phrased in the disjunctive (*e.g.*, "or"), and vice versa.

## ARTICLE II

### Establishment of the Liquidating Trust, Appointment of the Liquidating Trustee

2.1    <u>Creation of Trust and Appointment of Trustee</u>.  This Agreement hereby creates the Liquidating Trust, which shall be known as the "450 S. Western, LLC Liquidating Trust" and is the same Liquidating Trust referred to as the Liquidating Trust under the Plan. Pursuant to the Plan, the parties hereby establish the Liquidating Trust and appoint Richard. J. Laski as the Liquidating Trustee, effective as of the Effective Date.  Richard J. Laski hereby accepts such appointment.  On the Effective Date, the Liquidating Trust will become operative in order to carry out the Liquidating Trust Functions (defined below).  On the Effective Date or as soon thereafter as practicable, pursuant to the Plan and Sections 1123, 1141, and 1146(a) of the Bankruptcy Code, the Debtor and the Estate, as the case may be, will transfer, grant, assign, convey, set over, and deliver to the Liquidating Trustee, for the benefit of the Liquidating Trust, all of the Debtor's and Estate's right, title, and interest in and to the Liquidating Trust Assets, free and clear of all Liens, Claims, encumbrances, or interests of any kind in such property, except as otherwise provided for in the Plan.  On the Effective Date, and automatically and without further action, the Liquidating Trustee will have full power and authority as the trustee of the Liquidating Trust in accordance with the Plan and this Agreement. On and after the Effective Date, the Liquidating Trustee, on behalf of the Liquidating Trust, will take any and all actions as he believes may be necessary, desirable, or appropriate with respect to the Liquidating Trust, subject to the terms of the Plan and this Agreement.  The Liquidating Trust is organized and established as a trust for the benefit of the Beneficiaries and is intended to qualify as a liquidating trust within the meaning of Treasury Regulation Section 301.7701-4(d) (pursuant to the guidance set forth in IRS Revenue Procedure 94-45, 1994-2 C.B. 684) for the benefit of the Liquidating Trust Beneficiaries, and this Liquidating Trust is authorized to establish one or more disputed ownership funds within the meaning of Treasury Regulation Section 1.468B-9(b)(1). The Liquidating Trust will not be deemed a successor-in-interest of the Estate for any purpose other than as specifically set forth in the Plan and this Agreement.  This Agreement and the Liquidating Trust created pursuant to the Plan and this Agreement are hereby declared to be irrevocable and the Debtor shall not have any unilateral right at any time to withdraw any of the property held hereunder or to revoke, annul, or cancel the Liquidating Trust in whole or in part, or to alter, amend, or modify this Agreement in any respect.  In the event of any inconsistency between this Agreement, the Plan, and the Confirmation Order, the Confirmation Order and Plan, in that order, shall govern.

2.2    <u>Trust Name</u>.  The trust hereby created shall be known as the **450 S. Western, LLC Liquidating Trust**, in which name the Liquidating Trustee may, among other things, conduct the business of the Liquidating Trust, make and execute contracts on behalf of the Liquidating Trust, sue and be sued on behalf of the Liquidating Trust, and take such other actions as the Liquidating Trustee is authorized hereunder to take.

2.3    <u>Vesting of Estate Assets, Free and Clear of Liens</u>.  Upon the Effective Date, the Liquidating Trust will be vested with all right, title, and interest in the Liquidating Trust Assets, and such property will become the property of the Liquidating Trust, free and clear of all Claims, Liens, charges, other encumbrances, and Interests, except as otherwise provided for in the Plan.

# ARTICLE III

## Liquidating Trust, Purpose, Administration

3.1     Purpose of the Liquidating Trust.  The Liquidating Trust shall be established for the purpose of carrying out the Liquidating Trust Functions (defined below) and liquidating, distributing, and resolving claims to the Liquidating Trust Assets, in accordance with Treasury Regulations Section 301.7701-4(d), with no objective to continue or engage in the conduct of a trade or business.  Accordingly, the Liquidating Trustee shall, in an expeditious but orderly manner, carry out the Liquidating Trust Functions, liquidate and convert the Liquidating Trust Assets to Cash, make timely Distributions, and not unduly prolong the duration of the Liquidating Trust.

3.2     Governance of the Liquidating Trust.  The Liquidating Trust will be administered and controlled by the Liquidating Trustee.

3.3     Purpose of this Agreement and Liquidating Trust Functions.  The parties hereby enter into this Agreement for the purposes of establishing the Liquidating Trust contemplated by the Plan and authorizing the Liquidating Trustee to, among other things, implement and carry out the functions of the Liquidating Trust as follows: (a) establishing reserves and investing Cash; (b) selling or otherwise liquidating non-Cash assets of the Liquidating Trust; (c) retaining and paying professionals as necessary to carry out the purposes of the Liquidating Trust, without need of further Court approval or notice; (d) preparing and filing tax returns for the Liquidating Trust; (e) maintaining books and records, including preparing and filing reports and other documents necessary to conclude and close the Chapter 11 Case; (f) objecting to, reconciling, seeking to subordinate or recharacterize, resolving, compromising, or settling any or all Claims, including Disputed Claims, and administering Distributions on account of Allowed Claims; (g) marshalling, liquidating, and distributing the Litigation Trust Assets in an expeditious but orderly manner; (h) investigating, evaluating, filing, litigating, prosecuting, settling, or otherwise pursuing any Causes of Action (including, without limitation, Avoidance Actions); (i) abandoning Liquidating Trust Assets that cannot be sold or distributed economically; (j) making interim and final Distributions of Liquidating Trust Assets (after payment of or reserve for all Liquidating Trust expenses) to the Beneficiaries pursuant to this Agreement; (k) winding up the affairs of the Liquidating Trust and dissolving it under applicable law; (l) destroying records; (m) dissolving the Debtor at the appropriate time post-confirmation; (n) filing post confirmation operating reports; (o) filing any closing report(s) as may be required by Local Bankruptcy Rule 3020-1; (p) paying United States Trustee Fees until the entry of a final decree closing the Chapter 11 Case or conversion or dismissal of the Chapter 11 Case, whichever is earlier; and (q) such other responsibilities as may be vested in the Liquidating Trustee pursuant to the Plan, this Agreement or Bankruptcy Court order or as may be necessary and proper to carry out the provisions of the Plan (collectively, "Liquidating Trust Functions").

3.4     Administration of the Liquidating Trust Assets.  From and after the Effective Date, the Liquidating Trustee shall take all steps necessary to liquidate all Liquidating Trust Assets and distribute the proceeds in accordance with the Plan, Confirmation Order, and this Agreement, including selling, leasing, prosecuting, litigating, settling or otherwise

liquidating and reducing the Liquidating Trust Assets to Cash, or abandoning the Liquidating Trust Assets on such terms and for such consideration as he deems to be reasonable and in the best interests of the Beneficiaries.

3.5     Authority of the Liquidating Trustee. The Liquidating Trustee will serve as a fiduciary to the Beneficiaries of the Liquidating Trust and will be empowered to implement the Liquidating Trust Functions, effect all actions, execute and deliver all agreements, instruments, and other documents, make the distributions contemplated, and perform all of the obligations and agreements of the Liquidating Trust and/or of the Liquidating Trustee necessary to implement the provisions of the Plan and this Agreement (to the extent applicable) and otherwise in furtherance of the purposes of the Liquidating Trust. The Liquidating Trustee shall have absolute discretion to pursue, settle or abandon any Causes of Action as it determines is in the best interests of the Liquidating Trust's Beneficiaries and consistent with the purposes of the Liquidating Trust, and shall have no liability for the outcome of his decision, other than those decisions that constitute bad faith, willful misconduct, reckless disregard of duty, criminal conduct, gross negligence, fraud, or self-dealing, as determined by a Final Order entered by a court of competent jurisdiction. In all respects, the Liquidating Trustee and any professionals retained by the Liquidating Trustee shall be entitled to rely upon the advice of counsel with respect to understanding the scope of their duties and responsibilities under the Plan and this Agreement.

3.6     Expenses of the Liquidating Trust. The Liquidating Trust Assets will be used to pay all liabilities, costs, and expenses of the Liquidating Trust, including compensation then due and payable to the Liquidating Trustee, his agents, representatives, professionals, and employees and all costs, expenses, and liabilities incurred by the Liquidating Trustee in connection with the performance of his duties. The reasonable fees and expenses of the Liquidating Trustee and his counsel and agents will be paid from the Liquidating Trust Assets, without need of Bankruptcy Court approval, subject to the terms set forth in herein.

3.7     Tax Treatment of Liquidating Trust. For United States federal and applicable state income tax purposes, the transfer of the Liquidating Trust Assets to the Liquidating Trust pursuant to and in accordance with the Plan shall be treated as a disposition of such assets directly to and for the benefit of the Beneficiaries. The Beneficiaries will be treated as the grantors and owners of the Liquidating Trust. All earnings of the Liquidating Trust shall be currently taxable to the Beneficiaries in the year in which such earnings are realized, including earnings retained in any established reserves, in accordance with their respective rights to such earnings. The Liquidating Trust is intended to qualify as a liquidating trust that is treated as a "grantor trust" for federal income tax purposes, and the Liquidating Trustee shall use his best efforts to operate and maintain the Liquidating Trust in compliance with Internal Revenue Service Revenue Procedure 94-45, 1994-2 C.B. 684, and Treasury Regulation Sections 1.671-4(a) and 301.7701-4(d) and all subsequent guidelines regarding liquidating trusts issued by the Internal Revenue Service.

3.8     Incorporation of Plan. The Plan, as confirmed by the Confirmation Order, is hereby incorporated into this Agreement and made a part hereof by this reference.

## ARTICLE IV

### Debtor; Corporate Action; Winding-Up of Affairs

4.1     <u>Limited Existence</u>. Pursuant to the terms of the Plan and this Agreement, from and after the Effective Date, the Debtor shall remain in existence unless otherwise dissolved by the Liquidating Trustee and for the purpose of permitting the Liquidating Trustee to wind up the Debtor's affairs, if any, including liquidating the Liquidating Trust Assets and making all Distributions from the liquidation of the Liquidating Trust Assets to the holders of Allowed Claims in accordance with the provisions of the Plan.   Upon the completion of such liquidation and the material completion of all duties under the Plan and Confirmation Order, the Liquidating Trustee on behalf of the Debtor may file a certificate of dissolution or cancellation and other certificates or documents with the State of California to implement the termination of the legal existence of the Debtor.

4.2     <u>Board of Directors; Officers</u>.  As of the Effective Date, all members and officers of the Debtor shall be deemed to have resigned their positions and shall have no continuing rights or powers as such, nor shall they have any continuing duties or obligations as members of or officers of the Debtor, the Estate or the creditors of the Debtor.

## ARTICLE V

### Duties, Rights, and Powers of Liquidating Trustee

5.1     <u>Status of the Liquidating Trustee</u>.  The Liquidating Trustee, acting on behalf of the Liquidating Trust, shall be the "representative of the estate" as that phrase is used in Section 1123(b)(3)(B) of the Bankruptcy Code with respect to the rights and powers granted in this Agreement, the Plan, and Confirmation Order.  Except as otherwise set forth in the Plan and Confirmation Order, the Liquidating Trust shall be the successor-in-interest to the Debtor with respect to all Liquidating Trust Assets, including all Causes of Action that were or could have been commenced by the Debtor or the Estate before the Effective Date and shall be deemed substituted for the Debtor or the Estate, as the case may be, as the party in such action.  All Causes of Action, Claims, rights, or interests constituting Liquidating Trust Assets are preserved and retained and may be enforced by the Liquidating Trust as the representative of the Debtor and/or the Estate pursuant to Section 1123(b)(3)(B) of the Bankruptcy Code.  The Liquidating Trust shall be a party in interest as to all matters over which the Bankruptcy Court has jurisdiction and shall be the only party to have standing to file, prosecute, settle, or compromise all Liquidating Trust Assets, including all Causes of Action.  Further, for the avoidance of doubt, the Liquidating Trustee may bring, assert, pursue or settle Causes of Action under any primary director and officer liability, employment practices liability, or fiduciary liability insurance policies, as insolvency trustees, receivers, examiners, conservators, liquidators, rehabilitators or similar officials, as those terms are used in the policies of the Debtor.

5.2     <u>Duties of the Liquidating Trustee</u>.  The Liquidating Trustee shall have the exclusive right and duty to administer and liquidate the Liquidating Trust Assets, file, prosecute, litigate, compromise, settle, and abandon Causes of Action assigned and delivered to the Liquidating Trust, pursue and oversee the objections to and resolution of Claims and related

processes, collect all income, make Distributions to the Beneficiaries from the Liquidating Trust Assets, and make payments to other parties, all as provided in this Agreement, the Plan, and the Confirmation Order.

       5.3    <u>Standard of Care</u>.  The Liquidating Trustee shall exercise his rights and powers vested in him by this Agreement and use reasonable business judgment in his exercise of his duties.  Subject to applicable law, the Liquidating Trustee shall not be liable to the Liquidating Trust or any Beneficiary for any act he may do or omit to do as a Liquidating Trustee while acting in good faith and in the exercise of his reasonable business judgment.  The foregoing limitation on liability will apply equally to the agents, professionals, accountants, attorneys, and/employees of the Liquidating Trustee acting on behalf of the Liquidating Trustee in the fulfillment of the Liquidating Trustee's duties hereunder.

       5.4    <u>Bond</u>.  The Liquidating Trustee shall not be required to post a bond. However, the Liquidating Trustee is authorized at his discretion to obtain any bond he deems reasonable and appropriate and pay for such bond from the Liquidating Trust Assets.

       5.5    <u>Liquidating Trustee's Rights and Powers</u>.  The Liquidating Trustee shall act on behalf of the Liquidating Trust and, except as otherwise provided for under the Plan and this Agreement, shall be vested with all rights, powers, privileges, and benefits afforded to the Debtor's Estate and/or a "trustee" under Sections 704 and 1106 of the Bankruptcy Code, including, without limitation, the attorney-client and work product privilege, and shall be vested with any such rights, powers, privileges, and benefits of the Debtor and its Estate, including the right to assert the attorney-client privilege or any other privilege of and on behalf of the Debtor and the Estate, and the right to enforce contracts and assert claims, defenses, offsets, and privileges.  The Liquidating Trustee shall have all the powers and authority set forth in this Agreement, the Plan, and the Confirmation Order that are necessary to effect the disposition, orderly liquidation, and/or distribution of all Liquidating Trust Assets and proceeds thereof.  As of the Effective Date, the rights and powers of the Liquidating Trustee shall include, without further Bankruptcy Court approval, but subject to the limitations set forth in the Plan or the Confirmation Order, the rights and powers to:

       (a)    Liquidate or otherwise reduce to Cash the Liquidating Trust Assets in accordance with the Plan and this Agreement;

       (b)    resolve any matters related to the assumption, assumption and assignment, or rejection of any executory contract or unexpired lease to which a Debtor is a party or with respect to which a Debtor may be liable and to hear, determine and, if necessary, liquidate, any Claims arising therefrom;

       (c)    Settle, resolve, and object to Claims, and assert, file, prosecute, compromise and settle Causes of Action assigned and delivered to the Liquidating Trust, whether or not the Causes of Action or objections to Claims have been commenced before the Effective Date, and the Liquidating Trustee shall be substituted as the real party in interest in any such action or objection by or against the Debtor or the Estate, as the case may be;

(d)     assert, file, prosecute, compromise and settle any and all adversary proceedings, contested matters, applications, motions (including motions under Bankruptcy Rule 2004), or litigation matters that may be pending on the Effective Date or that, under the Plan, may be commenced after the Effective Date;

(e)     Make the payments provided for in the Confirmation Order, the Plan and this Agreement, including Distributions to the Liquidating Trust's Beneficiaries;

(f)     Determine, satisfy, object to, seek to allow, disallow, subordinate, recharacterize, determine, liquidate, classify, estimate, compromise, settle, or establish the priority, or secured or unsecured status, of any Claim, including Disputed Claims and any liabilities created, incurred, or assumed by the Liquidating Trust, in whole or in part;

(g)     Invest the Liquidating Trust Assets as set forth herein;

(h)     Establish, maintain, and administer any reserve as necessary and appropriate under the Plan, including a reserve for payment of the expenses of the Liquidating Trust;

(i)     Maintain and administer the Cash in the Liquidating Trust;

(j)     File post confirmation operating reports and file any closing report(s) as may be required by Local Bankruptcy Rule 3020-1;

(k)     Pay and satisfy from the Liquidating Trust Assets all Allowed Claims and Liquidating Trust expenses, including professional fees and expenses, and United States Trustee Fees until the entry of a final decree closing the Chapter 11 Case or conversion or dismissal of the Chapter 11 Case, which is earlier;

(l)     Enforce, carry out, and comply with the terms of the Plan, Confirmation Order, and this Agreement;

(m)     Enforce, carry out and perform the Liquidating Trustee's duties and Liquidating Trust Functions under this Agreement and the Plan;

(n)     Sell at public or private sale, or exchange, transfer, or convey, on such terms and conditions, and at such time or times as the Liquidating Trustee shall determine, any or all of the Liquidating Trust Assets; and to that end, grant options, make contracts, retain brokers, and sign, seal, acknowledge, and deliver any and all proper deeds, or other instruments of conveyance or transfer thereof; and delegate to an attorney-in-fact the power to execute all documents necessary to accomplish a sale, lease, transfer, or exchange of such property;

(o)     Obtain and maintain such space, facilities, equipment, supplies and personnel as shall be reasonably necessary for the performance of the Liquidating Trustee's duties hereunder and under the Plan and Confirmation Order;

(p)     Retain and employ counsel or special counsel, financial advisors, accountants, and other professionals and individuals in connection with the administration of the

Liquidating Trust or the liquidation of the Liquidating Trust Assets, and pay all reasonable and necessary costs of any litigation directly or indirectly involving the Debtor, the Estate, the Liquidating Trust, or the Liquidating Trust Assets;

(q)     Prepare and deliver written statements or notices, quarterly or otherwise, required by law or by the terms of this Agreement to be delivered to Beneficiaries;

(r)     When all Disputed Claims filed against the Debtor have become Allowed Claims or have been disallowed by Final Order, and all of the Liquidating Trust Assets have been liquidated and distributed in accordance with the Plan and this Agreement, seek authority from the Bankruptcy Court to close the Chapter 11 Case in accordance with the Bankruptcy Code and the Bankruptcy Rules;

(s)     If at any time the Liquidating Trustee determines, in reliance upon such professionals as the Liquidating Trustee may retain, that the expense of administering the Liquidating Trust so as to make a final distribution to the Beneficiaries is likely to exceed the value of the assets remaining in the Liquidating Trust, the Liquidating Trustee shall apply to the Bankruptcy Court for authority to (i) reserve any amounts necessary to close the Chapter 11 Case, (ii) donate the balance to a charitable organization exempt from federal income tax under Section 501(c)(3) of the Internal Revenue Code that is unrelated to the Liquidating Trust and the Liquidating Trustee, and (iii) close the Chapter 11 Case in accordance with the Bankruptcy Code and Bankruptcy Rules;

(t)     Hold legal title to any and all rights of the Beneficiaries in or arising from the Liquidating Trust or Liquidating Trust Assets;

(u)     Execute and file any and all documents, regulatory filings and transfer applications and take any and all other actions related to, or in connection with, the liquidation of the Liquidating Trust, the exercise of the Liquidating Trustee's powers granted herein and the enforcement of any and all instruments, contracts, agreements, Claims, or Causes of Action relating to the Liquidating Trust or the Liquidating Trust Assets;

(v)     Open and maintain bank accounts and deposit funds, draw checks and make disbursements in accordance with this Agreement and the Plan;

(w)     If necessary, prepare and file, or have prepared and filed, any and all tax and information returns with respect to the Liquidating Trust treating the Liquidating Trust as a grantor trust pursuant to Section 1.671-4(a) of the Treasury Regulations and pay taxes properly payable by the Liquidating Trust, if any, and make distributions to Beneficiaries net of any such taxes;

(x)     In the event the Liquidating Trustee determines that any of the Beneficiaries of the Liquidating Trust may, will or has become subject to adverse tax consequences, take such actions that in his reasonable discretion will, or are intended to, alleviate such adverse tax consequences, such as dividing the Liquidating Trust Assets into several trusts or other structures and/or paying certain Beneficiaries in a manner different than that originally contemplated hereunder (but not otherwise inconsistent with the provisions of this Agreement or

the Plan), provided, however, the Liquidating Trustee shall be under no obligation to take any such actions;

(y)     Withhold from the amount allocable, payable or distributable to any Entity such amount as may be sufficient or required to pay any tax or other charge which the Liquidating Trust has determined, in his reasonable discretion, is required to be withheld therefrom under the income tax laws of the United States or of any state or political subdivision thereof, and to pay or deposit such withheld tax with the appropriate governmental authority.  In the exercise of his discretion and judgment, the Liquidating Trustee may enter into agreements with taxing or other governmental authorities for the payment of such amounts as may be withheld in accordance with the provisions hereof;

(z)     Seek any relief from or resolution of any disputes concerning the Plan, the Liquidating Trust, or the Liquidating Trust Assets by the Bankruptcy Court or any other court of competent jurisdiction;

(aa)     Appear and participate in any proceeding before the Bankruptcy Court or any other court of competent jurisdiction with respect to any matter regarding or relating to this Agreement, the Plan, Confirmation Order, Liquidating Trust, or the Liquidating Trust Assets;

(bb)     Review and object to Professional Compensation and Reimbursement Claims; and

(cc)     Take such other actions as shall be necessary to implement the Plan, Confirmation Order, and the terms of this Agreement, wind down the affairs of the Liquidating Trust and effect the closing of the Chapter 11 Case, carry out the Liquidating Trust Functions and related obligations, exercise the Liquidating Trustee's rights and the Liquidating Trust's rights in accordance with and subject to the Plan and Confirmation Order, and perform all of the duties, responsibilities, and obligations as set forth in this Agreement.

5.6     Limitations on Liquidating Trustee.  For U.S. federal income tax purposes, the Liquidating Trustee shall not be authorized to engage in any trade or business with respect to the Liquidating Trust Assets or any proceeds therefrom except to the extent reasonably necessary to, and consistent with, the liquidating purpose of the Liquidating Trust.  The Liquidating Trustee shall take such actions consistent with the prompt orderly liquidation of the Liquidating Trust Assets as required by applicable law and consistent with the treatment of the Liquidating Trust as a liquidating trust under Treasury Regulations Section 301.7701-4(d), to the extent such actions are permitted by this Agreement.  The Liquidating Trustee shall, on behalf of the Liquidating Trust, hold the Liquidating Trust out as a trust in the process of liquidation and not as an investment company.  The Liquidating Trustee shall not become a market-maker for the Beneficial Interests (defined below) or otherwise attempt to create a secondary market for the Beneficial Interests.  The Liquidating Trustee shall be restricted to the liquidation of the Liquidating Trust Assets on behalf, and for the benefit, of the holders of Allowed Claims and the distribution and application of Liquidating Trust Assets for the purposes set forth in, and the conservation and protection of the Liquidating Trust Assets and the administration thereof in accordance with, the provisions of this Agreement, the Plan, and the Confirmation Order.

5.7    <u>Estimation of Claims</u>. The Liquidating Trustee, may (but is not required to) request that the Bankruptcy Court estimate any contingent Claim or Disputed Claim pursuant to Section 502(c) of the Bankruptcy Code for any reason, regardless of whether an objection was previously filed with the Bankruptcy Court with respect to such Claim or whether the Bankruptcy Court has ruled on any such objection, and the Bankruptcy Court will retain jurisdiction to estimate any Claim at any time during litigation concerning any objection to any Claim, including, without limitation, during the pendency of any appeal relating to such objection.  In the event that the Bankruptcy Court estimates any contingent Claim or Disputed Claim, the amount so estimated shall constitute either the Allowed amount of such Claim or a maximum limitation on such Claim, as determined by the Bankruptcy Court.  If the estimated amount constitutes a maximum limitation on the amount of such Claim, the Liquidating Trustee may pursue supplementary proceedings to object to the allowance of such Claim.  The Liquidating Trustee, is further authorized to file a Proof of Claim or Interest as provided under Section 501(c) of the Bankruptcy Code.

5.8    <u>Limitations on the Liquidating Trustee's Liabilities</u>.  The Liquidating Trustee, or any of his respective professionals, including attorneys, accountants, financial advisors, and legal advisors, shall not be responsible and shall not have any liability whatsoever to any person for any loss or liability the Debtor, the Estate, or the Liquidating Trust may sustain or incur, except as otherwise provided in this Agreement.

5.9    <u>Selection of Agents</u>.  The Liquidating Trustee may select, retain and employ, and determine compensation for, any professionals, including accountants, financial advisors, legal advisors, brokers, consultants, custodians, investment advisors, asset services, auditors, and other agents, as the Liquidating Trustee deems necessary (collectively, the "<u>Trustee Professionals</u>") to assist in carrying out the Liquidating Trustee's duties, with the reasonable fees and expenses of such professionals to be paid by the Liquidating Trust.  Subject to the Plan and this Agreement, the Liquidating Trustee may pay the salaries, fees, and expenses of such Entities out of the Liquidating Trust Assets.  The Liquidating Trustee shall not be liable for any loss to the Debtor, the Estate, or the Liquidating Trust or any person interested therein, including Beneficiaries, by reason of any mistake or default of any such agent or consultant.

5.10    <u>Signature</u>.  As of the Effective Date of the Plan, the Liquidating Trustee shall have the signature power and authority on behalf of the Liquidating Trust to (a) open and close accounts with any banking, financial or investment institution; (b) make deposits and withdrawals of cash and other property into or from any such account; (c) make or endorse checks with respect to any such account; and (d) effectuate purchases and sales of securities and give security purchase and sale orders to brokers or any other third parties, and the exercise of such power and authority shall be deemed to be authorized by and to represent the decision of the Liquidating Trustee then entitled to make such decision.

5.11    <u>Maintenance of Register</u>.  The Liquidating Trustee shall at all times maintain or cause to be maintained a register of the Claims and the Liquidating Trust's Beneficiaries, which shall include the names and addresses of each Beneficiary, the amount of each Beneficiary's Allowed Claim(s), and the amounts paid to each Beneficiary by the Liquidating Trust.

5.12    Liability of Liquidating Trustee.

(a)    Liability; Indemnification.  The Liquidating Trustee, the Trustee Professionals, and the Liquidating Trustee's employees and agents, shall not in any way be liable for any acts or omissions to act except by reason of their willful misconduct, reckless disregard of duty, criminal conduct, gross negligence, or fraud, in the performance of their duties under the Plan, Confirmation Order, or this Agreement.  The Liquidating Trust shall indemnify the Liquidating Trustee, the Trustee Professionals, and the Liquidating Trustee's employees and agents and hold them harmless from and against any and all liabilities, expenses, claims, damages, and losses incurred by them as a direct result of actions taken or omissions to act by them in such capacity or otherwise related to this Agreement or the Liquidating Trust.  The Liquidating Trust shall indemnify and hold harmless any Entity who was, or is, a party, or is threatened to be made a party, to any pending or contemplated action, suit or proceeding, whether civil, criminal, administrative or investigative, by reason of the fact that such Entity is or was the Liquidating Trustee, a Trustee Professional, or the Liquidating Trustee's employee or agent, against all costs, expenses, judgments, fines, and amounts paid in settlement actually and reasonably incurred by such Entity in connection with such action, suit or proceeding, or the defense or settlement of any claim, issue or matter therein, to the fullest extent permitted by applicable law, unless such costs and expenses, judgments, fines or amounts paid in settlement are found in a final, non-appealable judgment by a court of competent jurisdiction to have resulted from such Entity's willful misconduct, reckless disregard of duty, gross negligence, or fraud, in the performance of their duties under the Plan, Confirmation Order, or this Agreement.  Costs or expenses incurred by any Entity entitled to the benefit of the provisions of this Section 5.12 in defending any such action, suit, or proceeding may be paid by the Liquidating Trust in advance of the institution or final disposition of such action, suit or proceeding, if authorized by the Liquidating Trustee, subject to providing an undertaking to repay all such advanced amounts if it is subsequently determined that such Entity is not entitled to indemnification under this Section.  Any dispute regarding such indemnification of the Liquidating Trustee shall be resolved only by the Bankruptcy Court, which shall retain jurisdiction over matters relating to the indemnification provided under this Section.  The Liquidating Trustee may in his discretion purchase and maintain insurance on behalf of any Entity who is or was a beneficiary of this provision.  Promptly after receipt by an indemnified party or parties (the "Indemnified Party") of notice of any claim, or notice of commencement of any action, suit, or proceeding by an Entity other than the Liquidating Trustee, in respect of which the Indemnified Party may seek indemnification from the Liquidating Trust pursuant to this Section, the Indemnified Party, if not the Liquidating Trustee, shall notify the Liquidating Trustee of such claim, action, suit or proceeding and shall thereafter promptly convey all further communications and information in respect thereof to the Liquidating Trustee.  If the Indemnified Party is the Liquidating Trustee, the Liquidating Trustee shall notify the Bankruptcy Court of such claim, action, suit, or proceeding and shall thereafter promptly convey all further communications and information in respect thereof to the Bankruptcy Court.  The Liquidating Trustee shall, if it so elects, have sole control at the expense of the Liquidating Trust over the contest, settlement, adjustment, or compromise of any claim, action, suit, or proceeding in respect of which this Section requires that the Liquidating Trust indemnify the Indemnified Party.  If the Liquidating Trustee is the Indemnified Party, he shall obtain the written approval of Bankruptcy Court before settling, adjusting, or compromising any claim, action suit, or proceeding in respect of which this Section requires that the Liquidating Trust indemnify the Indemnified Party.  The Indemnified Party shall

cooperate with the reasonable requests of the Liquidating Trustee in connection with such contest, settlement, adjustment, or compromises, provided that (i) the Indemnified Party may, if it so elects, employ counsel at its own expense to assist in (but not control) the handling of such claim, action, suit, or proceeding, (ii) the Liquidating Trustee shall obtain the prior written approval of the Indemnified Party before entering into any settlement, adjustment, or compromise of such claim, action, suit, or proceeding, or ceasing to defend against such claim, action, suit, or proceeding, if pursuant thereto or as a result thereof injunction or other relief would be imposed upon the Indemnified Party, and (iii) the Indemnified Party shall obtain the prior written approval of the Liquidating Trustee, or, if the Liquidating Trustee is the Indemnified Party, the prior written approval of the Bankruptcy Court, before entering into any settlement, adjustment or compromise of such claim, action, suit, or proceeding, or ceasing to defend against such claim, action, suit, or proceeding, and no such settlement, adjustment, or compromise shall be binding on the Liquidating Trust without such approval.

(b)    _Exculpation Relating to the Liquidating Trust_.  No holder of a Claim or Interest or any other party in interest will have, or otherwise pursue, any claim or cause of action against the Liquidating Trustee, the Liquidating Trust or the employees or professionals thereof (solely in the performance of their duties), for making payments and Distributions in accordance with the Plan or for fulfilling any functions incidental to implementing the provisions of the Plan or this Agreement, _except_ for, and as determined by a Final Order entered by a court of competent jurisdiction, willful misconduct, reckless disregard of duty, gross negligence, or fraud; and in all respects, the Liquidating Trustee and any professionals retained by the Liquidating Trustee shall be entitled to rely upon the advice of counsel with respect to understanding the scope of their duties and responsibilities under this Plan and the Liquidating Trust Agreement.

(c)    _No Liability for Acts of Predecessor_.  No successor Liquidating Trustee shall be in any way responsible for the acts or omissions of any Liquidating Trustee in office before the date on which such person becomes a Liquidating Trustee, nor shall he be obligated to inquire into the validity or propriety of any such act or omission, unless such successor Liquidating Trustee expressly assumes such responsibility.  Any successor Liquidating Trustee shall be entitled to accept as conclusive any final accounting and statement of the Liquidating Trust Assets furnished to such successor Liquidating Trustee by such predecessor Liquidating Trustee and shall further be responsible only for those Liquidating Trust Assets included in such statement.

(d)    _No Implied Obligations_.  The Liquidating Trustee shall not be liable except for the performance of such duties and obligations as are specifically set forth herein, in the Plan and Confirmation Order, and no other or further covenants or obligations shall be implied into this Agreement.  The Liquidating Trustee shall not be responsible in any manner whatsoever for the correctness of any recitals, statements, representations, or warranties herein or in any documents or instrument evidencing or otherwise constituting a part of the Liquidating Trust Assets.  The Liquidating Trustee makes no representations as to the value of the Liquidating Trust Assets or any part thereof, nor as to the validity, execution, enforceability, legality, or sufficiency of this Agreement; and the Liquidating Trustee shall incur no liability or responsibility with respect to any such matters.

13

(e)    Reliance by Liquidating Trustee on Documents or Advice of Counsel or Other Entities.  Except as otherwise provided herein, the Liquidating Trustee may rely and shall be protected in acting upon any resolution, certificate, statement, instrument, opinion, report, notice, request, consent, order, and other paper or document reasonably believed to be genuine and to have been signed or presented by the proper party or parties, and shall have no liability or responsibility with respect to the form, execution, or validity thereof.  None of the provisions hereof shall require the Liquidating Trustee to expend or risk his own funds or otherwise incur financial liability or expense in the performance of any duties hereunder.

(f)    No Personal Obligation for Debtor's Liabilities.  Beneficiaries, holders of Claims, holders of Interests, or other persons dealing with the Liquidating Trustee in his capacity as Liquidating Trustee within the scope of this Agreement shall look solely to the Liquidating Trust Assets to satisfy any liability incurred by the Liquidating Trustee to such person in carrying out the terms of this Agreement, and the Liquidating Trustee shall have no personal or individual obligation to satisfy any such liability.

5.13    Establishment of Trust Accounts.  The Liquidating Trustee may establish or cause to be established and maintained any accounts needed in connection with the purposes of the Liquidating Trust (the "Trust Account").  Such accounts shall be maintained only at FDIC insured financial institutions and shall bear a designation clearly indicating that the funds deposited therein are held for the benefit of the Liquidating Trust.

5.14    Investment of Cash.  Cash in the Trust Account and any other amounts contemplated by this Agreement shall be maintained in United States dollars or shall be invested by the Liquidating Trustee in (i) direct obligations of, or obligations guaranteed by, the United States of America, (ii) obligations of any agency or corporation that is or may hereafter be created by or pursuant to an act of Congress of the United States of America as an agency or instrumentality thereof, or (iii) such other obligations or instruments as may from time to time be permitted under Section 345 of the Bankruptcy Code; provided that the Liquidating Trustee may, to the extent necessary to implement the provisions of the Plan and this Agreement, deposit moneys in demand deposits, time accounts or checking accounts at any banking institution or trust company having combined capital stock and surplus in excess of $100,000,000 based upon its most recently available audited financial statements, regardless of whether such investments and deposits are insured or as otherwise provided in Section 5.13 above; provided further, that in all cases, investments by the Liquidating Trustee in accordance with this Section 5.14 shall be made only in such investments that a liquidating trust, within the meaning of Treasury Regulations Section 301.7701-4(d), may be permitted to hold, pursuant to the Treasury Regulations, or any modification in the IRS guidelines, whether set forth in IRS rulings, other IRS pronouncements or otherwise.  Such investments shall mature in such amounts and at such times as the Liquidating Trustee, in his discretion, shall deem appropriate to provide funds when needed to transfer funds in accordance with the Plan and Confirmation Order, make payments to the Trust Accounts or make Distributions in accordance with this Agreement and the Plan and Confirmation Order.  The Liquidating Trust may not retain cash or cash equivalents in excess of a reasonable amount to meet claims and contingent liabilities or to maintain the value of the Liquidating Trust Assets in liquidation or maintain or fund on adequate and sufficient reserve.

5.15    <u>Tax Returns</u>.  From and after the Effective Date, to the extent required, the Liquidating Trustee shall be responsible for the preparation and filing of any and all federal and state tax returns or other filings as required by law to be filed on behalf of the Liquidating Trust. Such returns shall be consistent with the treatment of the Liquidating Trust as a liquidating trust within the meaning of Treasury Regulations Section 301.7701-4(d) that is a grantor trust pursuant to Section 1.671-4(a) of the Treasury Regulations.

5.16    <u>Compensation of the Liquidating Trustee.</u>  Beginning at the Effective Date and subject to the Plan and the Confirmation Order, the Liquidating Trustee shall be entitled to receive reimbursement of reasonable, actual and necessary costs, fees (including attorneys' fees) and expenses incurred by the Liquidating Trustee in connection with the performance of his duties hereunder.  The Liquidating Trustee's hourly rate for services provided to the Liquidating Trust shall be $750 per hour, which is the same market rate generally charged by the Liquidating Trustee for his services.  The Liquidating Trustee shall provide to the Beneficiaries quarterly financial reports summarizing the financial activity of the Liquidating Trust which will include, among other things, the Liquidating Trustee's hours worked and fees received for the preceding quarter.

5.17    <u>Reimbursements of Expenses</u>.  In addition to compensation received pursuant to Section 5.16, the Liquidating Trustee, any agents or consultants employed pursuant to this Agreement, and Trustee Professionals shall be reimbursed from the Liquidating Trust Assets for all reasonable out-of-pocket expenses incurred in the performance of their duties hereunder.

5.18    <u>Reimbursement of the Liquidating Trustee's and Trustee Professionals' Fees and Expenses</u>. Pursuant to the terms of the Plan, Confirmation Order, and this Agreement, the Liquidating Trustee may pay from the Liquidating Trust Assets all reasonable fees and expenses incurred in connection with the duties and actions of the Liquidating Trustee, including, but not limited to, fees and expenses of any Trustee Professionals retained under this Agreement and fees and expenses to pay insurance, taxes, and other expenses arising in the ordinary course of business in maintaining, liquidating, disposing of, and distributing the Liquidating Trust Assets and compensation to the Liquidating Trustee.

## ARTICLE VI

## Beneficiaries

6.1    <u>Identification of Beneficiaries</u>.  The Liquidating Trust is created for the benefit of the holders of Allowed Claims as defined in the Plan (the "<u>Beneficiaries</u>").  The Beneficiaries shall each have an undivided beneficial interest in the assets of the Liquidating Trust ("<u>Beneficial Interest</u>").

6.2    <u>Rights of Beneficiaries</u>.  Each Beneficiary shall be entitled to participate in the rights due to a Beneficiary hereunder and in the Plan.  Each Beneficiary shall take and hold its Beneficial Interest subject to all in the terms and provisions of this Agreement and the Plan. The Beneficial Interests shall not be certificated.  No Beneficiary shall have legal title to any part of the Liquidating Trust Assets.  The interest of a Beneficiary of the Liquidating Trust is in all

respects personal property, and upon the death, insolvency or incapacity of an individual Beneficiary, such Beneficiary's Beneficial Interest shall pass to the legal representative of such Beneficiary.  A Beneficiary shall have no title to, or any right to possess, manage or control, the Liquidating Trust Assets, or any portion thereof or interest therein, except as expressly provided herein.  No surviving spouse, heir, or devisee of any deceased Beneficiary shall have any right of dower, homestead or inheritance, or of partition, or any other right, statutory or otherwise, in the Liquidating Trust Assets, but the whole title to all the Liquidating Trust Assets shall be vested in the Liquidating Trustee and the sole interest of the Beneficiaries shall be the rights and benefits provided to such persons under this Agreement and the Plan.

## ARTICLE VII

### Distributions

7.1    <u>Distributions under the Plan</u>.  Subject to the terms of the Plan and the Confirmation Order, distributions by the Liquidating Trust under the Plan shall be made as follows:

(a)    The Liquidating Trustee will make Distributions to holders of Administrative Expense Claims Allowed after the Effective Date, Compensation and Reimbursement Claims Allowed after the Effective Date, Priority Tax Claims Allowed after the Effective Date, Other Priority Claims Allowed after the Effective Date, to the extent that the foregoing Claims have not been paid in full on or before the Effective Date or otherwise in accordance with the Plan.

(b)    The Liquidating Trust will make Distributions from the Liquidating Trust Assets in respect of all other Allowed Claims against the Estate.

(c)    Distributions to be made by the Liquidating Trust may be made by any Person(s) designated or retained to serve as the disbursing agent(s) without the need for any further order of the Bankruptcy Court.

(d)    The Liquidating Trustee shall be authorized, in his discretion, to delay Distributions to holders of Beneficial Interests or otherwise determine reasonable distribution dates for such holders, including, without limitation, based upon the status and progress of the liquidation of Liquidating Trust Assets, the total number of and/or asserted claim amounts of Disputed Claims, and any other relevant factors.

7.2    <u>Distributions on Account of Disputed Claims</u>.  Except as otherwise provided in the Plan, by Final Order or as agreed by the relevant parties, Distributions on account of Disputed Claims that become Allowed after the Effective Date will be made by the Liquidating Trustee at such periodic intervals as the Liquidating Trustee determines to be reasonably prudent.

7.3    <u>No Distributions Pending Allowance</u>.  Notwithstanding anything herein to the contrary: (a) no Distribution will be made with respect to any Disputed Claim until such Claim becomes an Allowed Claim, and (b) unless determined otherwise by the Liquidating Trustee, no Distribution will be made to any Person that holds both (i) an Allowed Claim and (ii)

a Disputed Claim until such Person's Disputed Claim has been resolved by settlement or Final Order.

7.4     Objection Deadline.  On and after the Effective Date, the Liquidating Trustee shall be entitled to file objections to all Claims and Interests that are otherwise not deemed Allowed Claims or Interests, including Claims listed on the Debtor's Schedules, under the Plan, or otherwise.  Any objections to Claims shall be served and filed on or before the later of (i) 90 days after the Effective Date or (ii) such later date as may be fixed by the Bankruptcy Court after reasonable notice and opportunity to object.

7.5     Disputed Claims Reserve.

(a)     On and after the Effective Date, the Liquidating Trust will maintain in reserve such Cash as the Liquidating Trust estimates to be reasonably necessary to satisfy the Distributions to holders of Beneficial Interests that could be required to be made under the Plan and the Liquidating Trust Agreement (the "Disputed Claims Reserve").

(b)     The Liquidating Trustee may, in the Liquidating Trustee's sole discretion, determine the best way to report for tax purposes with respect to any reserve for Disputed Claims Reserve, including (i) filing a tax election to treat any and all reserves for Disputed General Unsecured Claims as a Disputed Ownership Fund ("DOF") within the meaning of Treasury Income Tax Regulation Section 1.468B-9 for federal income tax purposes rather than to tax such reserve as a part of the Liquidating Trust or (ii) electing to report as a separate trust or sub-trust or other entity.  If an election is made to report any reserve for disputed claims as a DOF, the Liquidating Trust shall comply with all federal and state tax reporting and tax compliance requirements of the DOF, including but not limited to the filing of a separate federal tax return for the DOF and the payment of federal and/or state income tax due.

7.6     Settling Disputed Claims or Interests.  The Liquidating Trustee will be authorized to settle, or withdraw any objections to, any Disputed Claims following the Effective Date without need for approval of the Bankruptcy Court.

7.7     Distributions in Cash.  The Liquidating Trustee will make any required Cash payments to the holders of Allowed Claims by checks drawn on accounts maintained by the Liquidating Trustee, or by wire transfer if the circumstances justify, at the option of the Liquidating Trustee.

7.8     Unclaimed Distributions.  In the event that any distribution to any holder of a Claim or Existing Equity Interest is returned to the Liquidating Trustee as undeliverable, no further distributions shall be made to such holder unless and until the Liquidating Trustee is notified, in writing, of such holder's then-current address.  Undeliverable distributions shall remain in the possession of the Liquidating Trustee until such time as a distribution becomes deliverable; provided, however, that such distributions shall be deemed unclaimed property under Section 347(b) of the Bankruptcy Code at the expiration of ninety (90) days after Distribution.  After such date, all unclaimed property or interest in property shall become Net Available Cash for distribution under the terms of the Plan, and the Claim of any other holder to such property or interest in property shall be discharged and forever barred, notwithstanding any

applicable federal or state escheat, abandoned, or unclaimed property laws to the contrary.  All Entities ultimately receiving undeliverable Cash shall not be entitled to any interest or other accruals of any kind.  Nothing contained in this Agreement shall require the Liquidating Trustee to attempt to locate any holder of an Allowed Claim.  After such date, all unclaimed property or interest in property shall revert to the Liquidating Trust to be distributed in accordance with the terms of this Agreement and the Plan, and the Claim of any other holder to such property or interest in property shall be discharged and forever barred.

7.9    Setoff.  The Debtor and the Liquidating Trustee, pursuant to the Bankruptcy Code (including Section 553 of the Bankruptcy Code), applicable bankruptcy or nonbankruptcy law, with the approval of the Bankruptcy Court and upon no less than three (3) days' notice to the applicable holder of a Claim or Interest, or as may be agreed to by the holder of a Claim or Interest, may, but shall not be required to, set off against any Allowed Claim or Interest and the Distributions to be made pursuant to the Plan on account of such Allowed Claim or Interest (before any Distribution is to be made on account of such Allowed Claim or Interest), any claims of any nature whatsoever that the Debtor may have against the holder of such Allowed Claim or Interest, *provided*, *however*, that neither the failure to effect such a setoff nor the allowance of any Claim or Interest under the Plan shall constitute a waiver or release by the Debtor or the Liquidating Trustee of any such claim the Debtor may have against the holder of such Claim or Interest.

7.10    Taxes.  Pursuant to Section 346(f) of the Bankruptcy Code, the Liquidating Trustee will be entitled to deduct and withhold any federal, state, or local taxes from any Cash payments made with respect to Allowed Claims. The Liquidating Trustee will be authorized to take all actions necessary to comply with applicable withholding and recording requirements. Notwithstanding anything herein to the contrary, each holder of an Allowed Claim that has received a Distribution of Cash under the Plan will have sole and exclusive responsibility for the satisfaction or payment of any tax obligation imposed by any governmental unit, including income, withholding and other tax obligation, on account of such distribution. For tax purposes, Distributions received in respect of Allowed Claims will be allocated first to the principal amount of such Claims, with any excess allocated to unpaid accrued interest.

7.11    Legal Proceedings.  If any Causes of Action or Avoidance Actions are asserted and if such claims or any other legal proceedings are initiated or prosecuted against any Creditor pursuant to the Plan, Confirmation Order, or this Agreement, or asserted as an objection to any Claim, then notwithstanding anything to the contrary contained in the Plan or Confirmation Order, until such proceeding or contested matter is finally resolved and all payments to the Debtor's Estate required by such resolution have been made, such Creditor shall only receive Distributions under the Plan or Confirmation Order to the extent that the distributions to which such Creditor is otherwise entitled exceed the maximum liability of such Creditor to the Debtor's Estate asserted in such proceedings.

7.12    De Minimis Distributions.  No payment of Cash in an amount of less than twenty-five dollars ($25.00) shall be required to be made on account of any Allowed Claim. Such undistributed amount may instead be used in accordance with the Plan and this Agreement.

18

7.13    <u>Abandonment</u>.  Notwithstanding anything to the contrary in the Plan, if in the Liquidating Trustee's reasonable judgment, any Liquidating Trust Assets cannot be sold or distributed in a commercially reasonable manner or the Liquidating Trustee believes in good faith that such property has inconsequential value to the Liquidating Trust or its Beneficiaries or determines to be too impractical to distribute to Beneficiaries, the Liquidating Trustee shall have the right to cause the Liquidating Trust to abandon or otherwise dispose of such property, including by donation of such property to a charity.

## ARTICLE VIII

## Removal or Resignation of the Liquidating Trustee

8.1    <u>Removal of the Liquidating Trustee</u>.  The Liquidating Trustee appointed pursuant to the Plan, Confirmation Order and this Agreement may be removed for "cause" upon order of the Bankruptcy Court after notice and opportunity for a hearing. For purposes of this Agreement, the term "cause" shall mean (a) the Liquidating Trustee's gross negligence, willful misconduct or willful failure to perform his duties under the Plan, the Confirmation Order, and this Agreement or (b) the Liquidating Trustee's misappropriation or embezzlement of any Liquidating Trust Assets or the proceeds thereof.  If a Liquidating Trustee is removed for cause, such Liquidating Trustee shall not be entitled to any accrued but unpaid fees, reimbursements or other compensation under this Agreement or otherwise.  If the Liquidating Trustee is removed by the Bankruptcy Court other than for "cause", or is unwilling or unable to serve (a) by virtue of his inability to perform his duties under this Agreement due to death, illness, or other physical or mental disability, or (b) for any other reason whatsoever other than for "cause," subject to a final accounting, the Liquidating Trustee shall be entitled to all accrued and unpaid fees, reimbursement, and other compensation, to the extent incurred or arising or relating to events occurring before such removal, and to any out-of-pocket expenses reasonably incurred in connection with the transfer of all powers and duties and all rights to any successor Liquidating Trustee.

8.2    <u>Resignation of the Liquidating Trustee</u>.  The Liquidating Trustee may resign as Liquidating Trustee at any time by giving prior written notice thereof to the Bankruptcy Court (the "<u>Notice</u>"); *provided*, *however*, that such resignation shall not be effective until thirty (30) days after the date of such Notice, unless an earlier effective date is allowed by the Bankruptcy Court.  If the Liquidating Trustee resigns from his position hereunder, subject to a final accounting, he shall be entitled to all accrued unpaid fees, reimbursement, and other compensation to the extent incurred or arising or relating to events occurring before such resignation, and any out-of-pocket expenses reasonably incurred in connection with the transfer of all powers and duties to the successor Liquidating Trustee.

8.3    <u>Successor to the Liquidating Trustee</u>.  In the event that the Liquidating Trustee is removed, resigns, or otherwise ceases to serve as Liquidating Trustee, a successor Liquidating Trustee shall be appointed by the outgoing Liquidating Trustee subject to approval by the Bankruptcy Court, after appropriate notice to the Beneficiaries.  The successor Liquidating Trustee, without any further act, will become fully vested with all of the rights, powers, duties, and obligations of his or her predecessor.

## ARTICLE IX

### Effect of the Agreement on Third Parties

9.1     There is no obligation on the part of any person dealing with the Debtor's Estate, the Debtor, the Receiver, the Liquidating Trustee, or the Trustee Professionals, to see to the application of the money or other consideration paid or delivered to the Liquidating Trustee, or any agent of the Liquidating Trustee, or to inquire into the validity, expediency, or propriety of any such transaction, or the authority of the Liquidating Trustee, or any agent of the Liquidating Trustee, to enter into or consummate the same, except upon such terms as the Liquidating Trustee may deem advisable.

## ARTICLE X

### Waiver

10.1     No failure or delay of any party to exercise any right or remedy pursuant to this Agreement shall affect such right or remedy or constitute a waiver by such party of any right or remedy pursuant thereto.  Resort to one form of remedy shall not constitute a waiver of alternative remedies.

## ARTICLE XI

### Termination of the Agreement and Amendment

11.1     <u>Termination of the Agreement</u>.  This Agreement (other than Sections 5.12, 5.17, 5.18, and related provisions) shall terminate and the Liquidating Trust shall dissolve and terminate and be of no further force or effect upon the earlier to occur of (i) the final Distribution of all monies and other Liquidating Trust Assets in accordance with the terms of this Agreement, the Plan and Confirmation Order and (ii) entry of a Final Order of the Bankruptcy Court terminating and dissolving the Liquidating Trust as provided under the Plan; *provided, however*, that the Liquidating Trust will terminate no later than the third (3rd) anniversary of the Effective Date, *provided, further*, that the Liquidating Trustee shall, in his sole discretion, be authorized to extend the dissolution date to the fifth (5th) anniversary of the creation of the Liquidating Trust with prior Bankruptcy Court approval if it is necessary to facilitate or complete the liquidation and distribution of the Liquidating Trust Assets.  If warranted by the facts and circumstances involved in resolving any Causes of Action, upon application to, and if approved by, the Bankruptcy Court upon a finding such further extension is necessary for purposes of resolving such Causes of Action and distributing the proceeds to Liquidating Trust's Beneficiaries, the term of the Liquidating Trust may be further extended by the Liquidating Trustee for a specified, finite term.  The Liquidating Trustee will not unduly prolong the duration of the Liquidating Trust and will at all times endeavor to resolve, settle or otherwise dispose of all Claims and the Liquidating Trust Assets, to effect Distributions to Beneficiaries in accordance with the terms hereof, the Plan and Confirmation Order and to terminate the Liquidating Trust as soon as practicable in a prompt and timely fashion.  In the event that the Liquidating Trustee elects to

terminate the Liquidating Trust, he shall provide twenty-one (21) day's prior notice thereof to the Office of United States Trustee, and file such notice with the Bankruptcy Court and upon such termination, the Liquidating Trustee shall cease to act as the Liquidating Trustee, such that the Liquidating Trustee shall not have any further duties or responsibilities under the Agreement or otherwise.

      11.2   <u>Amendment of the Agreement</u>.  Except as otherwise set forth herein, any provisions of this Agreement may be amended, modified, terminated, revoked, or altered only in writing by the Liquidating Trustee and pursuant to an Order of the Bankruptcy Court. Notwithstanding this Section 11.2, any amendment to this Agreement shall not be inconsistent with the purpose and intention of the Liquidating Trust to liquidate in an expeditious but orderly manner the Liquidating Trust Assets in accordance with Treasury Regulations Section 301.7701-4(d) and this Agreement.

## ARTICLE XII

### Miscellaneous

      12.1   <u>Intention of Parties to Establish the Liquidating Trust</u>.  This Agreement is not intended to create, and shall not be interpreted as creating, an association, partnership or joint venture of any kind.  It is intended as a trust to be governed and construed in all respects as a trust.

      12.2   <u>Filing Documents</u>.  A copy of this Agreement and all amendments thereof shall be maintained in an office or residence of the Liquidating Trustee and shall be available for inspection.

      12.3   <u>Books and Records</u>.

      (a)   On the Effective Date and on such dates thereafter as the Liquidating Trustee may request, the Debtor shall transfer to the Liquidating Trust all of the books and records of the Debtor in the Debtor's possession, and shall instruct any third parties or professionals possessing such books and records (including computer generated or computer maintained books, records and data, legal and accounting files maintained by any professional of the Debtor and other of the Debtor's books and records maintained by or in the possession of third parties), to turn over or permit access to (at the election of the party to whom the request is made) such books and records as may be reasonably requested by the Liquidating Trustee, *provided that* the Liquidating Trustee shall only request such books and records or access thereto to the extent reasonably necessary to the Liquidating Trustee's performance of his duties hereunder, *provided*, *further*, that unless otherwise provided in the Plan or this Agreement, the out of pocket expenses of complying with any such request shall not be borne by the party upon whom the request is made, absent agreement to the contrary.

      (b)   The Liquidating Trust will retain those documents maintained by the Debtor in the ordinary course of business.  Following the Effective Date, the Liquidating Trustee is authorized to destroy any documents it deems necessary or appropriate in his reasonable judgment; *provided*, *however*, that the Liquidating Trustee will not destroy any documents,

including but not limited to tax documents, that the Liquidating Trust is required to retain under applicable law.

        12.4    <u>Tax Identification Numbers</u>.  The Liquidating Trustee may require any Beneficiary to furnish to the Liquidating Trustee, (i) its employer or taxpayer identification number as assigned by the Internal Revenue Service, and (ii) such other information, records or documents necessary to satisfy the Liquidating Trustee's tax reporting obligations (including certificates of non-foreign status).  The Liquidating Trustee may condition the payment of any Distribution to any Beneficiary upon receipt of such identification number and requested documents.  If a Beneficiary does not timely provide the Liquidating Trustee with its taxpayer identification number in the manner and by the deadline established by the Liquidating Trustee, then the Distribution to such Beneficiary shall be administered as an unclaimed distribution in accordance with Section 7.8 of this Agreement.

        12.5    <u>United States Trustee Fees and Post-Confirmation Reports</u>.  After the Effective Date, the Liquidating Trust shall pay any statutory fees due for the post-Effective Date period pursuant to 28 U.S.C. Section 1930(a)(6) and such fees shall be paid until entry of a final decree or an order converting or dismissing the Chapter 11 Case, whichever is earlier.  After the Effective Date, the Liquidating Trustee will file post confirmation status reports on a quarterly basis up to the entry of a final decree closing the Chapter 11 Case or as otherwise ordered by the Court, and will file any closing report(s) as may be required by Local Bankruptcy Rule 3020-1.

        12.6    <u>Privilege</u>.  The attorney-client privilege, work product doctrine or other privileges or immunities inuring to the benefit of the Debtor or attaching to documents or communications of the Debtor shall be transferred to the Liquidation Trust.  The Liquidating Trustee is authorized to assert or waive any such privilege or doctrine, as necessary or appropriate for the administration of the Liquidation Trust, *provided that*, to the extent any such privilege or doctrine is waived in connection with information requested of any professional previously employed by the Debtor, the Liquidating Trustee agrees that such information request shall be made solely for the purpose of carrying out the Liquidating Trustee's duties hereunder, that the Liquidating Trustee shall act in good faith and shall use their best efforts to tailor as narrowly as possible any request so as not to be unduly invasive or burdensome to the professional upon whom the request is made.

        12.7    <u>Valuation of the Liquidating Trust Assets</u>.  As soon as practicable after the Effective Date, the Liquidating Trustee, in reliance upon such professionals as the Liquidating Trustee may retain, shall make a good faith valuation of the Liquidating Trust Assets.  Such valuation shall be made available from time to time, to the extent relevant, as reasonably determined by the Liquidating Trustee in reliance on his professionals, and used consistently by all parties, including, without limitation, the Receiver, the Liquidating Trust, and Beneficiaries, for all purposes, including federal income tax purposes.

        12.8    <u>Governing Law</u>.  THIS AGREEMENT SHALL BE CONSTRUED IN ACCORDANCE WITH THE LAWS OF THE STATE OF CALIFORNIA, WITHOUT REFERENCE TO ITS CONFLICT OF LAW PROVISIONS, AND THE OBLIGATIONS, RIGHTS AND REMEDIES OF THE PARTIES HEREUNDER SHALL BE DETERMINED IN ACCORDANCE WITH SUCH LAWS.

12.9    Severability.  If any one or more of the provisions herein, or the application thereof in any circumstances, is held invalid, illegal or unenforceable in any respect for any reason, the validity, legality and enforceability of any such provision in every other respect, and of the remaining provisions, shall not be in any way impaired or affected.  In such event, there shall be added as part of this Agreement a provision as similar in terms to such illegal, invalid or unenforceable provision as may be possible and be legal, valid and enforceable.  The effective date of the added provision shall be the date upon which the prior provision was held to be invalid, illegal or unenforceable.

12.10    Entire Agreement.  This Agreement (including the recitals), the Plan and the Confirmation Order constitute the entire agreement of the parties and there are no representations, warranties, covenants, or obligations except as set forth herein or therein.  This Agreement, the Plan, and the Confirmation Order supersede all prior and contemporaneous agreements, understandings, negotiations, and discussions, written or oral, of the parties hereto, relating to any transaction contemplated hereunder.  In the event of any inconsistency between this Agreement, the Plan, and the Confirmation Order, the Confirmation Order and Plan, in that order, shall govern; *provided*, *however*, that the Liquidating Trustee may amend, modify and/or correct the terms hereof to supersede the Plan and/or the Confirmation Order, with the approval of the Bankruptcy Court.  Except as otherwise specifically provided herein, nothing in this Agreement is intended or shall be construed to confer upon or to give any person other than the parties hereto and their respective heirs, administrators, executors, successors, and assigns any rights or remedies under or by reason of this Agreement.

12.11    Jurisdiction; Venue.  Each party hereto irrevocably agrees that any suit, action or proceeding with respect to this Agreement shall be brought in the United States Bankruptcy Court for the Central District of California, and by execution and delivery of this Agreement, each party (a) irrevocably submits to each such jurisdiction and venue, (b) waives, to the fullest extent permitted by law, any objection that it may have to the laying of the venue of any such suit, action or proceeding brought in such court has been brought in an inconvenient forum, and (c) agrees that final judgment in any such suit, action or proceeding brought in such a court shall be conclusive and binding upon it and may be enforced in any court to the jurisdiction of which such party is subject by a suit upon such judgment, provided that service of process is effected as otherwise permitted by law.

12.12    Notices.  Unless otherwise expressly specified or permitted by the terms hereof, any notice, request, submission, instruction or other document to be given hereunder by a party shall be in writing and shall be deemed to have been given, (a) when received if given in person, (b) upon delivery or refusal of delivery, if delivered by a nationally known commercial courier service providing next day delivery service (such as Federal Express), or (c) upon delivery or refusal of delivery, if deposited in the U.S. mail, certified or registered mail, return receipt requested, postage prepaid:

**If to the Liquidating Trustee, addressed as follows:**

Richard J. Laski

Wilshire Partners of CA, LLC
470 Maylin St.
Pasadena, CA 91105

With a copy to:

Arent Fox LLP
Attn: Aram Ordubegian
555 West Fifth Street, 48th Floor
Los Angeles, California 90013

or to such other individual or address as a party hereto may designate for itself by notice given as herein provided.

12.13  WAIVER OF JURY TRIAL.  EACH PARTY TO THIS AGREEMENT HEREBY IRREVOCABLY WAIVES ALL RIGHTS TO TRIAL BY JURY IN ANY ACTION, PROCEEDING OR COUNTERCLAIM ARISING OUT OF OR RELATING TO THIS AGREEMENT OR THE TRANSACTIONS CONTEMPLATED THEREBY.

12.14  Further Assurances.  Each Party hereto (and his respective successors and assigns) shall, upon the Liquidating Trustee's reasonable request, execute, acknowledge and deliver, or cause to be executed, acknowledged and delivered, such further instruments, and do or cause to be done, such further acts, as may be necessary to carry out the purposes of this Agreement and to vest in the Liquidating Trustee the powers and duties contemplated hereunder.

12.15  Exculpatory Provisions and Survival Thereof.  Whether or not expressly therein so provided, any and all exculpatory provisions, immunities and indemnities, and any limitations and negations of liability contained in this Agreement, in each case inuring to the benefit of the Liquidating Trustee, shall survive (i) the termination or revocation of this Agreement, and (ii) as to any person who has served as Liquidating Trustee, the resignation or removal of such person as Liquidating Trustee.

12.16  Conflicts.  In the event of any inconsistency between the Plan or Confirmation Order, on the one hand, and this Agreement, on the other, the terms and provisions of the Confirmation Order and Plan (in that order) shall govern.

12.17  Headings.  The headings of the various Articles and Sections herein are for convenience of reference only and shall not define or limit any of the terms or provisions hereof.

12.18  Successors and Assigns.  All covenants and agreements contained herein shall, as applicable, be binding upon, and inure to the benefit of the Liquidating Trustee and his successors, the Estate and the Debtor and their successors all as herein provided.

12.19  Separate Counterparts.  This Agreement may be executed by the parties hereto in separate counterparts, each of which when so executed and delivered shall be an original, but all such counterparts shall together constitute but one and the same instrument.

*[Remainder of Page Intentionally Left Blank]*

IN WITNESS WHEREOF, the undersigned have either executed and acknowledged this Agreement or caused it to be executed and acknowledged on their behalf by their duly authorized officers all as of the date first above written.

**LIQUIDATING TRUSTEE**

By: _____
          Name: Richard J. Laski
          Title: Liquidating Trustee

**450 S. WESTERN, LLC**

By: _____
          Name: Richard J. Laski
          Title: Chief Restructuring Officer

# PROOF OF SERVICE OF DOCUMENT

I am over the age of 18 and not a party to this bankruptcy case or adversary proceeding.  My business address is:

Arent Fox LLP, Gas Company Tower, 555 West Fifth Street, 48th Floor, Los Angeles, CA 90013.

A true and correct copy of the foregoing document entitled (*specify*): **DEBTOR'S FIRST AMENDED CHAPTER 11 PLAN OF LIQUIDATION, DATED FEBRUARY 26, 2021** will be served or was served **(a)** on the judge in chambers in the form and manner required by LBR 5005-2(d); and **(b)** in the manner stated below:

**1.  TO BE SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING (NEF)**:  Pursuant to controlling General Orders and LBR, the foregoing document will be served by the court via NEF and hyperlink to the document. On (date) **02/26/2021** I checked the CM/ECF docket for this bankruptcy case or adversary proceeding and determined that the following persons are on the Electronic Mail Notice List to receive NEF transmission at the email addresses stated below:

☒  Service information continued on attached page

**2.  SERVED BY UNITED STATES MAIL**:  On (*date*) **02/26/2021**, I served the following persons and/or entities at the last known addresses in this bankruptcy case or adversary proceeding by placing a true and correct copy thereof in a sealed envelope in the United States mail, first class, postage prepaid, and addressed as follows. Listing the judge here constitutes a declaration that mailing to the judge <u>will be completed</u> no later than 24 hours after the document is filed.

**JUDGE**

Honorable Ernest M. Robles
United States Bankruptcy Court
255 E. Temple Street, Suite 1560
Los Angeles, CA 90012

☐  Service information continued on attached page

**3.  SERVED BY PERSONAL DELIVERY, OVERNIGHT MAIL, FACSIMILE TRANSMISSION OR EMAIL** (state method for each person or entity served):  Pursuant to F.R.Civ.P. 5 and/or controlling LBR, on (*date*) **_____,** I served the following persons and/or entities by personal delivery, overnight mail service, or (for those who consented in writing to such service method), by facsimile transmission and/or email as follows.  Listing the judge here constitutes a declaration that personal delivery on, or overnight mail to, the judge <u>will be completed</u> no later than 24 hours after the document is filed.

☐  Service information continued on attached page

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct.

| 02/26/2021 | YVONNE LI | /s/ Yvonne Li |
|---|---|---|
| Date | Printed Name | Signature |

This form is mandatory.  It has been approved for use by the United States Bankruptcy Court for the Central District of California.

*June 2012* **F 9013-3.1.PROOF.SERVICE**

AFDOCS/23800664.1

1. **TO BE SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING (NEF)**:

Jesse S Finlayson on behalf of Creditor Philmont Management, Inc.
jfinlayson@ftrlfirm.com, bmendoza@ftrlfirm.com

Jesse S Finlayson on behalf of Plaintiff Philmont Management, Inc.
jfinlayson@ftrlfirm.com, bmendoza@ftrlfirm.com

M Douglas Flahaut on behalf of Attorney Arent Fox LLP
flahaut.douglas@arentfox.com

M Douglas Flahaut on behalf of Debtor 450 S. Western, LLC, a California limited liability company
flahaut.douglas@arentfox.com

M Douglas Flahaut on behalf of Defendant 450 S. Western Ave., LLC
flahaut.douglas@arentfox.com

Maria L Garcia on behalf of Creditor Committee OFFICIAL COMMITTEE OF UNSECURED CREDITORS OF 450 S. WESTERN, LLC
Maria.L.Garcia@lewisbrisbois.com, Nancy.jasso@lewisbrisbois.com

Amy L Goldman on behalf of Creditor Committee OFFICIAL COMMITTEE OF UNSECURED CREDITORS OF 450 S. WESTERN, LLC
Amy.Goldman@lewisbrisbois.com

Jeffrey T Gwynn on behalf of Creditor New Creation Engineering and Builders, Inc.
jgwynn@vervelaw.com

Brian T Harvey on behalf of Realtor CBRE Inc
bharvey@buchalter.com, IFS_filing@buchalter.com;dbodkin@buchalter.com

Mark S Horoupian on behalf of Interested Party Courtesy NEF
mhoroupian@sulmeyerlaw.com, mhoroupian@ecf.inforuptcy.com;ccaldwell@sulmeyerlaw.com

Christian T Kim on behalf of Interested Party Christian Kim
ckim@dumas-law.com, ckim@ecf.inforuptcy.com

Richard J Laski (TR)
rlaski@wilshirellc.com

John P Lee on behalf of Creditor One Stop Financial Consulting, Inc.
jlee@kspllaw.com, admin@kspllaw.com

John P Lee on behalf of Creditor Richvest Asset Holdings, LLC.
jlee@kspllaw.com, admin@kspllaw.com

Won Lee on behalf of Attorney Square Mixx LA, Inc.
dlee@metallawgroup.com

Won Lee on behalf of Attorney Eunice Y. Tak
dlee@metallawgroup.com

Kenderton S Lynch on behalf of Creditor Evergreen Capital Assets, LP
kenlynchlaw@aol.com

Kenderton S Lynch on behalf of Interested Party Courtesy NEF
kenlynchlaw@aol.com

This form is mandatory.  It has been approved for use by the United States Bankruptcy Court for the Central District of California.

June 2012                                                                                    F 9013-3.1.PROOF.SERVICE

AFDOCS/23800664.1

David W. Meadows on behalf of Creditor G 450 LLC
david@davidwmeadowslaw.com

David W. Meadows on behalf of Creditor G 450, LLC, Pontis Capital, LLC, and Five West Capital, LP
david@davidwmeadowslaw.com

David W. Meadows on behalf of Interested Party Courtesy NEF
david@davidwmeadowslaw.com

Juliet Y Oh on behalf of Interested Party Admire Capital Lending, LLC
jyo@lnbrb.com, jyo@lnbrb.com

Juliet Y Oh on behalf of Interested Party Belmont Two Investment Holdings, LLC
jyo@lnbrb.com, jyo@lnbrb.com

Juliet Y Oh on behalf of Interested Party Courtesy NEF
jyo@lnbrb.com, jyo@lnbrb.com

Aram Ordubegian on behalf of Attorney Arent Fox LLP
ordubegian.aram@arentfox.com

Aram Ordubegian on behalf of Debtor 450 S. Western, LLC, a California limited liability company
ordubegian.aram@arentfox.com

Sagar Parikh on behalf of Creditor SoCal Lien Solutions, LLC
SP@BeverlyHillsLawCorp.com

Amelia Puertas-Samara on behalf of Debtor 450 S. Western, LLC, a California limited liability company
itcdbgc@edd.ca.gov, itcdgc@edd.ca.gov

Dean G Rallis, Jr on behalf of Interested Party Courtesy NEF
drallis@hahnlawyers.com,
marias@hahnlawyers.com;mpham@hahnlawyers.com;drallis@ecf.courtdrive.com;drallis@ecf.inforuptcy.com

Victor A Sahn on behalf of Interested Party Courtesy NEF
vsahn@sulmeyerlaw.com,
pdillamar@sulmeyerlaw.com;pdillamar@ecf.inforuptcy.com;vsahn@ecf.inforuptcy.com;cblair@sulmeyerlaw.com;cblair@ecf.inforuptcy.com

Lovee D Sarenas on behalf of Creditor Committee OFFICIAL COMMITTEE OF UNSECURED CREDITORS OF 450 S. WESTERN, LLC
lsarenas@sklarkirsh.com

United States Trustee (LA)
ustpregion16.la.ecf@usdoj.gov

Christopher K.S. Wong on behalf of Attorney Arent Fox LLP
christopher.wong@arentfox.com, yvonne.li@arentfox.com

Christopher K.S. Wong on behalf of Debtor 450 S. Western, LLC, a California limited liability company
christopher.wong@arentfox.com, yvonne.li@arentfox.com

Christopher K.S. Wong on behalf of Defendant 450 S. Western Ave., LLC
christopher.wong@arentfox.com, yvonne.li@arentfox.com

Felix T Woo on behalf of Creditor SINO-US INVESTMENT AND MANAGEMENT CONSULTANT LIMITED
fwoo@ftwlawgroup.com, admin@ftwlawgroup.com

This form is mandatory.  It has been approved for use by the United States Bankruptcy Court for the Central District of California.

June 2012                                                                                                       **F 9013-3.1.PROOF.SERVICE**

AFDOCS/23800664.1

Dylan J Yamamoto on behalf of Debtor 450 S. Western, LLC, a California limited liability company
dylan.yamamoto@arentfox.com

Hatty K Yip on behalf of U.S. Trustee United States Trustee (LA)
hatty.yip@usdoj.gov, hatty.k.yip@usdoj.gov

Timothy J Yoo on behalf of Interested Party Courtesy NEF
tjy@lnbyb.com

This form is mandatory.  It has been approved for use by the United States Bankruptcy Court for the Central District of California.

*June 2012*                                                                    **F 9013-3.1.PROOF.SERVICE**

AFDOCS/23800664.1